IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-617-GMS |
| | ) | |
| LEVEL 3 COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF LEVEL 3 COMMUNICATIONS, LLC'S
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

> John W. Shaw (No. 3362)
> Andrew E. Russell (No. 5382)
> David M. Fry (No. 5486)
> SHAW KELLER LLP
> 300 Delaware Avenue, Suite 1120
> Wilmington, DE 19801
> (302) 298-0700
> jshaw@shawkeller.com
> arussell@shawkeller.com
> dfry@shawkeller.com

OF COUNSEL:

*Attorneys for Defendant
Level 3 Communications, LLC*

R. Laurence Macon
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent St., Suite 1600
San Antonio, TX 78205
(210) 281-7222

David R. Clonts
Manoj S. Gandhi
Iftikhar Ahmed
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
(713) 220-5800

Dated: August 22, 2013

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   AIP WILL NOT SUFFER UNDUE PREJUDICE FROM A STAY ................................... 2

      A.  AIP Is a Patent Licensing Company Entitled Only to Money Damages....................... 2

      B.  A Stay in This Case Would Not Materially Impact AIP's Ability to Take Discovery .. 2

III.  A STAY WILL SIMPLIFY THE ISSUES BEFORE THIS COURT .................................. 4

      A.  The '879 Patent Is Central to AIP's Litigation Pending Before This Court ................. 5

      B.  Resolution of the Validity of the '879 Patent Will Streamline or Eliminate Issues for
          Trial in This and Related Cases Before the Court.......................................................... 6

IV.   THE CASE IS STILL IN ITS INFANCY ........................................................................ 7

V.    CONCLUSION................................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Auto Techs. Int'l v. Am. Honda Motor Co.*,
 C.A. No. 06-187-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009) .......................................6

*Ever Win Int'l Corp. v. RadioShack Corp.*,
 902 F. Supp. 2d 503 (D. Del. 2012)........................................................................................4

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
 Nos. 2012-1334, 2012-1335, 2013 WL 3305736 (Fed. Cir. July 2, 2013).............................8

*In re: Bear Creek Techs., Inc.*
 MDL No. 12-MD-2344-GMS, 2013 WL 3789471 (D. Del. July 17, 2013) ........................2, 4

*Modern Group Ltd. v. Pinnacle Companies, Inc.*,
 No. 1:12-CV-00043, slip op. at 1, 5 (E.D. Tex. August 2, 2013)............................................8

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
 C.A. No. 12-1744-GMS, 2013 WL 3353984, D.I. 34 (D. Del. July 2, 2013) ..................1, 5, 9

*Pegasus Dev. Corp.* v. *DirecTV, Inc.*,
 C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)...................................6

*SAP America, Inc. et al. v. Versata Development Group, Inc.*,
 Petition No. CBM2012-00001 ............................................................................................ 4

*Walker Digital, LLC v. Google, Inc.*,
 C.A. No. 11-309-SLR, 2013 WL 1489003 (D. Del. Apr. 11, 2013) ........................................2

STATUTES

35 U.S.C. § 315(b) .................................................................................................................4

OTHER AUTHORITIES

Bryan Wheelock *et. al, What We've Learned From 9 Months Of Inter Partes Reviews*,
 http://www.law360.com/articles/454566/what-we-ve-learned-from-9-months-of-inter-
 partes-reviews ................................................................................................................4

## I.       INTRODUCTION

Plaintiff AIP Acquisition LLC concedes that the Patent Office will make a decision on Defendant Level 3 Communications' *inter partes* review petition by November of this year.  AIP instead argues that because there is a chance that the PTO may decide not to review all of the claims, the IPR may not result in simplification of issues for this Court, and a stay is not warranted.  But as this Court recognized in *Neste*, "the 'issue simplification' factor does not require complete overlap."  *See Neste Oil Oyj v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013).  Further, the parties clearly understand that the '879 patent is at the heart of the dispute here, and the Patent Office's resolution of questions of validity of the '879 patent would narrow—if not effectively resolve—the dispute between the parties, both in this case and potentially the other five cases.

AIP seeks to create a case of prejudice due to delay where none exists.  Indisputably, AIP is a patent licensing entity and its only remedy in this action is money damages.  A two year delay in obtaining those damages would not prejudice AIP.

Moreover, the brunt of work in this case lies ahead of the parties.  The efforts expended thus far are a mere fraction of what the parties and this Court will need to do in the coming months—efforts that will have been wasted if Level 3 succeeds on its IPR petition.  A stay would advance judicial efficiency and avoid expending the Court's valuable resources addressing claim construction as well as infringement and invalidity issues of patents involving highly complex technology.

Ultimately, AIP misses the point of *inter partes* review.  It argues delay and prejudice based on the IPR failing.  But Congress created this time-certain procedure to allow litigants to

first test patents at the Patent Office.  The benefit?  If the IPR *succeeds*, then the Court and parties need expend *no* time and resources on the invalidated patent.

## II.     AIP WILL NOT BE PREJUDICED BY A STAY

### A.     As a Patent Licensing Company, AIP is Only Entitled to Money Damages

AIP suggests that it is "closely tied to Arbinet Corporation" and attempts to affiliate itself to Arbinet's parent, Primus Telecommunications Group.  The only connection that AIP points to is that its members are shareholders of Arbinet.  This is irrelevant to AIP's status as a non-practicing entity.  As a non-practicing entity, AIP cannot be prejudiced by a stay pending Level 3's IPR because money damages provide adequate redress for the potential infringement; if anything, "even if the claims are ultimately rejected by the PTO, [AIP] will benefit from the stay because it will not have to expend resources in two fora."  *See In re: Bear Creek Techs., Inc.,* ('722 Patent Litig.), MDL No. 12-MD-2344-GMS, 2013 WL 3789471, at *3 n.8 (D. Del. July 17, 2013).[1]

And because AIP is a technology licensing company, the fact that the '879 patent will expire in 2014 has little significance to the remedies available to AIP, regardless of whether the Court grants a stay in this case.

### B.     A Stay in This Case Would Not Materially Impact AIP's Ability to Take Discovery

AIP's concern for evidence being lost over the next year is also not justified.  The accused Level 3 products have existed for almost a *decade*.  Any evidence that had a potential of

---

[1] AIP's reliance on *Walker Digital* is misplaced.  There, the Court's decision to deny a stay was based on the fact that the judicial process was in its final stages whereas the *inter partes* reexamination (not an IPR) had many possible remaining steps with no reliable time table to conclusion. *See Walker Digital, LLC v. Google, Inc*., C.A. No. 11-309-SLR, 2013 WL 1489003 (D. Del. Apr. 11, 2013).  The deadline to complete Level 3's IPR proceeding is set in stone—at the latest, within two years of filing of the petition.

going stale was lost long before the lawsuit was filed, and this is a result of AIP's own delay in filing suit in the first place given that the '879 patent issued nearly two years before AIP's filing. An additional two years of delay has little impact on the parties' ability to collect evidence.

Surprisingly, some of the key evidence that AIP fears will be lost is prosecution history of its own asserted patents, *i.e.*, evidence in its own control. AIP is not precluded from collecting and preserving this evidence during the stay.

Looking to third party discovery as another reason why it might be prejudiced, AIP argues that proof of Level 3's "infringement may depend on the integration of Level 3's apparatus and methods into its customers' systems." AIP has, however, never accused Level 3's systems as infringing in combination with any of its customers' systems; its accusations have been against Level 3's products and services as implemented by Level 3.[2] AIP's argument that "essential evidence and institutional knowledge of such non-parties will be lost, misplaced, or destroyed in the churn of personnel which is common to high-tech businesses" is simply a red herring.

Further, AIP's suggestion that Level 3's IPR would take two years to complete ignores reality. The *inter partes* review is one of post-grant proceedings instituted by the America Invents Act ("AIA"), which became available less than a year ago. The PTO has already begun to issue final written decisions in certain post-grant proceedings. *See, e.g.*, *SAP America, Inc. et al. v. Versata Development Group, Inc.*, Petition No. CBM2012-00001 (finding all of the challenged claims of Versata's U.S. Patent No. 6,553,350 unpatentable). It has thus far issued

---

[2] AIP has served both initial and revised infringement contentions, but neither of those contain the mention of a single Level 3 customer, let alone the hundreds of customers that AIP refers to in its Response.

preliminary decisions in at least 96 IPR proceedings.[3]  Given the pace at which the Patent Trial

and Appeal Board at the PTO is handling post-grant proceedings, it is highly unlikely that it will

take two years to resolve Level 3's petition.  *See Bear Creek Techs., Inc.*, 2013 WL 3789471, at

*3 n. 8 (discounting plaintiff's argument that the reexamination in question would actually take

three years – the average length of reexaminations).  Regardless, in light of AIP's own delay in

filing this lawsuit, a two-year delay to resolve the single key issue in this case is reasonable.

AIP's suggestion notwithstanding, Level 3's IPR petition was timely.[4]  Level 3 diligently

worked toward determining key issues in this litigation and searching for invalidating prior art

before proceeding to file a petition with the PTO.  Congress determined that a one year window

to file was appropriate—and Level 3 complied with that statutory mandate.  Further, given that

little substantive activity has occurred in this litigation, Level 3's request was timely, and

certainly suggests no dilatory motive.  *See, e.g., Ever Win Int'l Corp. v. RadioShack Corp.*, 902

F. Supp. 2d 503 (D. Del. 2012) (seven-month gap between filing of the Complaint and a request

for reexamination was not untimely given the pace of the litigation).

## III.   A STAY WILL SIMPLIFY THE ISSUES BEFORE THIS COURT

According to AIP, Level 3's expectation that its IPR petition will be granted and that

some or all of the claims of the '879 patent will be modified or cancelled by the PTO "is pure

attorney speculation."  D.I. 29 at 11.  But as this Court has recognized, the odds are very much in

---

[3] *See* Bryan Wheelock *et. al, What We've Learned From 9 Months Of Inter Partes Reviews*, http://www.law360.com/articles/454566/what-we-ve-learned-from-9-months-of-inter-partes-reviews (last visited August 22, 2013) (attached as Ex. E).

[4] AIP is wrong in stating that Level 3's IPR petition was filed "only after the . . . exchange of infringement, revised infringement, and invalidity contentions."  D.I. 29 at 1. Level 3 filed its petition on May 21, 2013 – one year from service of the complaint (May 21, 2012), as provided by 35 U.S.C. § 315(b), and before AIP served its revised infringement contentions on Level 3; Level 3 served its invalidity contentions on AIP much later.

Level 3's favor. *See Neste Oil Oyj*, 2013 WL 3353984, at *4 & n.5 (Noting that IPR statistics thus far "suggest that [the PTO] will likely grant review," and that "if inter partes review is granted here, the stricter standard for instituting such review suggests a greater likelihood that the PTO will cancel at least some of the challenged claims." Further, "[i]f the PTO cancelled at least some of the challenged claims in 89% of inter partes reexaminations, it seems likely that this percentage will be higher in inter partes reviews."). The likelihood of success on Level 3's IPR petition supports the grant of a stay to allow the PTO to resolve validity of the '879 patent claims. If AIP's argument had merit, one would see few, if any, stays pending IPR.

### A. The '879 Patent Is Central to AIP's Litigation Pending Before This Court

In arguing that Level 3's IPR will not resolve the parties' disputes over other patents asserted by AIP, AIP now discounts the importance of the '879 patent in this litigation. But AIP's description of parties' extensive settlement discussions failed to note that its presentations and discussion focused on the '879 patent. During each of those negotiations, AIP focused on the '879 patent. The '879 patent forms the central theme of not just this litigation, but all of the cases filed by AIP in this Court. In fact, the '879 patent is the only patent that AIP has asserted against one of the largest defendants in the MSO cases. *See AIP Acquisition LLC v. Time Warner Cable Inc.*, No. 1:12-cv-01692-GMS, D.I. No. 10 (Amended Complaint). The two other patents AIP asserts against Level 3 accuse infringement by a product that implemented the allegedly patented technology more than a year before the filing date—hardly a strong case.[5]

---

[5] AIP's criticism of Level 3's reliance on *Pegasus Dev. Corp.* v. *DirecTV, Inc.*, C.A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003) and *Auto Techs. Int'l v. Am. Honda Motor Co.*, C.A. No. 06-187-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009) is also misplaced. AIP focuses on the number of pages in the *Pegasus* reexamination and patents to highlight the complexity of that case as a reason that the Court granted a stay there. A cursory review of AIP's asserted patents will inform the Court of the complexity of the technology in this case. Each of the asserted patents requires a deep understanding of both computer networking

(Footnote continues on next page.)

**B.      Resolution of the Validity of the '879 Patent Will Streamline or Eliminate Issues for Trial in This and Related Cases Before the Court**

AIP's other arguments on issue simplification are equally meritless.  AIP argues that the Patent Office will not resolve many of the issues concerning the '879 patent, including: (1) AIP's claims for infringement and damages; (2) Level 3's claims of invalidity under §§ 101, 102, 103, and/or 112; and (3) Level 3's equitable defenses of waiver, laches, and estoppel.

But AIP ignores the critical point:  if Level 3 wins in the IPR, *no one*—this Court included—will need to reach any of these issues, and not just in this case, but in each of the related cases pending before the Court.

AIP also makes much of Level 3's disclosure of less than all of its prior art references in its IPR petition.  What AIP fails to acknowledge is that Level 3 *could not* disclose all of that art for a very simple reason—the petition is limited to *60 pages* (*including* charts).  Had Level 3 included every single reference that it believed invalidates the '879 patent claims, it would have required hundreds of pages.

While AIP is correct in pointing out that defendants in related cases may bring "separate attacks" on the '879 patent, they can and will do that anyway.  But again, if Level 3's IPR wins, *all* of those disputes become moot.  As Level 3 noted in its opening brief, each of the defendants in the related cases has indicated that they are not opposed to the grant of stay in this case, or in

---

(Footnote continued from previous page.)

and telecommunications concepts, and claim construction on these patents will likely require significant time and resources from the Court.  And even if the length of the patents involved in a case were an accurate measure of the case's complexity, the single Level 3 prior art patent (No. 6,614,781) that invalidates AIP's asserted '662 and '275 patents is 264 pages long, with 244 columns of patent text and over 130 figures.  Similarly flawed is AIP's argument that *Automotive Technologies* is inapplicable here because the reexamination there implicated three quarters of the patents in suit.  The '879 patent here is, in effect, more than three quarters of the patents in suit – it is the only patent that AIP cares about in this case.

each of their respective cases, pending the resolution of the validity of the '879 patent claims by the USPTO.

## IV.    THE CASE IS STILL IN ITS INFANCY

AIP argues that the parties and the Court have expended more than enough resources in this case to make a stay at this stage inefficient.  Importantly, the Court has thus far not expended its valuable resources on this case, and granting a stay would provide for the most efficient route to resolve not just this dispute, but also those in the related cases.  And besides settlement negotiations, however, the only substantive work by the parties in this case relates to infringement and invalidity contentions.  This is but a small fraction of the effort that will be expended by the parties (and the Court) in the coming months through discovery and claim construction phases of the case.  As for efforts spent toward settlement, Level 3 expects to partake in good faith settlement negotiations with AIP regardless of whether a stay is granted.

As explained above, AIP's argument that this suit is likely to go to trial before the PTO resolves Level 3's IPR petition simply ignores statistics from PTO's post-grant proceedings. AIP's response to Level 3's petition is due this week (August 24, 2013).  The PTO has thus far taken an average of 61 days to render a preliminary decision following the patent owner's response.[6]  Level 3 would therefore expect the PTO to institute an *inter partes* proceeding by October 2013.  It would be reasonable to expect final written decision on Level 3's IPR petition well before the end of next year.

Lastly, AIP attempts to trivialize the impact that the recent Federal Circuit decision in *Fresenius* has on such parallel proceedings.  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, Nos. 2012-1334, 2012-1335, 2013 WL 3305736, at *15 (Fed. Cir. July 2, 2013).  Level 3, of course, agrees

_____

[6] *See* Ex. E.

that a stay is within the discretion of a district court.  But the Federal Circuit made clear that cancellation of claims by the PTO moots any pending litigation on those claims, regardless of the stage of the pending litigation.  In this case, even if AIP were to win at the jury trial in January, 2015, if Level 3 succeeds on its IPR petition later that year (as suggested by AIP), all of the Court's, the parties,' and the jury's hard work would be for naught.  This would certainly suggest to avoid expending efforts construing claims and determining validity and infringement where the decision in a parallel Patent Office proceeding could render all of that work moot.  *Cf. Modern Group Ltd. v. Pinnacle Companies, Inc*., No. 1:12-CV-00043, slip op. at 1, 5 (E.D. Tex. August 2, 2013) (attached as Ex. F) (citing *Fresenius* for the proposition that "[a] ruling at the PTO takes precedence over a prior judgment on the verdict concerning validity, in a concurrent, parallel proceeding at the district court level," and pointing out that the "limited value of [a district court's claim construction] orders has recently been depreciated further by [*Fresenius's*] ruling that even after trial and appeal the order may be ignored by the Patent and Trademark Office.").  Given the importance of the '879 patent to this litigation, the Court's resources are most efficiently utilized by staying the case pending Level 3's IPR.

V.     **CONCLUSION**

AIP, a patent licensing entity, will suffer no prejudice as a result of a stay.  Congress provided IPR as an alternative to costly litigation.  This IPR has the potential to eliminate the single common patent from six cases—simplifying issues and saving both the parties and this Court enormous resources.  This case is indeed in its early stages and a stay is appropriate here. *See Neste Oil Oyj*, 2013 WL 3353984, at *5.  As the relevant factors favor a stay, Level 3 respectfully requests that the Court grant the instant motion and stay all proceedings pending completion of the IPR of the '879 patent.

Respectfully submitted,

SHAW KELLER LLP

/s/ *David M. Fry*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
dfry@shawkeller.com

OF COUNSEL:

R. Laurence Macon
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent St., Suite 1600
San Antonio, TX 78205
(210) 281-7222

David R. Clonts
Manoj S. Gandhi
Iftikhar Ahmed
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
(713) 220-5800

Dated:  August 22, 2013

*Attorneys for Defendant*
*Level 3 Communications, LLC*