## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIP ACQUISITION LLC,<br><br>Plaintiff,<br><br>v.<br><br>LEVEL 3 COMMUNICATIONS, LLC,<br><br>Defendant. | C.A. No. 12-617-GMS |

| | |
|---|---|
| AIP ACQUISITION LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSC HOLDINGS, LLC,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., and CHARTER COMMUNICATIONS HOLDING COMPANY, LLC,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, COMCAST IP PHONE, LLC, and COMCAST BUSINESS COMMUNICATIONS, LLC,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC,<br><br>v.<br><br>TIME WARNER CABLE INC., TIME WARNER CABLE LLC,TIME WARNER ENTERTAINMENT COMPANY, L.P., TWC COMMUNICATIONS, LLC, and TWC DIGITAL PHONE LLC,<br><br>Defendants. | C.A. No. 12-1688-GMS<br>C.A. No. 12-1689-GMS<br>C.A. No. 12-1690-GMS<br>C.A. No. 12-1691-GMS<br>C.A. No. 12-1692-GMS<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' OPENING
## CLAIM CONSTRUCTION BRIEF AS TO U.S. PATENT 7,724,879

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

    A.    Overview of Related Cases ........................................................................ 1

    B.    Status of Level 3's *Inter Partes Review* and Stay Motion ............................. 1

II.   U.S. PATENT 7,724,879 ('879 PATENT) ......................................................... 2

III.  ARGUMENT ................................................................................................. 3

    A.    "An Internet Protocol" (claim 1) ............................................................... 3

    B.    "Signaling Messages" (claim 15) ............................................................... 6

    C.    "[First, Second] Access Device" (claims 1, 3) .............................................. 8

    D.    "Telecommunication Nodes" (claim 1) ..................................................... 10

    E.    "Receiving A Transmission In A First Format Through A First Communication Network From A First Access Device" (claim 1) ......................................... 11

    F.    "First Communication Network / Analog Telephone Network / Digital Telephone Network" (claims 1, 4) ........................................................................... 12

    G.    "Telecommunication Protocol" (claim 1) ................................................... 14

    H.    "Sending The Converted Transmission Through A Second Communication Network, The Second Communication Network Being A Data Network, For Reception By A Second Access Device" (claim 1) ........................................................... 15

    I.    "A further format suitable for the second access device" (claim 1) ............... 15

IV.   CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Novapharm Ltd.*,
    323 F.3d 1324 (Fed. Cir. 2003)...................................................................................9

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
    707 F.3d 1318 (Fed. Cir. 2013)...................................................................................5

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.*,
    224 F.3d 1308 (Fed. Cir. 2000).................................................................................14

*Gillette Co. v. Energizer Holdings, Inc.*,
    405 F.3d 1367 (Fed. Cir. 2005)...................................................................................8

*Merck & Co. v. Teva Pharms USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005).................................................................................11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)...................................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013)...................................................................................9

*Quantum World Corp. v. Atmel Corp.*,
    2:07-CV-24-CE, 2009 WL 241731 (E.D. Tex. Jan. 30, 2009)................................13

*Vizio, Inc. v. Int'l Trade Comm'n*,
    605 F. 3d 1330 (Fed. Cir. 2010)........................................................................15, 16

## I.      INTRODUCTION

### A.      Overview of Related Cases

Plaintiff AIP filed a first round of suits on May 17, 2012, asserting five patents against Level 3 Communications, Inc. ("Level 3") and iBasis, Inc. ("iBasis").  AIP filed a second round of suits on December 11, 2012 against Comcast, Time Warner Cable, Cox, Charter, and CableVision Defendants (collectively, the "Cable Defendants" and "the Cable Cases"), asserting one patent against Time Warner Cable and four patents against each of the other Cable Defendants.  The only patent which is asserted in all of these cases is U.S. Patent 7,724,879.  In accordance with this Court's October 28, 2013 Scheduling Order in the Cable Cases, all Defendants, with the exception iBasis, which has since settled, submit this joint brief in support of their proposed constructions of the '879 patent claims.

### B.      Status of Level 3's *Inter Partes Review* and Stay Motion

In an effort to further narrow the litigation, Level 3 filed a petition for an *inter partes* review ("IPR") with the United States Patent and Trademark Office on the '879 patent, the central patent at issue in all of AIP's pending suits.  Ex. 22[1], Petition, *Level 3 Commc'ns, LLC v. AIP Acquisition, LLC*, IPR2013-296.  On October 31, 2013, the PTO granted Level 3's petition as to every claim of the '879 patent.  Ex. 23, Decision Instituting *Inter Partes* Review, *Level 3 Commc'ns, LLC v. AIP Acquisition, LLC*, IPR2013-296, at 1, 33 (P.T.A.B. Oct. 31, 2013).  In view of the PTO's action, the parties filed a revised Joint Claim Chart to reflect new intrinsic evidence generated by the PTO during the IPR grant process.  Furthermore, Level 3 has moved to stay AIP's action against it pending IPR review.  (*See* Level 3 D.I.[2] 25, 26, 29, 31).  Defendants are not opposed to a stay of the Level 3 case or of the Cable Cases.  However, the

---

[1] Citations to "Ex. ___" are to the Joint Appendix to be filed by the parties with the Answering Claim Construction Briefs.
[2] References to "Level 3 D.I." refer to entries on Docket No. 12-617-GMS.

Cable Defendants are not parties to, or otherwise participating in, Level 3's IPR petition.  (*See id*.).

## II.     U.S. PATENT 7,724,879 ('879 PATENT)

The '879 patent purports to describe a way in which small telephone companies can connect their networks to each other using an intermediary network such as the Internet without going through expensive "long distance carriers," as Defendants illustrate below.  *See* 1:35-57; 4:42-46; 6:36-40; Figs. 1, 9.[3]



The patent explains that a local call is received from a first telephone network, is converted and sent over a data network such as the Internet, reconverted, and transmitted as a local call through a second telephone network to the final destination.  4:61-5:7.  The patent also explains that the Internet "us[es] internet protocols such as transmission control protocol/Internet protocol (TCP/IP) . . . ."  7:34-37.

The normal route long distance calls take would be over expensive long distance carrier networks instead of data networks such as the Internet.  The alleged invention of the '879 patent discloses two methods for redirecting a long distance call away from the long distance carrier and to the Internet.  One way to bypass the long distance carrier is for the caller to dial a local system which "prompts" the caller for the called party's telephone number (like using a calling card), after which the local system transmits the call over the Internet.  6:42-47.  Another embodiment uses an "intercept" to automatically re-direct calls away from the long-distance carrier to the Internet in a way that is "transparent" to the end-users.  1:61-66; 2:22-25; 9:26-32;

---

[3] All citations in the format __:__ refer to the column and line numbers of Ex. 1, U.S. Patent No. 7,724,879 (the "'879 patent").

14:6-9.  These "intercepts" can be located between the telephone networks and the long-distance network, or (as required by claim 1) can be integrated into "access devices" (such as telephones) of the calling and called parties.  11:50-52; 13:22-24; 14:5-9.  Because small telephone carriers' networks are not compatible with the Internet, the phone calls must be converted before they can be sent over the Internet, and must be converted again before they can be sent from the Internet to the network of the second small telephone carrier.  *See* 4:61-5:7.

Although the patent's claims correspond in some respects to the specification's purported invention, they also contain numerous contradictions that render the claims indefinite, an issue which Defendants may seek to address in a subsequent request for leave to file a summary judgment motion.

## III.     ARGUMENT

AIP, hoping to have a jury determine the scope of claim terms instead of the Court, offers "no construction" for many terms disputed by Defendants.  The Federal Circuit, however, has held that "[w]hen the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury must resolve the dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Here, because AIP has rejected Defendants' constructions for such terms, there is a clear dispute as to their proper interpretation.  Therefore the Court, not a jury, should resolve these disputes.

### A.  "An Internet Protocol" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "an internet protocol" | A datagram protocol where a datagram is a self-contained, independent entity of data carrying sufficient information to be routed from the source to the destination computer without | One of a set of protocols used on the Internet, such as TCP/IP, used to link dissimilar computers across a variety of other networks and protocols. |

| | reliance on earlier exchanges between this source and destination computer and the transporting network. | |
|---|---|---|

Unlike AIP's construction, which contains numerous limitations not found in the claim or specification, Defendants' construction is based on the plain meaning of the claim term, is directly supported by the specification, and is confirmed by extrinsic evidence.  Consistent with Defendants' construction and the plain meaning of "an internet protocol," the specification explains that "internet protocols" are used on the Internet:

> The ***Internet*** network ***differs*** from frame relay switching and asynchronous transfer mode ***by using internet protocols*** such as transmission control protocol/Internet Protocol (TCP/IP), which is a set of protocols developed by the Department of Defense to link dissimilar computers across a variety of other networks and protocols.

7:33-39; *see also* 7:44-49.[4]

The same portion of the specification also references "TCP/IP" as the only example of such a protocol.  Similarly, Defendants' construction includes "TCP/IP" in its construction to provide further context for the term "an internet protocol."  The *Computer Desktop Encyclopedia* confirms this exact approach in its definition of "Internet Protocol" by simply referencing the definitions of "Internet" and "TCP/IP," the latter of which (like the patent and Defendants' construction) it defines as "[a] communications protocol developed under contract from the U.S. Department of Defense to internetwork dissimilar systems."  Ex. 24, Alan Freedman, *The Computer Desktop Encyclopedia* 446, 850 (1996) ("Internet Protocol:  See *Internet* and *TCP/IP*"); *accord id.* at 444 ("internet: (1) [a] large network made of a number of smaller networks.").

---

[4] All emphasis in quotes do not appear in the original unless indicated.

In contrast with Defendants' construction, AIP's proposed construction for "an internet protocol" contains numerous limitations that find no support in the specification and are not needed to construe the term.   AIP seeks to define "an internet protocol" as:  a (1) "datagram protocol"; that (2) is "self-contained"; (3) is an "independent entity of data"; (4) carries "sufficient information to be routed from the source to the destination computer"; (5) "without reliance on earlier exchanges between this source and destination computer and the transporting network."   These additional limitations were recently rejected by the Patent Trial and Appeal Board as unnecessary and unsupported.  *See* Ex. 23, at 14 (rejecting AIP's identical proposed construction, noting "that the term 'datagram protocol' does not appear in the Specification, and we determine that it is unnecessary to introduce this new term in order to construe the term 'internet protocol.'").

Furthermore, AIP's proposed construction is wrong because, by requiring "an internet protocol" to be a "datagram protocol," it does not unambiguously cover the preferred embodiment, which is TCP/IP.  *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) ("a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct" (citation omitted)).  The standards documents that describe internet protocols state that the User ***Datagram*** Protocol ("UDP"), a common datagram protocol, is "an alternative to" the Transmission Control Protocol ("TCP") used in the preferred embodiment of the patent.   *See, e.g.*, Ex. 25, Amjad Umar, *Object-Oriented Client/Server Internet Environments* 485 (1997) (describing UDP as "an alternative to using TCP."); Ex. 26, Theodore J. Socolofsky & Claudia J. Kale, *A TCP/IP Tutorial*, Internet Engineering Task Force ("IETF") RFC 1180 § 7 (Jan. 1991) ("TCP provides a different service than UDP."); Ex. 27, *TCP/IP Illustrated, Vol. 1*, at 2 (1994) (contrasting TCP to UDP).

Accordingly, AIP's construction cannot be correct, because it potentially excludes TCP, which is the preferred and only embodiment in the patent.

AIP's construction is also incorrect because it requires routing "without reliance on earlier exchanges between this source and destination computer and the transporting network." This requirement excludes TCP/IP and for that reason should be rejected.   Contrary to AIP's construction, TCP/IP requires some communication to set up a connection before data can be exchanged.  *See* Ex. 28, Information Sciences Institute, *Transmission Control Protocol*, IETF RFC 793 § 1.5 (Sept. 1981) ("When two processes wish to communicate, their TCP's ***must first establish a connection*** (initialize the status information on each side)."); *see also* Ex. 26, at § 7 ("When the application first starts using TCP, the TCP module on the client's computer and the TCP module on the server's computer start communicating with each other.  These two end-point TCP modules contain state information that defines a virtual circuit.").

## B.  "Signaling Messages" (claim 15)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "signaling messages" | Control information exchanged between two points in a network to establish, maintain and/or remove a phone call *as distinguished from conversation information exchanged between a caller and a call recipient over an already established phone call.* | information related to the establishment and control of a connection to facilitate telecommunications |

The parties agree that "signaling messages" are control messages that are used to establish and maintain telecommunications.  The dispute centers on the second half of AIP's construction, in ***italics*** above.  Through that phrase, AIP seeks to exclude multi-stage dialing—

that is, where a caller first dials into an internet access device and then dials a second destination phone number to reach the final destination. The patent, however, expressly discloses multi-stage dialing as a preferred embodiment, and nothing in the patent suggests that the term "signaling messages" excludes that embodiment. 6:42-46. AIP's proposed construction requires that signaling messages be "distinguished from conversation information exchanged between a caller and a call recipient over an already established phone call." The specification, however, describes an embodiment of the invention that operates like a calling card. *See id*. In this embodiment the user first establishes a phone call with the system. *Id.* ("a local system is dialed via computer access or regular phone"). Once established, the user is prompted (*e.g.* vocally) for the destination phone number. *Id.* ("*prompts* the users for the *called party number* or identification"). Thus, during an established phone call in which voice information can be sent, the user keys in the phone number for the destination phone (which is signaling used to establish a phone call) and is then connected. *Id.* ("*then connects them to the called party* over the Internet or other data network"). AIP's proposed construction seeks to exclude such signaling messages.

Defendants' proposed construction is consistent with the plain and ordinary meaning of the term "signaling." *See* Ex. 29, Tarek N. Saadawi et al., *Fundamentals of Telecommunications Networks* § 11.6 (1994) (defining "signaling" as "the process of exchange of information related to the establishment and control of connections across the telecommunication network."); Ex. 30, Office of Tech. & Standards, Nat'l Commc'ns Sys., *Telecommunications: Glossary of Telecommunication Terms*, Fed-Std-1037B, at S-9 (June 1991) (defining "signaling" as: "[i]n a telecommunications network, the information exchange concerning establishment and control of a connection and management of the network.").

In contrast, AIP's proposed construction improperly imports additional limitations into the meaning of "signaling messages" that find no support in the claims or specification.  *See* Ex. 23, at 17 (rejecting AIP's identical proposed construction and noting that while "Patent Owner attempts to distinguish these signals in time from speech or conversation information exchanged between the calling party and the called party," the Board discerned "no such distinction in the language of claim 1 or 15 or in the Specification.").

Furthermore, to read in the negative limitation that AIP seeks to add here requires "words or expressions of *manifest exclusion or explicit disclaimers in the specification* are necessary to disavow claim scope."  *See Gillette Co. v. Energizer Holdings, Inc*., 405 F.3d 1367, 1374 (Fed. Cir. 2005) (internal quotations omitted).  The '879 patent has no such disclaimers.

### C.  "[First, Second] Access Device" (claims 1, 3)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "Access device"<br><br>"First access device"<br><br>"Second access device" | A device to access a communications network. | End-user device that is the ultimate initiator or ultimate destination of the transmission. |

Claim 1 itself supports Defendants' construction.  The claim is directed to a "method for communication between two access devices" where the transmission is received "*from* a first access device" and "sen[t] . . . *for reception* by a second access device[.]"  15:41-16:4.  The claim is therefore clear on its face that the access devices, as Defendants propose, are the ultimate initiators and destinations of the transmission.  AIP's construction simply ignores this claim language.

Moreover, there is no plain and ordinary meaning of "access device."  Rather the patentee acted as the lexicographer.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.¸* 711 F.3d 1348, 1361 (Fed. Cir. 2013) (if "the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim," the written description should be resorted to as an "aid" to construction).  The specification defines "access device" as "the ultimate destination" for a telephone call by using "i.e." to equate the two:  "[t]he main processor and router also direct the communication to ***the ultimate destination, i.e., access devices of the called party***."  13:61-63 (emphasis added); *see Abbott Labs. v. Novapharm Ltd.*, 323 F.3d 1324, 1327, 1330 (Fed. Cir. 2003) (finding the use of "i.e." to be definitive of a claim term's meaning).

The rest of the specification and the figures also consistently describe the "access devices" as end-user devices, such as telephones, that are the ultimate initiators or ultimate destinations of the transmission.  *See* Fig. 1, elements 12 and 14; Figs. 7a-g, elements 150 and 156; Fig. 8; Fig. 9, elements 12 and 14; 9:41-45; 13:22-24.  Furthermore, the specification refers to the "access device" as belonging to, or being used by, a person, *e.g.*, a "party."  4:50-60 (defining the "called party" as "the ultimate receiver" of transmissions "***whose*** access device on the network serve [sic] as the destination"); 12:62 ("***parties*** using the access devices"); 13:18 ("***calling party*** access device"); 13:25 ("***subscriber*** access device"); 13:60-62; 14:31-32 ("***calling party*** access device"); 14:38 ("***called party*** access device"); 15:8 (same).  Because the "access device" is described as a device that is used by a party or subscriber to originate or receive transmissions, it means, as Defendants propose:  an "end-user device that is the ultimate initiator or ultimate destination of the transmission."

AIP's proposal that an "access device" be construed as any "device to access a communications network" is an apparent attempt to cover <u>all</u> devices in a network – including

devices in the middle of a network such as routers, which do not initiate or receive telephone calls.  Not only does AIP's proposed construction contradict claim 1 itself, which requires that the access devices be the devices which ultimately send and receive communications, but it also contradicts the specification, which expressly distinguishes "access devices" from such mid-network devices.  13:61-63 ("The main processor and *router also direct the communication to the ultimate destination, i.e., access devices* of the called party.").

### D.   "Telecommunication Nodes" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "Telecommunication nodes" | No construction needed. | Components that intercept the phone call from a communications network and reroute it from its intended path to an alternate path. |

Defendants' construction reflects the patent's clear disclosure that "telecommunication nodes" and "intercepts" are one in the same.  Acting as his own lexicographer, the patentee used the term "telecommunication node" interchangeably with the term "intercept" and used the same reference number "16" to refer to both terms.  4:23-24 ("transparent telecommunications node or intercept 16").  The interchangeability of these terms is further confirmed by the plain language of claim 1, which requires that both "the first access device and the second access device comprise telecommunication nodes[.]"  16:8-9.  The specification describes the access device "comprising," or containing, only one additional component – an intercept.  *See* 11:50-52 ("*[t]he access device 150 may have an intercept capability* to render the ensuing routing connections transparent to the users."); 14:5-6 ("The intercept may be part of or separate from the access devices"); Fig. 8 (reproduced below):



Defendants' construction also incorporates the plain meaning of "intercept," which is "[t]o stop, deflect, or interrupt the progress or intended course of[.]"  Ex. 31, *The American Heritage Dictionary* 939 (3d ed. 1992).  This is entirely consistent with the specification's description of an intercept device as a component that "intercepts" a call from its normal path and determines an alternate path for that call.  9:27-31 ("The *normal transmission from an access device is intercepted by an intercept device*, which routes the transmission to a central local node. At the central local node, an *investigation is made as to what route is available* for the specific service.").

AIP's proposal not to construe "telecommunications nodes" leaves the jury without any understanding of an unfamiliar term, which lacks a plain meaning outside the context of the patent (the meaning inside the context of the patent is described above.)   Not construing "telecommunication nodes" effectively renders superfluous the claim requirement that the access devices "comprise telecommunication nodes" – a jury that does not know what a telecommunication node is cannot possibly determine whether an accused access device has a telecommunication node as required by the claim or not.  *Merck & Co. v. Teva Pharms USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

### E.  "Receiving A Transmission In A First Format Through A First Communication Network From A First Access Device" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "receiving a transmission in a first format through a first communication network from a first access device" | No construction needed. | receiving a transmission in a first format that originated from a first access device, entered a first communication network and passed out the other side of that first communication network. |

Defendants' construction makes clear that the claim requires that the "first access device" is separate from the "first communication network," and that it sends a transmission ("from a first access device") that passes "through a first communication network."  The word "through" plainly means entering something from one side and exiting from another.  *See* Ex. 32, *The American Heritage Dictionary* 1870 (defining "through" as "[i]n one side and out the opposite or another side of").  Applied to the claim, this means, as Defendants' construction requires, that the transmission comes from the first access device, before it enters the first communication network, and the transmission later exists from the other side of the first communication network.  Likewise, '879 Figure 8 shows a transmission that originates from an access device (as claimed), then enters a network (either a "digital and analog telephone network," a "paging and cellular network" or a "data network") and then passes out the other side of that network to reach central local node A, which then performs the next claimed step of "convert[ing]" the call "to a data signal which is then sent over a data network[.]"  4:64-66.

### F.  "First Communication Network / Analog Telephone Network / Digital Telephone Network" (claims 1, 4)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "First Communication Network" | No construction needed. | A single network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| "Analog Telephone Network" | No construction needed. | A single all-analog network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| "Digital Telephone Network" | No construction needed. | A single all-digital network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |

The claim term "a first communication network" ("FCN") should be construed as "a single network with a plurality of telephones that use a telecommunications protocol to communicate with each other." This construction comes directly from claim 1 itself. The FCN is "a single network" because it is referred to in the singular (*i.e.* "a first communication *network*"), and is one ("a") of the "one or more networks" to which the claim refers (the "second communication network" being another of the "one or more networks"). 13:42-45. The FCN must have at least two telephones, because the claim requires that it employ "a telecommunication protocol for *establishing* and transmitting voice communication for a *phone call* in *one* . . . network[.]" 13:46-49. Because a phone call requires at least two telephones, and because the FCN must be capable of establishing a phone call, the FCN must necessarily have two telephones.[5]

The claim term "analog telephone network" should be construed as "a single *all-analog* network with a plurality of telephones that use a telecommunications protocol to communicate with each other." Similarly, the term "digital telephone network" should be construed as "a single *all-digital* network with a plurality of telephones that use a telecommunications protocol to communicate with each other." The terms analog and digital are mutually exclusive. *Quantum World Corp. v. Atmel Corp.*, 2:07-CV-24-CE, 2009 WL 241731, *11 (E.D. Tex. Jan. 30, 2009) (defining "analog" signals as "nondigital" signals); Ex. 35, Harry Newton, *Newton's Telecom Dictionary* 64-65, 321 (8th ed. 1994) (defining "analog" and "digital"). The patentee's use of different claim terms to describe these two telephone networks

---

[5] The plain meaning of "network" is two or more components connected by a transmission medium. *See* Ex. 33 *The Computer Desktop Encyclopedia* 575 (defining "network" as "[a]n arrangement of objects that are interconnected"); Ex. 34 *Computer Dictionary* 268 (Casey Doyle ed., 2d ed. 1993) (defining "network" as "[a] group of computers and associated devices that are connected by communications facilities"). This claim requires that at least two of those components be telephones.

carries a presumption that "these different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Any construction that would allow an "analog telephone network" to carry digital signals or a "digital telephone network" to carry analog signals would:  (1) erase any distinction between these two different claim terms and (2) eliminate the claim language requiring only "one of a" digital, analog or cellular telephone network.  Thus, the separate "analog telephone network" and "digital telephone network" terms should be construed to refer to "all-analog" and "all-digital" telephone networks respectively.

### G.  "Telecommunication Protocol" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "telecommunication protocol" | No construction needed. | A protocol that (1) establishes voice communication and (2) transmits voice communication for a phone call. |

Defendants' construction comes directly from claim 1, which on its face requires that a telecommunication protocol both "establish[]" and "transmit[]" a "voice communication for a phone call."  15:46-48.  Indeed, performing both of these steps is the only way to satisfy the claimed requirement that "communication" actually occur "between two access devices[.]" 15:42-43.  Defendants' construction is also consistent with the specification's repeated references to both establishing calls and transmitting voice between end points.  *See* Fig. 6, element 136; Figs. 7a-g; 5:51-58; 8:18-23; 8:43-49; 8:51-56; 9:18-19.

**H.  "Sending The Converted Transmission Through A Second Communication Network, The Second Communication Network Being A Data Network, For Reception By A Second Access Device" (claim 1)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "sending the converted transmission . . . for reception by a second access device" | No construction needed. | sending the transmission in the second format . . . so that the transmission in the second format will be received by the second access device. |

The antecedent basis for "the converted transmission" is the transmission that, according to claim 1, has been converted into the second format (internet protocol).  15:50-52 ("performing a first conversion *converting the transmission* from the first format *to a second format*, the second format being an internet protocol").  It is important to note the antecedent basis because there is more than one conversion recited in claim 1.  The "converted transmission" for reception by the second access device is the transmission converted to an internet protocol format, not the "further format" recited in the claim's final step.

Furthermore, the claim language "sending . . . *for reception* by a second access device" requires that the transmission that is sent through the data network in a second format be received by the second access device.  Thus, the second access device must in fact be capable of receiving that transmission in the second format.  *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F. 3d 1330, 1339-40 (Fed. Cir. 2010) (finding that the term "for identifying" on its "face suggest[s] that channel map information must actually be capable of being used for the claimed function").

**I.  "a further format suitable for the second access device" (claim 1)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "a further format suitable for the second access device" | No construction needed. | A further format for the transmission that can be received and understood by the second access device. |

The plain and ordinary meaning of "suitable" is "[a]ppropriate to a purpose or an occasion." Ex. 36, *The American Heritage Dictionary* 1796. The purpose of claim 1 is "communication between two access devices." 15:42-43. More specifically, the claimed purpose of the "second access device" is for receiving a transmission (*i.e.* "sending the converted transmission . . . *for reception* by a second access device") and communicating. 13:22-24 ("Access devices are exemplified by telephones, pagers, cellular phones . . . ."). Thus, in order for the further format to be "suitable for" the second access device, the further format must be capable of being received by the second access device and used for communication. *See Vizio* at 1340-42 (noting that the term "suitable for use" on its "face suggest[s] that [it] . . . be capable of being used for the claimed function").[6]

## IV.    CONCLUSION

For all of the reasons stated above, Defendants request that the Court adopted each of Defendants' proposed constructions.

---

[6] Claim 1 is indefinite (and nonsensical), because it requires that two different formats of the same transmission both be received by the second access device. The claim limitation in section H above requires "sending the **converted transmission** . . . *for reception by a second access device*" while the claim limitation in section I requires "further converting the converted transmission to *a further format suitable for the second access device*." There is no way to know whether it is the "converted transmission" (which is the "second format") or the "further format" that the second access device is supposed to receive. In addition, claim 1 is also indefinite when the preamble is appropriately construed as limiting. While Defendants have not briefed these indefiniteness issues here, Defendants will raise them at the appropriate time, and may seek leave to file a motion for summary judgment of invalidity based on indefiniteness.

Dated:  November 19, 2013

SHAW KELLER LLP

OF COUNSEL:

R. Laurence Macon
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent St., Suite 1600
San Antonio, TX 78205
(210) 281-7222

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

David R. Clonts
Manoj S. Gandhi
Iftikhar Ahmed
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
(713) 220-5800

*Attorneys for Defendant*
*Level 3 Communications, LLC*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Michael L. Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312)558-5600
mbrody@winston.com

/s/ Paul Saindon
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
psaindon@mnat.com

Andrew Sommer
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006-3817
(202) 282-5896
asommer@winston.com

*Attorneys for Defendants Cox,*
*Communications, Inc. and CoxCom LLC,*
*Comcast Corporation. Comcast Cable*
*Communications, LLC, Comcast Cable*
*Communications Management, LLC,*
*Comcast IP Phone, LLC, Comcast Business*
*Communications, LLC, and CSC Holdings,*
*LLC*

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
 New York, NY 10166-4193
 (212) 294-6700
kpadmanabhan@winston.com

Jude J. Andre
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
 Houston, TX 77002-5242
 (713) 651-2600
jandre@winston.com


OF COUNSEL:                          ASHBY & GEDDES, P.A.

Thomas L. Duston                       /s/Lauren E. Maguire
Kevin D. Hogg                        Steven J. Balick (#2114)
John R. Labbe                        Lauren E. Maguire (#4261)
Benjamin T. Horton                   Andrew C. Mayo (#5207)
Sarah J. Kalemeris                   500 Delaware Avenue, 8th Floor
MARSHALL, GERSTEIN & BORUN           P.O. Box 1150
LLP                                  Wilmington, DE 19899
6300 Willis Tower                    (302) 654-1888
233 South Wacker Drive               sbalick@ashby-geddes.com
Chicago, IL 60606-6357               lmaguire@ashby-geddes.com
(312) 474-6300                       amayo@ashby-geddes.com
tduston@marshallip.com
khogg@marshallip.com                 *Attorneys for Defendants Charter*
jlabbe@marshallip.com                *Communications Inc. and Charter*
bhorton@marshallip.com               *Communications Holding Company LLC*
skalemeris@marshallip.com

RICHARDS, LAYTON & FINGER, P.A.

OF COUNSEL:

_/s/Kelly E. Farnan_
Kelly E. Farnan (#4395)

David S. Benyacar
Daniel L. Reisner
David Soofian
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
(212)836-8000

Katharine C. Lester (#5629)
920 N. King Street
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
lester@rlf.com

*Attorneys for Defendants Time Warner
Cable Inc., Time Warner Cable Enterprises
LLC, TWC Communications, LLC and
TWC Digital Phone LLC*