**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AIP ACQUISITION LLC, | ) |
| | ) |
| Plaintiff | ) C.A. No. 12-617-GMS |
| | ) C.A. No. 12-1688-GMS |
| v. | ) C.A. No. 12-1689-GMS |
| | ) C.A. No. 12-1690-GMS |
| LEVEL 3 COMMUNICATIONS, LLC, | ) C.A. No. 12-1691-GMS |
| | ) C.A. No. 12-1692-GMS |
| v. | ) |
| | ) |
| CSC HOLDINGS, LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| v. | ) |
| | ) |
| CHARTER COMMUNICATIONS, INC., and | ) |
| CHARTER COMMUNICATIONS HOLDING | ) |
| COMPANY, LLC, | ) |
| | ) |
| v. | ) |
| | ) |
| COMCAST CORPORATION, COMCAST | ) |
| CABLE COMMUNICATIONS, LLC, | ) |
| COMCAST CABLE COMMUNICATIONS | ) |
| MANAGEMENT, LLC, COMCAST IP PHONE, | ) |
| LLC, and COMCAST BUSINESS | ) |
| COMMUNICATIONS, LLC, | ) |
| | ) |
| v. | ) |
| | ) |
| COX COMMUNICATIONS, INC. and | ) |
| COXCOM, LLC, | ) |
| | ) |
| v. | ) |
| | ) |
| TIME WARNER CABLE INC., TIME | ) |
| WARNER CABLE LLC, TIME WARNER | ) |
| ENTERTAINMENT COMPANY, L.P., TWC | ) |
| COMMUNICATIONS, LLC, and TWC | ) |
| DIGITAL PHONE LLC, | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S CLAIM CONSTRUCTION ANSWERING BRIEF**

Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
Sara E. Bussiere
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Of Counsel:*

COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600

*Attorneys for AIP Acquisition LLC*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................... 1

II. DISPUTED CONSTRUCTIONS ................................................................ 2

    A. '879 Patent ........................................................................................ 2

        1. Preamble ................................................................................ 2

        2. "Telecommunication protocol" / "Internet protocol" ................ 3

        3. "Signaling message" .............................................................. 6

        4. "Access device" / "First access device" / "Second access device" ........... 7

        5. "Telecommunication nodes" .................................................. 9

        6. "Receiving a transmission in a first format through a first communication network from a first access device" ................ 11

        7. "First communication network," "Analog telephone network" and "Digital telephone network" .................................. 12

        8. "Sending the converted transmission . . . for reception by a second access device" ............................................................ 13

        9. "A further format suitable for the second access device" ......... 15

    B. '654, '579, and '756 Patents ............................................................ 16

        1. "An intercept" / "The intercept" ........................................... 16

        2. "In a manner transparent to a/the calling party and a/the called party" / "In a manner transparent to the calling party telephone user equipment and the called party telephone user equipment" / "In a manner transparent to the users of the calling party access number and the called party access number" ...................................... 18

        3. "Determining whether a call from the calling location to the called party access number should be connected via the telecommunication network" / "Means for determining whether a call from the calling location to the called party access number should be connected via the telecommunication network" ................................ 21

4.      "Connecting the call from the calling party access number to the called party access number" / "Means for connecting the call from the calling party access number to the called party access number" ........ 24

5.      "Calling telephone equipment" / "Calling location" / "Calling [party] telephone user equipment" ...................................................................... 24

6.      "Selecting a transmission path connecting a calling location and a called location" / "An intercept that selects a route passing through a control location for connecting a calling party telephone user equipment to a called party telephone user equipment" .......................... 28

7.      "Transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" / "Means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ..................... 29

8.      "Access location" ................................................................................... 30

9.      "Checking a status on each of a plurality of communication access locations each associated with said called party access number to determine which is accessible" ............................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH,*
  224 F.3d 1308 (Fed. Cir. 2000) ............................................................. 26

*Computer Docking Station Corp. v. Dell, Inc.,*
  519 F.3d 1366 (Fed. Cir. 2008) ............................................................. 21

*Edwards Lifesciences LLC v. Cook,*
  582 F.3d 1322 (Fed. Cir. 2009) ............................................................. 31

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 898 (Fed. Cir. 2004) ......................................................... *passim*

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.,*
  395 F.3d 1364 (Fed. Cir. 2005) ............................................................. 17

*N. Telecom Ltd. v. Samsung Elecs. Co.,*
  215 F.3d 1281 (Fed. Cir. 2000) ............................................................... 9

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ................................................... 4, 5, 22

*Praxair, Inc. v. ATMI, Inc.,*
  543 F.3d 1306 (Fed. Cir. 2008) ............................................................... 1

*Purdue Pharma L.P. v. Endo Pharms., Inc.,*
  438 F.3d 1123 (Fed. Cir. 2006) ............................................................. 21

*Toro Co. v. White Consol. Indus., Inc.,*
  199 F.3d 1295 (Fed. Cir. 1999) ............................................................... 2

*Vizio, Inc. v. Int'l Trade Comm'n,*
  605 F.3d 1330 (Fed. Cir. 2010) ............................................................. 15

## I.   INTRODUCTION

Defendants' Opening Brief mischaracterizes the patents in suit and disregards basic principles of claim construction.  Defendants mistakenly characterize the '654, '579, and '756 Patents as limited to "callback" systems and processes,[1] when their claims and specifications encompass additional embodiments not limited to "callback."  Some claims in these patents describe "callback" processes as one feature, but others conspicuously do not.

Defendants also present a deceptively narrow view of the '879 Patent.  They mischaracterize the invention as limited to calls carried between "small telephone companies" in which a "local call," converted and sent over a data network, is "reconverted, and transmitted as a local call through a second telephone network to the final destination"[2]; and their proposed constructions add unsupported, extraneous limitations that have no place in the claims.  The asserted claims are not limited to calls carried between two local phone companies.

Defendants even go so far as to assert that the '879 Patent claims contain contradictions that render them indefinite – when the only source of ambiguity in the claims is Defendants' own strained constructions.  AIP's constructions demonstrate that there is no ambiguity in the claims of the '879 Patent that would make them indefinite.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) (noting that a claim will be found indefinite only if "insolubly ambiguous").

---

[1] CSC, Charter, Comcast, and Cox Defendants' Opening Claim Construction Brief as to U.S. Patent Nos. 6,496,579, 6,078,654, and 6.188,756 ("Def. Non-'879 Brief") at 2-3.  Def. Non-'879 Brief is identified by the following D.I. numbers in the following cases:  C.A. 12-1688-GMS, D.I. 50; C.A. 12-1689-GMS, D.I. 42; C.A. 12-1690-GMS, D.I. 48; C.A. 12-1691-GMS, D.I. 46.
[2] Defendants' Opening Claim Construction Brief as to U.S. Patent 7,724,879 ("Def. '879 Brief") at 2.  Def. '879 Brief is identified by the following D.I. numbers in the following cases:  C.A. 12-617-GMS, D.I. 43; C.A. 12-1688-GMS, D.I. 52; C.A. 12-1689-GMS, D.I. 44; C.A. 12-1690-GMS, D.I. 50; C.A. 12-1691-GMS, D.I. 48; C.A. 12-1692-GMS, D.I. 45.

By construing claims to cover only selected embodiments of the invention, Defendants violate a basic tenet of claim construction – that claims are not limited to the particular embodiments identified in the specification.  *See Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  Indeed, Defendants go further:  even where an embodiment supporting AIP's claim construction is specifically disclosed in the relevant patent, Defendants insist on importing requirements from other embodiments and other claims into their proposed constructions, unduly narrowing the scope of the asserted claims.

Because Defendants' constructions consistently depart from plain language and impose extraneous, confusing, and irrelevant limitations on the asserted claims, they should be rejected; and the Court should adopt AIP's proposals as set forth in its Opening Brief,[3] which are faithful to the language of the claims and consistent with the intrinsic record and relevant extrinsic evidence.

## II.   DISPUTED CONSTRUCTIONS

### A.   '879 Patent[4]

#### 1.   Preamble[5]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Preamble is not limiting. | Defendants reserve the right to pursue indefiniteness with respect to this term through a footnote in their briefing. |

---

[3] Plaintiffs' Claim Construction Opening Brief ("AIP Opening Brief") is identified by the following D.I. numbers in the following cases:  C.A. 12-617-GMS, D.I. 44; C.A. 12-1688-GMS, D.I. 51; C.A. 12-1689-GMS, D.I. 43;  C.A. 12-1690-GMS, D.I. 49; C.A. 12-1691-GMS, D.I. 47; C.A. 12-1692-GMS, D.I. 44.

[4] Only the terms internet protocol "access device", and "signaling messages" are disputed with respect to Defendant Level 3.

[5] '879 Patent, Claim 1.

2

Defendants, in footnote 6 of their Opening Brief on the '879 terms, state that they may make an argument that Claim 1 is indefinite based in part on the preamble. As AIP stated in its Opening Brief, the preamble is not limiting. (AIP Opening Brief at 5-6.) Accordingly, any such argument based on it would be without merit.

### 2.    "Telecommunication protocol"[6] / "Internet protocol"[7]

| '879 Patent Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **Telecommunication protocol** | No construction needed. | A protocol that (1) establishes voice communication and (2) transmits voice communication for a phone call. |
| **An internet protocol** | A datagram protocol where a datagram is a self-contained, independent entity of data carrying sufficient information to be routed from the source to the destination computer without reliance on earlier exchanges between this source and destination computer and the transporting network. | One of a set of protocols used on the Internet, such as TCP/IP, used to link dissimilar computers across a variety of other networks and protocols. |

*Telecommunication Protocol*. Defendants' proposed construction of this term is inconsistent with the patent's claim language. Substituting Defendants' proposal into Claim 1 produces a nonsensical result:

> A method for communication between two access devices via one or more networks, comprising the steps:
>
> receiving a transmission in a first format through a first communication network from a first access device, the first format comprising a [telecommunication protocol] <u>a protocol that (1) establishes voice communication and (2) transmits voice communication for a phone call</u> for establishing and transmitting

---

[6] '879 Patent, Claim 1.
[7] '879 Patent, Claim 1.

> voice communication for a phone call in one of a digital telephone
> network, an analog telephone network, and a cellular network...

As can be seen, this construction grafts "for establishing and transmitting voice communication for a phone call" onto the definition of "telecommunications protocol," rendering the former superfluous.  The importation of this limitation also improperly narrows the definition of "telecommunication protocol," which is used in the '879 Patent to relate to more than just voice communications (*See*, *e.g.*, '879 Patent Claim 14, at 16:48-49 ("transmission is related to a fax transmission.").)  Similarly, Defendants' construction is also too narrow because this protocol relates to functions other than just "establishing" and "transmitting" a communication (*e.g.*, "receiving," as contemplated in Claim 5).  The fact that the claims themselves do not contemplate such restrictive meanings is instructive.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (in addition to the claim at issue, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").

In contrast to Defendants' overly restrictive definition, AIP contends that this term is well understood by persons of ordinary skill in the art, and simply means a protocol for telecommunication, *i.e.*, transmission of communications from one point to another.  Because Defendants cannot point to any intrinsic or extrinsic evidence that supports their construction, and because the Patentee did not act as his own lexicographer to define this well-understood term, no construction of the term "telecommunication protocol" is necessary.

*Internet Protocol*.  Defendants admit that the specification expressly excludes both ATM and frame relay protocols from the definition of "internet protocol."  (*See* Def. '879 Brief at 4 (citing to the '879 Patent at 7:33-39  ("The **Internet** network **differs** from frame relay switching

4

and asynchronous transfer mode *by using internet protocols*…") (emphasis in original)).)  Yet
they persist in proffering a definition that encompasses both.

Defendants then misconstrue AIP's proposed definition, concentrating on the User
Datagram Protocol ("UDP") in an attempt to argue that AIP's proposed construction may not
cover an embodiment disclosed in the specification.  But Defendants' continuing stress on the
possibility that UDP, a specific datagram protocol, may not cover TCP/IP is of no moment here
because AIP has not restricted its definition to UDP.  AIP's proposed construction for this term
is "a datagram protocol" – a term that encompasses UDP as well as other datagram protocols,
too.  In fact, as discussed in AIP's Opening Brief, TCP/IP *itself* is a datagram protocol.  (*See*,
*e.g.*, RFC 1594 (Ex. 10 to AIP's Opening Brief at 1) (confirming that TCP/IP is "a datagram
protocol").  Contrary to Defendants' argument, the TCP/IP embodiment falls squarely within the
scope of AIP's proposed definition.

Unlike Defendants' overly broad definition, AIP's construction simply explains how a
person of ordinary skill in the art, at the time of the invention, would have understood "internet
protocol."  It also properly excludes ATM and frame relay transfer protocols, which Defendants'
'879 Brief concedes should not be included in the definition, even as they cling to a construction
that includes these protocols.  For these reasons, the term "internet protocol" should be construed
as "a datagram protocol."[8]

---

[8] Defendants' reliance on the PTO's recent decision authorizing *inter partes* review of certain
claims of the '879 Patent is irrelevant to the Court's claim construction because the PTO was
required to afford the claim the "broadest reasonable construction in light of the specification"
(Case IPR2013-00296, Decision Oct. 31, 2013, at 10 (Ex. 23)) – a different standard from that
applied by the Court, which must simply construe their terms according to their ordinary
meaning to a person skilled in the art.  *See Phillips*, 415 F.3d at 1316.

### 3.     "Signaling message"[9]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Control information exchanged between two points in a network to establish, maintain and/or remove a phone call as distinguished from conversation information exchanged between a caller and a call recipient over an already established phone call. | information related to the establishment and control of a connection to facilitate telecommunications. |

Defendants agree with the first portion of AIP's construction, defining signaling messages as "control information exchanged between two points in a network to establish, maintain and/or remove a phone call." But they mistakenly reject the portion of AIP's construction that distinguishes signaling messages from "conversation information exchanged between a caller and a call recipient over an already established phone call." AIP's construction is consistent with the intrinsic evidence and with the common understanding of the term among those skilled in the art, as reflected in the numerous authorities cited in AIP's Opening Brief. Defendants' construction is inconsistent with the language of the claims and ignores a widely recognized defining feature of signaling messages as understood by those familiar with the field.

The term "signaling messages" appears only once in the '879 Patent – in Claim 15. Clearly, by making no attempt to define it, the Patentee intended the term to carry its ordinary meaning for those skilled in the art. As AIP has amply demonstrated, that meaning excludes conversation information exchanged by the parties over an established call.

Defendants contend that the exclusion of conversation information from the definition of "signaling messages" would lead to the improper exclusion of multi-stage dialing from the scope of the claim. Therefore, according to defendants, "signaling messages" should be defined to

---

[9] '879 Patent, Claim 15.

encompass the "conversation information" that AIP's construction excludes.[10]  In fact, a correct reading of Claim 15, which depends from Claim 1, shows that multi-stage dialing is *not* claimed in Claim 15.  The signaling messages of Claim 15 must, comprised in a transmission of Claim 1, undergo a first and further conversion, steps inconsistent with multi-stage dialing.  Accordingly, Defendants' contention that "signaling messages" must include "conversation information" so that the claim can encompass multi-stage dialing is belied by the very terms of the Claim.

Defendants' references to extrinsic sources are equally unpersuasive.  None of them affirmatively includes in the definition of signaling messages the conversation information that Defendants' proposed construction would embrace.  (*See* Def. '879 Brief at 7.)[11]

Finally, Defendants contend that AIP's construction would "add" a limitation to the claim without evidence of an "explicit disclaimer" in the intrinsic record.  But Defendants are missing the point:  the Patentee did not need to provide any "explicit disclaimer" to ensure that "conversation information" was excluded from the term "signaling messages" because to those skilled in the art, the distinction between signaling messages and conversation information would have been inherent in the term.

4.    **"Access device"[12] / "First access device"[13] / "Second access device"[14]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A device to access a communications network. | End-user device that is the ultimate initiator or ultimate destination of the transmission. |

---

[10] Defendants cite a portion of the specification that describes multi-stage dialing.  *See* Def. '879 Brief at 6-7 (citing '879 Patent at 6:42-46).

[11] As discussed in footnote 8 *supra*, the PTO's recent decision authorizing *inter partes* review of certain claims of the '879 Patent is irrelevant to the Court's claim construction because the PTO's review is under a different standard from that applied by the Court.

[12] '879 Patent, Claims 1 and 3.

[13] '879 Patent, Claims 1 and 3.

[14] '879 Patent, Claims 1 and 3.

AIP's proposed construction is supported by the intrinsic record, and Defendants' arguments in favor of their construction misread the language of the claims and the specification. Defendants suggest that merely because the claims refer to a transmission "from a first access device . . . for reception by a second access device," each access device must be the "ultimate initiator" or "ultimate destination" of the transmission.  But Defendants' conclusion simply does not follow from the language they cite:  a transmission can come "from" a device even if that device itself received it from another source; and similarly a transmission can be "sent . . . for reception" by a device even if that device might subsequently relay it to another destination.

As AIP's Opening Brief explained, the claims and the prosecution history show that "access devices" may be distinct and separate from the "end-user devices" that Defendants' construction requires.  (*See* AIP Opening Brief at 13-15 (citing '879 Patent Claims 3 and 5 (indicating that a calling party and called party (with their end-user equipment) are "connected" to the respective access devices)); U.S. Patent Application No. 08/320,269, Application for Letters Patent, at 11 (Ex. 5 at AIPC00003918), *and* at 13 (AIPC00003920)[15] (describing how private automatic branch exchanges (PABX) (telephone switching systems in *e.g.*, hotels) are capable of initiating phone calls, and how nodes interface therewith at user locations).)

Defendants point to instances in the specification where access devices are associated with calling and called parties, and thus with the initiators and destinations of calls.  But the mere fact that the patent provides such embodiments and illustrations does not mean that they define the scope of the claim, or that the claim can cover only those "access devices" employed directly and personally by calling and called parties to send or receive transmissions.  No such limitation appears in the claims.  *Liebel-Flarsheim*, 358 F.3d at 906 (claims at issue should not be read as

---

[15] Included as part of the file history for U.S. Patent No. 5,710,809 ("'809 Patent") (Ex. 5).

limited to an embodiment from the specification where the Patentee has not "demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'").

Defendants rely on an example in the specification detailing a process - in which a "main processor and router . . . direct the communication to the ultimate destination, *i.e.* access devices of the called party" – contending that this brief reference is the Patentee's definition of the term "access device."  (Def. '879 Brief at 9).  This one reference cannot be considered a conclusive definition of "access device" – or a sufficient basis for importing an extraneous limitation into the claim.[16]

The term "access device" is plain, and nothing in the intrinsic record suggests that this term be limited in the manner Defendants propose.  *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290-91 (Fed. Cir. 2000) ("This court has repeatedly and clearly held that it will not read unstated limitations into claim language.").

5.    **"Telecommunication nodes"[17]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. | Components that intercept the phone call from a communications network and reroute it from its intended path to an alternate path. |

As demonstrated in AIP's Opening Brief, this term has a plain and ordinary meaning in the context of the invention and requires no construction.  Defendants' construction needlessly complicates and inappropriately narrows the term.  Relying on a single embodiment in the

---

[16] Defendants also rely on the same language to contend that the specification distinguishes "access devices" from "mid-network devices" such as routers, and that AIP's construction would include such "mid-network devices" in the scope of the claim.  This is simply not the case:  the concept of an "access device" as AIP defines it by its terms refers to a device that provides *access* to a network, not to all devices within the network as Defendants contend.

[17] '879 Patent, Claim 1.

specification, they mistakenly conclude that the term is used interchangeably with "intercept."[18]

However, as AIP's Opening Brief explained, Defendants ignore other embodiments in which

"intercept" and "node" do not overlap and in which they are separate elements with different

functions.[19]  As the specification conspicuously states, an access device *may but need not*

incorporate an "intercept."  (*See* '879 Patent at 14:5-6 (stating that an intercept "may be part of

*or separate* from access devices") (emphasis added); *id.* at 11:50-51 (noting that an "access

device *may* have an intercept capability") (emphasis added).)  Accordingly, the Patent's

references to intercepts provide no basis for Defendants' narrow construction of this term.

Finally, building on their erroneous assumption that all nodes are intercepts, Defendants

cite to the dictionary definition of "intercept" and contend that it requires a "rerout[ing] from an

"intended path."  Yet Defendants ignore part of the definition:  'To stop, deflect, or interrupt the

progress….'  Even according to Defendants' cited definition, "intercept" can mean simply

"stop" or "interrupt the progress."  No "intended path" is required.

Defendants' construction is unnecessary, confusing, and unduly limiting, and it should be

rejected.

---

[18] Defendants' construction relies on the disclosure of a "transparent telecommunications node or intercept" in the specification.  *Id.* at 4:23-24.

[19] *See id.* at 9:27-29 ("The normal transmission from an access device is intercepted by an intercept device, which routes the transmission to a central local node."); *see also id.*at 13:19-22 ("Access devices may communicate with central local nodes directly or through intercept devices which direct the communication to the central local node."); *id.* at 13:63-66 ("In so doing, other central local nodes B or C may be used for part of the routing or else route directly to the access devices via the associated intercept *if any* for the access device.") (emphasis added); and *see id.* at 11:53-54 ("Node 158 (FIG. 7B) represents an access device on a different network."); *id.* at 12:21-24 ("FIG. 7C is the same as that of FIG. 7A, except that an additional node 160 between nodes 152, 154 is shown to illustrate that the routing between nodes 152, 154 may not be direct.").

### 6.    "Receiving a transmission in a first format through a first communication network from a first access device"[20]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. | Receiving a transmission in a first format that originated from a first access device, entered a first communication network and passed out the other side of that first communication network. |

Defendants' brief strongly supports *AIP's* position that this term does not require construction.  In their argument, Defendants concede that the transmission need not "originate" from the first access device, now stating instead that the first access device "sends a transmission," or that the transmission "comes from" the first access device.  They also concede that the access device may not be immediately connected to the network or the equipment that performs the converting step, arguing merely that "the transmission comes from the first access device, before it enters the first communication network" – a fact on which all parties are in agreement.

Yet, despite providing neither support nor argument for the unnecessary limitations they set out in their definition, Defendants continue to maintain that this same definition should be adopted.  Bafflingly, even though Defendants do nothing more than explain the plain language of the term here, they continue to insist that construction of this term is necessary.

Because Defendants' brief clearly supports AIP's position, AIP respectfully submits that this term should be accorded its plain and ordinary meaning, and no construction is necessary.

---

[20] '879 Patent, Claim 1.

7.     **"First communication network,"[21] "Analog telephone network"[22] and "Digital telephone network"[23]**

| '879 Patent Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **First communication network** | No construction needed. | A single network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| **Analog telephone network** | No construction needed. | A single all-analog network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| **Digital telephone network** | No construction needed. | A single all-digital network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |

*First Communication Network*.  Defendants' arguments mistakenly import several limitations in their attempt to advocate for an unnecessary and unsupportable construction.  The claim at issue is focuses on "receiving" a transmission, not on the type of network through which the transmission is received."  Indeed, there is no requirement that this network be a "single network", as argued by Defendants.  Instead, according to the specification, a first communication network can be comprised of multiple networks (including networks of different types; (*id.* at 1:57 and 2:22-27)) located between a calling access device and the equipment (or their parts) that receive the transmission prior to the second step of the claim.

As discussed in AIP's Opening Brief, contrary to Defendants' argument, the intrinsic record does not require *the first communication network* itself to employ a particular telecommunication protocol for communication between a plurality of telephones.  In fact, the

---

[21] '879 Patent, Claims 1 and 4.
[22] *Id.*, Claims 1 and 4.
[23] *Id.*, Claims 1 and 4.

specification supports a construction in which the same network includes different devices (*e.g.*, telephones and fax machines), or different varieties of the same device (*e.g.*, rotary telephones and DTMF telephones) that might not be able to "communicate" with each other via a particular protocol.  Additionally, a first communication network need not include "a plurality of telephones", because this network can include a variety of devices,[24] (*e.g.*, a telephone and a facsimile machine,[25] etc.).

 <u>Analog Telephone Networks and Digital Telephone Networks</u>.  As discussed above, Defendants are mistaken in their assumption that a "first communication network" cannot be comprised of multiple networks.  Moreover, the added "all (analog or digital)" limitation is misplaced, in light of the devices that interconnect different networks and may have non-analog or non-digital components.  (*See, e.g., id.* at 4:64-66 ("At the first central local node 18, the call from the calling location 12 is converted to a data signal which is then sent over a data network").)

 8.  **"Sending the converted transmission . . . for reception by a second access device"[26]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. | Sending the transmission in the second format . . . so that the transmission in the second format can be received <u>and used</u> by the second access device. |

---

[24] *See, e.g., id.* at 4:36-42 ("While phonecalls are certainly one form of communication envisioned, the invention covers any type of communication, whether it involves public service telephone networks, cellular networks, paging networks, *data networks*, analog networks, etc.  A call is to be interpreted as *any form of communication over a network and not limited just to voice phonecalls*.") (emphasis added).

[25] *Id.* at 6:40-42 ("Users may . . . send faxes to remote locations. . .").  *See also id.* at 9:41-43 ("The network access devices . . . could be a telecopier, telex, voice telephone, cellular phone, radio phone, data entry terminal, etc.").

[26] '879 Patent, Claim 1.

Defendants contend, incorrectly, that "sending the converted transmission . . . for reception by a second access device," requires the transmission to be received by the second access device in the second format, where the second access device is capable of receiving the transmission in the second format.[27]  Such a construction ignores the clear teachings of the specification.[28]  (*See* AIP's Opening Brief at 21.)  The specification makes clear that while a transmission may be intended "for reception by a second access device," it may also undergo a further conversion before it is ultimately received.  Indeed, according to the plain language of Claim 1, it is the "further format" – the format into which the transmission is converted in its *second* conversion – that is expressly described as "suitable for the second access device."  Defendants contend that the "antecedent basis" for "the converted transmission" is the transmission *in the second format*, and that "sending the converted transmission . . . for reception by a second access device" requires that the second access device receive and use the transmission in the second format.  To the contrary, as the Claim and the specification show, the transmission does undergo a conversion to a "further format suitable for the second access device."  Thus, there is no requirement that the transmission in a second can be received and used (not merely sent) in a second format.

Defendants' reliance on *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1339-40 (Fed. Cir. 2010) is similarly misplaced.  Defendants rely on *Vizio* to argue that the transmission must be "for reception" by a second access device *only in its converted form*.  But here again the proper understanding of the claim is simply that *the transmission* is sent "for reception" by the second access device, which may ultimately receive it in a different format.  In *Vizio* there were

---

[27]  Def. '879 Brief at 15.

[28]  '879 Patent at 4:64-5:7 ("Prior to reaching the called party, the [internet protocol] data signal is reconverted into voice . . . to be transmitted to the destination 14 via a public communications network or other connection line . . . All internode connections are via the data network.")

no references to the specification that provided context for the term at issue, "a channel map for identifying . . . ." Here, by contrast, both the embodiments disclosed in the specification and the logic of the claim itself show that Defendants' narrow construction is unwarranted.

### 9. "A further format suitable for the second access device"[29]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. (Other than "access device," above.) | A further format for the transmission that can be received and used by the second access device. |

Defendants have identified no evidence that would support reading the single word "suitable" to mean "can be *received and used* by the second access device" (emphasis added). There is simply no reference in the specification or the claims to mandate such a reading of the plain language of this term. Defendants' formulation is particularly unworkably vague and imports extraneous limitations into the claims with respect to the requirement that the further format can be "used" by the second access device. This added requirement suggests that the second access device must be able to process the transmission in some undetermined way constituting "use," as opposed to mere "reception." "Use" has nothing to do with the claims.[30]

Defendants' arguments based on extrinsic evidence are also transparently flawed. Defendants attempt to rely on *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330 (Fed. Cir. 2010), in which "suitable *for use*" was construed to mean "capable of being used," ignoring the obvious distinction that in *Vizio* the term at issue was not "suitable" but rather "suitable *for use*."

---

[29] '879 Patent, Claim 1.

[30] Defendants' insistence that the "further format" be defined as one that can be received by the second access device is likewise misguided. The '879 Patent specification never refers to a format as suitable for reception by a device. The only references to any variants of "suitable" formats in the Patent relate to networks. *See* '879 Patent at 13:49-51 ("The converters convert the form of the communication to suit the particular network over which the communication will be routed[.]"; *id.* at 13:58-61 ("The main processor and router route the communications through appropriate converters if necessary to suit the network being utilized for routing[.]").

Similarly, their argument based on dictionary evidence is hopelessly attenuated and circular.

Defendants' relied-upon definition of "suitable," as being "appropriate to a purpose or occasion,"

plainly does not match the context in which the term appears in the patent (an access device is

neither a purpose nor an occasion).  They then proceed to assign a "purpose" to the second

access device (receiving a transmission), which conveniently matches their desired conclusion.

Such reasoning proves nothing, and even if it were accepted, it would still provide no basis for

adding the requirement that the further format can be "used" to the definition.

Notably, Defendants' constructions for "further format" conflict with their construction

of "sending a converted transmission . . . for reception by a second access device.  Defendants'

constructions require that the transmission be received used by the second access device in both

the second and the further format.  Defendants contend that this inconsistency makes the claim

indefinite.  In fact it is nothing more than the product of their own tortured and unsupported

constructions.

**B.      '654, '579, and '756 Patents[31]**

**1.      "An intercept" / "The intercept"[32]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Device for intercepting and directing a transmission | A device that transparently reroutes a phone call from its intended path to an alternative path. |

Defendants' proposed construction of "intercept" includes multiple elements that are not

supported by any relevant evidence and that improperly narrow the claim.  Contrary to

Defendants' construction, the function of the intercept is not limited to "rerouting" a call from its

"intended path."  An intercept can also stop or terminate a call completely, or simply select from

---

[31] This section does not relate to claims against Defendant Level 3.
[32] '654 Patent, Claims 1 and 5.

a choice of different paths without "rerouting" the call from any previously "intended" path. (*See* AIP Opening Brief at 33-34[33]; *see also* '654 Patent Claim 5 (referring to an intercept as that "selects a route" with no reference to a pre-existing "intended" path) and Claim 1 (comprising a first step of "selecting a transmission path").)  Defendants' notion of an "intended path" that somehow exists before the intercept receives the transmission is a fiction with no basis in either the claims or the specification.  The Patent contains no requirement that an "intended path" be identified prior to that selection.

None of the references in Defendants' Non-'879 Brief actually supports their narrow construction requiring a "rerouting" from an "intended path."  Their dictionary definition, "[t]o stop, deflect, or interrupt the progress or intended course of," by its terms merely includes, but does not require, a "deflection" or "rerouting" (as opposed to the stopping or interrupting) of an "intended course" (as opposed to the more general "progress").  (*See* Def. Non-'879 Brief at 5 (citing The American Heritage Dictionary (1992) at p. 939 (Ex. 31)).)  Defendants' reference to the prosecution history of the U.S. Pat. No. 5,710,809 is also perfectly consistent with AIP's construction of "intercept" and provides no support for Defendants' unduly restrictive construction:  the language they quote refers merely to selecting the appropriate route for a transmission.  It contains no reference to a previously intended route or to a rerouting of any kind.  *See* Def. Non-'879 Brief at 5 quoting File History of U.S. Pat. 5,710,809, August 27, 1996 Resp. to O.A. at 6 (Ex. 31)).

As noted in AIP's opening brief, the inclusion of "transparently" in Defendants' construction renders part of the claim superfluous, and it should accordingly be rejected.  *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)

---

[33] AIP's Opening Brief included evidence from the specification for the '654 Patent, corroborated by references from the '756 Patent.

(construction giving meaning to all terms in a claim is preferred); *see also* AIP Opening Brief at

34.[34]

Contrary to Defendants' assertions, AIP's construction is sufficiently narrow to

distinguish the intercept from the other network devices mentioned by Defendants that simply

allow traffic to pass through.  The intercept according to AIP's definition does more than merely

allow transmissions to pass through following pre-established routes:  it "directs a transmission."

Defendants contend that the intercept may perform this function only in a very particular, limited

way by "rerouting" a transmission from its "intended path."  The evidence does not support

Defendants' narrow reading of the term.

> **2.** **"In a manner transparent to a/the calling party and a/the called party"[35] / "In a manner transparent to the calling party telephone user equipment and the called party telephone user equipment"[36] / "In a manner transparent to the users of the calling party access number and the called party access number"[37, 38]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Transparent is pertaining to a device or system that processes data without the user being aware of or needing to understand its operation.<br><br>Otherwise, no construction needed. | Without user input during the call, or user awareness of the system handling the call or the stages of the connection process. |

AIP's proposed construction of this term is the exact definition provided by the Patentee

during the prosecution of the '654 and '579 Patents.  *See* '654 Patent file history, 10/29/1998

Response to Office Action, at 3 (Ex. 6, at AIPC00001158).  Defendants' construction is an

---

[34] Also as noted in AIP's Opening Brief, by limiting the role of the intercept to the rerouting of "a phone call" Defendants improperly exclude other types of transmission.  Defendants' Non-'879 Brief offers no argument or support for this unwarranted additional limitation.

[35] '654 Patent, Claim 1; '579 Patent, Claims 1 and 5.

[36] '654 Patent, Claim 5.

[37] '756 Patent, Claim 8

[38] AIP contends that only the term "transparent" requires construction, and no construction is necessary for the other elements of the terms grouped above.

ambiguous concoction that improperly narrows the language of the claims.  Without any

evidentiary support, Defendants seek to import three inappropriate, vague, and unduly narrow

limitations – excluding from the scope of the claim (1) "user input during the call," (2) "user

awareness of the system handling the call" or (3) user awareness of the "stages of the connection

process."[39]  Defendants' "without user input" requirement, which could be read to preclude user

input of any kind during the call, would contradict the intrinsic record, which contemplates

various forms of user input.  (*See* AIP Opening Brief at 24.)  Similarly, Defendants'

requirements that users be "unaware" of the system handling the call or the stages of the

connection could exclude systems even where the user has only a general awareness of their

existence (as distinct from their "operation," as the Patentee's definition requires).  Such a

construction would plainly defy logic, as it would eliminate virtually any system from the scope

of the claims.

Defendants do not stop there.  Without explanation, Defendants read out of the

construction a limitation ("without needing to understand [the device/system's] operation") that

the Patentee's own definition expressly included.  Defendants' construction improperly

disregards the Patentee's authority to act as his own lexicographer and define the terms of the

claims.

Defendants cite the prosecution histories of the '579 Patent, the '654 Patent, and the

original parent application 08/320,269 ("the '269 Application") – arguing that somehow the

---

[39] As AIP noted in its Opening Brief, Defendants' description of what, exactly, the user must be unaware of is ambiguous:  on the one hand, the construction might require no user awareness of (1) the system handling the call or (2) the stages of the connection process; on the other hand, it might require no user awareness of the system handling the call or [handing] the stages of the connection process.  In Defendants' Non-'879 Brief they interpret their own construction in the first of these two possible ways (requiring unawareness of both the system and the steps, not just the system).  Nevertheless, the language of their proposed construction remains unclear.

Patentee "disavowed" the definition that he offered *in the very documents they cite* and agreed to

the additional limitations that Defendants propose.  Their argument misreads the prosecution

histories and misapplies the doctrine of claim scope disavowal.

As Defendants correctly note, in distinguishing his invention from the Moll reference, the

Patentee pointed out several very particular ways in which Moll did not perform transparently –

emphasizing that Moll required "special dialing of access numbers" during the call, that in Moll

the user "receives an announcement that the call will be handled by REDIC" (the system

processing the call), and that Moll "subjecte[d] the caller and called party to frequent recorded

announcements concerning various stages of the call connection process."  (*See* Def. Non-'879

Brief at 7 (quoting File History U.S. Patent Application 08/320,269 ('269 App. FH), May 6,

1996, Resp. to O.A. at 9 (Ex. 5); '579 File History, Mar. 15, 2002, Resp. to O.A. at 2-3 (Ex. 7);

'654 File History, Jan. 15, 1998 Letter of Applicant at 6-7; Oct. 29, 1998, Resp. to O.A. at 2-3

(Ex. 6)).)  All these statements distinguishing Moll are perfectly consistent with the Patentee's

definition and with the construction AIP now proposes:  all of the non-transparent elements in

Moll that Defendants point to would make the user aware of the "operation" of the system by

announcing different phases of the process.  Moreover, none of the particular examples of "non-

transparent" operation that the Patentee identified in Moll supports the much stricter limitations

in Defendants' illogical and restrictive construction.  Merely by noting that "special dialing of

access numbers" is inconsistent with transparency, the Patentee did not "disavow" all forms (or

indeed any other form) of user input.  Similarly, by arguing that Moll is not transparent because

"announcements" are made during a call, the Patentee did not disavow all instances where a user

might be generally aware of the identity of the system processing the call or the stages of call

processing.  None of the statements on which Defendants rely represents the kind of "clear and

20

unmistakable disavowal" that would justify a departure from the definition of this claim term that

the Patentee himself endorsed.  *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136

(Fed. Cir. 2006).[40]

> **3.**   **"Determining whether a call from the calling location to the called party access number should be connected via the telecommunication network"[41] / "Means for determining whether a call from the calling location to the called party access number should be connected via the telecommunication network"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed<br><br>Structure:  a local node 16 and central switching unit 22 | Confirming a connection between the control location and the called party prior to connecting the calling party.<br><br>Structure:  central switching unit switch 22<br><br>Function:  confirming a connection between the control location and the called party prior to performing callback to the calling party |

Defendants' construction is an unwarranted departure from the plain language of the

claims; and, as AIP noted in its Opening Brief, it improperly narrows the claim language by

imposing several requirements that find no support in the record.

Defendants' improperly narrow construction flows from their erroneous view that "the

claims of the '579 and '654 Patents describe only a "'call back' function" consisting of a "two

call process."  This is simply not the case.  The asserted claims contain no callback requirement,

*See* AIP Opening Brief at 29-33; and the fact that other claims, which depend from the asserted

claims, do expressly claim callback strongly indicates that the asserted claims are not so

---

[40] In addition, the Patentee's reliance on multiple factors showing that Moll does not operate "transparently" makes it unclear whether any single factor, or which combination of factors, is necessary to distinguish the invention as transparent over Moll.  *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1378 (Fed. Cir. 2008) ("[A] multitude of distinctions may serve to make any single distinction in the group less clear and unmistakable as the point of distinction over prior art and as a critical defining point for the invention as a whole.")
[41] '579 Patent, Claim 1

limited.[42]  *See Liebel-Flarsheim*, 358 F.3d at 910 (explaining that when the plain language of asserted and unasserted claims is different, it triggers the doctrine of claim differentiation). *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").  The asserted claims should not be construed as confined to the "call back function" as Defendants contend.

The specific additional limitations that Defendants seek are all unwarranted.  According to Defendants, the step of "determining whether a call . . . should be connected" can take only one form – "confirming a connection between the control location and the called party prior to connecting the calling party."  But the "determining" step may include parts that have nothing to do with "confirming a connection" that has already been established.  (*See* AIP Opening Brief at 29-30.)[43]  "Determining whether a call . . . should be connected" is both different from and broader than Defendants' "confirming a connection" construction.

Similarly, according to Defendants, the "determining" step must take place "prior to" a callback that connects the calling party.  Here again, Defendants seek to import limitations that follow from their mistaken callback theory.  The asserted claims do not require a callback at all; and even where the patents do describe callbacks, the "determination" need not occur "prior to" the callback.  (*See* AIP Opening Brief at 30, citing '654 Patent at 7:32-40; '579 Patent at 7:38-46.)

---

[42] *See* '579 Patent, Claim 4 (dependent from Claim 1); '654 Patent, Claim 2 (dependent from Claim 1).

[43] For example, Figure 2, and the corresponding description of the preferred embodiment ('579 Patent at 6:51-7:33), describe the initial determination (by switch 22) whether or not to accept the call from the calling location (step 60) for connection with the called party (and if not, local node 16 would route the call through a local PTT or another network, or even terminate a call). *Id.*  This means the determining step can be completed before any connection or without one.

Defendants make the irrelevant observation that the step of establishing a connection to the called party before placing a callback to the calling party was relied upon to distinguish the invention over prior art that disclosed callbacks. (*See* Def. Non-'879 Brief at 10 quoting '579 FH Mar. 15, 2002, Resp. to O.A. at 3-5 (Ex. 7).)  But the statements on which Defendants rely were relevant only to embodiments involving callbacks.  Merely by disclaiming a particular callback method, based on the sequence of connections, the Patentee did not concede that invention requires callback at all, or more particularly that the determining step is limited to confirming a connection between the called party and the control location.

Defendants incorrectly claim that "every embodiment disclosed in the '579 and '654 Patents reflects" their description of the invention.  This assertion is both untrue *and* immaterial.  *First*, as discussed above, at least one embodiment does not support Defendants' construction and its "confirming . . . prior to connecting" theory.  (*See e.g.*, '654 Patent at 7:32-40; '579 Patent at 7:38-46.)  *Second*, even if all the embodiments in the patents were as Defendants describe, the claims would not be limited to those embodiments.  *Liebel-Flarsheim*, 358 F.3d at 906 (claims not read as limited to an embodiment where Patentee has not "demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'").

Defendants propose a structure of central switching unit 22 as the means for performing the proposed function.  However, as discussed in AIP's Opening Brief, both local node 16 and central switching unit 22 perform the proposed function.[44]

---

[44] *See* AIP Opening Brief at 29-30; '579 Patent at 6:51-7:33; '654 Patent at 6:46-7:28; and Figs. 2 and 3 of both.

4.  **"Connecting the call from the calling party access number to the called party access number"[45] / "Means for connecting the call from the calling party access number to the called party access number"[46]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed<br><br>Structure is central switching unit 22 | Connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and called party.<br><br>Structure:  Central Switching Unit 22 capable of initiating a reverse direction phone call and structural equivalents.<br><br>Function:  Connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and the called party |

Defendants' mistaken construction of the disputed "connecting" term is presented in their brief along with the "determining" term just discussed, and it flows from the same fundamental misconceptions about the nature and scope of the invention.  Defendants' arguments for the unwarranted extraneous limitations they propose for this term are addressed in AIP's Opening Brief at 29-33 and *supra* at Section B.3 (addressing both the "determining" and the "connecting" terms).

5.  **"Calling telephone equipment"[47] / "Calling location"[48] / "Calling [party] telephone user equipment"[49]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed | Calling telephone. |

---

[45] '579 Patent, Claim 1.
[46] '579 Patent, Claim 5.
[47] '579 Patent, Claims 1 and 5; '654 Patent, Claim 5.
[48] '579 Patent, Claims 1 and 5; '654 Patent, Claim 1.
[49] '654 Patent, Claim 5.

24

The Patents use different terms for "calling location," "calling telephone equipment,"

"calling [party] telephone user equipment."  But according to Defendants, despite the obvious

distinctions drawn in the plain language of the claims, all these terms mean the same thing,

"calling telephone."  Defendants' strained interpretation improperly narrows the claims to

require voice communications over a "calling telephone."  But none of the evidence they offer

suggests that the disputed terms are synonymous – with each other or with "calling telephone," a

term that does not appear (unless followed by "equipment") anywhere in the Patents.

Defendants suggest that just because all the disputed terms are modified by "calling,"

they are interchangeable.  But quite obviously a "location" is not the same as a "party," and

neither is the same as "telephone equipment."  The fact that each can be "calling" does not

eliminate the distinctions between them.[50]

Similarly, the fact that each of the disputed terms can be associated with identifying

information does not make them interchangeable.  A single phone number may be associated

with a home phone, a home, and the person who owns both the phone and the home.  It does not

follow that the phone, the home, and the person are interchangeable.

Finally, Defendants' contention that all the terms should be treated the same because

"they are each recited to have the same goal" is simply unintelligible:  to support it Defendants

cite Claim 1(d) of the '654 Patent, which includes none of the disputed terms.  Moreover, even if

---

[50] In the context of a patent that relates to making calls, using a relevant modifier such as "calling" for distinct things is not only conceivable, but most natural. In fact, this modifier is used for other nouns such as "party" and "technology."  *See, e.g.*, '654 Patent at 1:65 *and* 3:27.

the various different items described by the disputed terms did somehow have the "same goal,"

that fact would not support the inference that they were therefore the same thing.[51]

The intrinsic record also distinguishes "telephone equipment" from a "location."  (*See,*

*e.g.*, '579 Patent at 4:20-21; '654 Patent at 4:15-16 ("Node 16 is interfacable [sic] with a PABX

*[telephone equipment]* at the user *location*.") (emphasis added).)  Moreover, the distinction

between "equipment" and "location" is clear from the simple fact that multiple pieces of

telephone equipment may be present at a single location.  The intrinsic record specifies that calls

originate and terminate at "locations" with assigned telephone numbers, and each such location

(*e.g.*, a hotel) may have multiple pieces of telephone equipment associated with the assigned

telephone number.[52]

The specification affirmatively shows that these terms are not interchangeable.  For

example, it is clear that a "called telephone" and a "called location" (and thus presumably a

calling telephone and a called location) can have different numbers.  The '579 Patent at 4:63-5:4

and '654 Patent at 4:58-66 state that "there is assigned a called party identification number

(*typically* the called telephone number) for the called location 14."  (emphasis added).[53]

Defendants' attempt to define all these disputed terms specifically as "calling telephone"

is also unsupported by any evidence.  "Calling location" is simply different from "calling

---

[51] By Defendants' logic, "calling party" must also have been used interchangeably with all these terms since it:  (1) is used with the "calling" modifier; (2) has identification information associated with it; and (3) has the goal of connection to the called party.

[52] U.S. Patent Application No. 08/320,269, Application for Letters Patent, at 11 (Ex. 5 at AIPC00003918), and at 13 (AIPC00003920) (describing how private automatic branch exchanges (PABX) (telephone switching systems in *e.g.*, hotels) are capable of initiating phone calls, and how nodes interface therewith at user locations)

[53] Equating calling location and calling (party) telephone (user) equipment is also improper under the doctrine of claim differentiation. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("[T]he use of . . . different terms in the claims connotes different meanings").

telephone"; and the terms "calling telephone equipment"[54] and calling (party) telephone user equipment," though they plainly include telephones, are broader than "calling telephone." The specification makes clear that various types of equipment can be used, *e.g.*, telephones,[55] fax equipment,[56] private automatic branch exchange (PABX) equipment,[57] etc. Defendants' construction would thus improperly limit the scope of the claims.

Defendants try to support their "calling telephone" construction by citing to the discussion of a "successful" call back to the calling location in the prosecution history.[58] *See* Def. Non-'879 Brief at 13. It is not clear why Defendants think a successful call back requires a telephone as distinct from other possible devices, and in fact Moll, to which Defendants' quoted passage refers, uses the term "telephone" to mean different types of telephone equipment, *e.g.*, "ISDN, TWX, TELEX, teletype, video, and other terminals." (Ex. 21 at 3:59-60); *See also* '879 Patent at 13:22-24.[59] In addition, as noted in AIP's Opening Brief, on the same page of the prosecution history cited by Defendants,[60] the Patentee, when referring to his invention rather than the prior art, used the term "telephone equipment," not "telephone," thereby connoting a broader meaning than Defendants' construction provides.

Finally, even if it were true that a successful callback to a calling location requires a telephone, it would not follow that the calling location and the telephone associated with it are one and the same. Defendants' proposed construction improperly disregards the distinction.

---

[54] '579 Patent, Claims 1 and 5; '654 Patent, Claim 5.
[55] *See* '579 Patent at 3:48-52; '654 Patent at 3:44-48.
[56] *See* '579 Patent at 4:5-10; '654 Patent at 3:66-4:5.
[57] '579 Patent at 4:20-21; '654 Patent at 4:15-16.
[58] '579 Patent file history, 3/15/2002 Response to Office Action, at 4 (Ex.7 at AIPC0003138).
[59] It should be noted that Moll is also referenced in the specification of the '579 and '654 Patents, at 1:64-65, and 1:63-64, respectively. Consequently, the devices listed in Moll should be considered as incorporated by reference into the specification of the '579 and '654 Patents.
[60] *See* footnote 58 *supra*.

6.  **"Selecting a transmission path connecting a calling location and a called location"[61] / "An intercept that selects a route passing through a control location for connecting a calling party telephone user equipment to a called party telephone user equipment"[62]**

| Patent Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **Selecting a transmission path connecting a calling location and a called location** | No construction needed. | Deciding whether to signal the called party through a data network instead of through the voice network. |
| **An intercept that selects a route passing through a control location for connecting a calling party telephone user equipment to a called party telephone user equipment** | Intercept is a device for intercepting and directing a transmission.<br><br>Otherwise, no construction needed. | An intercept that decides whether to signal the called party through a data network instead of through the voice network. |

Defendants have offered no support for their construction limiting possible "transmission paths" for this term to a "data network" and a "voice network." The very figure they cite in support of this restriction ('654 Patent, Figure 2) shows that the choice of networks is not so limited: as the Figure and accompanying description show, if its signal via Channel 20 to Switch 22 is not accepted, local node 16 can choose to connect the call using the PTT or yet another "different network." (*See* '654 Patent Fig. 2 (Block 61); *id.* at 6:65-7:2.)

In addition, as discussed fully in AIP's Opening Brief and *supra* at Section B.5, Defendants' substitution of "called party" for "called location" in their proposed construction is improper because the terms are not interchangeable.

Finally, to the extent that Defendants' argument relies on the erroneous assumption that the invention is limited to "a system for call connection using 'call back,'" Def. Non-'879 Brief at 13, it improperly attempts to limit the invention to a particular embodiment described in the

---

[61] '654 Patent, Claim 1.
[62] '654 Patent, Claim 5.

specification.  As AIP pointed out in its Opening Brief and *supra* at Section B.3, the callback

function is simply not a feature of every claim of the Patent, and in fact its appearance in

*dependent* Claim 2 shows that it is not a required element of the independent Claim 1.

> **7.    "Transmitting to a control location identification for the calling telephone equipment and the called telephone equipment"[63] / "Means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment"[64]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction needed<br><br>Structure is transparent telecommunications node 16 (intercept) and structural equivalents | Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels.<br><br>Structure:  transparent telecommunications node 16 (intercept) and structural equivalents<br><br>Function:  Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels |

Defendants import a cumbersome and unjustifiable 14-word limitation into this claim

term, and the portions of the specification they cite do not support their strained and unduly

narrow construction.  The language on which Defendants rely merely describes the transmission

of calling and called party numbers (potentially along with other information) that takes place if

a decision is made to route a call through "external channel 20."  (*See* Def. Non-'879 Brief at 15

(quoting '579 Patent 5:7-10).)  The cited passages contain no reference at all to any "network

independent from the telecommunications network over which the voice communication

travels."  Moreover, even to the extent that the "external channel 20" might in some embodiment

---

[63] '579 Patent, Claim 1.
[64] *Id.*, Claim 5.

constitute or be a part of such a network, the scope of the claim should not be limited to any such an embodiment. *Liebel-Flarsheim*, 358 F.3d at 906.

The specification makes it clear that the "tranception channel 20," which is described as a communication "mode external to the telecommunications voice network," "may take any one of a variety of forms" and provides a list of examples "without limitation." ('579 Patent at 4:31-39.) Defendants' construction needlessly limits and complicates the language of the claim, introducing extraneous issues concerning, for example what may constitute a "network," and how that network might be "independent" form the telecommunications network. Their effort to burden the claim language with imported limitations should be rejected.

Defendants also improperly limit the claim language to telephones as opposed to telephone equipment and to voice communications as opposed to other communications. Defendants have offered no specific arguments for those unwarranted restrictions. With the exception of this substitution and the unsupported 14-word limitation they seek to import, Defendants' construction tracks the language of the claim, confirming that it requires no construction beyond plain meaning.

AIP agrees with Defendants' proposed structure of transparent telecommunications node 16 for performing the transmission. However, as noted in its opening brief, AIP disagrees with Defendants' proposed function, which is identical to its construction of "transmitting . . ." and for which, as stated above, Defendants have provided no support.

### 8. "Access location"[65]

Defendants proposed construction improperly equates "access location" with "access device." Plainly a "location" is not the same as a "device"; and neither of the references to the

---

[65] '756 Patent, Claim 8.

specification cited by Defendants indicates otherwise.[66]  There is nothing about "evaluating

different communication access locations to determine where to send a communication" that

requires an "access location" to be synonymous with an "access device" as opposed to, for

example, a phone line or number, or a network.  ('756 Patent at 1:11-22.)  Similarly the

specification's description of "checking the status of each of these communication networks at

different access locations to determine whether any are being accessed by the party at that time"

does not require that an "access location" be a particular "device."  (*Id.* at 5:18-23.)  To the

contrary the claims and specifications distinguish "access location" from end-user device.  (*See*

AIP Opening Brief at 36-37.)

      Similarly the Patent's reference to a called party "designat[ing] the main identifications

(addresses etc.) or phone numbers where it wants to be reached and what networks are to be

employed" (immediately following a description of "checking the status of . . . communication

networks at different access locations") reflects an understanding of "access locations" different

from and broader than the "access devices" of Defendants' proposed construction.

      The clear distinction between an "access device" and an "access location" is also

reflected in the Patent's description of a particular scenario in which the system "track[s] down"

a called party not by checking an access device but by checking multiple networks on which

called party and his access device may be located.

> "Assume that the [called] party spends half the year in North
> America using NACM cellular network and the remainder in
> Europe using GSM internet network hookup. . . in accordance with
> the invention. . . both nodes check their respective cellular systems

---

[66] Defendants also rely on *Edwards Lifesciences LLC v. Cook*, 582 F.3d 1322, 1328 (Fed. Cir. 2009), and irrelevant piece of extrinsic evidence from a different case, regarding a different patent, in which the court defines "access device" as "end user device that is the ultimate initiator or ultimate destination of the transmission."

to locate on which the party is or has been accessing or which has
been turned off."

('756 Patent at 5:51-67.)

9.    **"Checking a status on each of a plurality of communication access
locations each associated with said called party access number to
determine which is accessible"[67]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction needed. | Checking availability for each of a plurality of access locations prior to initiating a call to the called party. |

Defendants' proposed temporal limitation ("prior to initiating . . . ") is not supported by

the claim language; and it contradicts the specification of '756 Patent, which includes

embodiments where checking occurs subsequent to first steps that the calling party takes to

initiate a call.  (*See* AIP Opening Brief at 38-39 (quoting '756 Patent at 2:27-36 and 6:8-16).)

Defendants' construction appears to contemplate a process in which the status of access

locations is checked not before the call is initiated by the calling party, but rather before

"ringing" or fully connecting a call to the called party.  (*See* Def. Non-'879 Brief at 17.)

However this meaning is by no means clear from Defendant's proposed language, and their

construction needlessly complicates the claim, potentially suggesting that the claim involves

processing a call in some way that would constitute "initiating a call to the called party"

(language that appears nowhere in Claim 8) rather than "routing . . . communications through . . .

access locations," as the language of the claim actually requires.  Defendants' proposed

construction introduces unnecessary ambiguity and unduly narrows the claim by suggesting that

the limitations of Claim 8 can be satisfied only with a "callback" embodiment in which separate

calls to the calling and called parties are bridged by a control location.  Notably, Claim 1, which

---

[67] '756 Patent, Claim 8.

32

claims such a call bridging embodiment, refers to a control location "initiating" separate calls; and the asserted Claim 8 refers neither to a control location nor to any such "initiating" of calls. Defendants' construction is thus an improper attempt to import limitations of a different embodiment into Claim 8, and the Court should not adopt it.

As set forth in its Opening Brief, AIP also objects to two other features of Defendants' construction:  its substitution of "checking availability for" for "checking a status on . . . to determine which is accessible" and its omission of the limitation that each access location is "associated with said called party access number."  Defendants have offered no arguments in support of these features of their construction.

December 11, 2013

OF COUNSEL:

COHEN & GRESSER LLP
Karen H. Bromberg
Francisco A. Villegas
Damir Cefo
800 Third Avenue
New York, New York 10022
(212) 957-7600
kbromberg@cohengresser.com
fvillegas@cohengresser.com
dcefo@cohengresser.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff in C.A. Nos. 12-1688-1692-GMS*

MORRIS JAMES  LLP

/s/   Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

33

*Attorneys for Plaintiff in C.A. Nos. 12-617-GMS*