# Exhibit 5

FILE HISTORY

US 5,710,809

| | |
|---|---|
| PATENT: | 5,710,809 |
| INVENTORS: | Mashinsky, Alexander |
| TITLE: | Method of and system for efficient use of telecommunication voice networks |
| APPLICATION NO: | US1996728670A |
| FILED: | 10 OCT 1996 |
| ISSUED: | 20 JAN 1998 |
| COMPILED: | 21 OCT 2011 |

379 207 Class Subclass ISSUE CLASSIFICATION

5710809

UTILITY SERIAL NUMBER 08/728670 PATENT DATE JAN 20 1998 PATENT NUMBER

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| [illegible] | [illegible] | 379 | 207.000 | [illegible] | Weaver |

APPLICANTS [illegible] NEW YORK, NY.

CL 262

[illegible] THIS APPLN IS A CON OF 08/[illegible] ABN'd

Yes OK SLW

[illegible] APPLICATIONS [illegible]
VERIFIED

NO SLW

11-2-04

FOREIGN FILING LICENSE GRANTED 10/28/96 [illegible] SMALL ENTITY [illegible]

| Foreign priority claimed / 35 USC 119 conditions met / Verified and Acknowledged | ☐ yes ☒ no / ☐ yes ☒ no / SLW Examiner's initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| | | | NY | 3 | 32 | 7 | [illegible] | [illegible] |

ADDRESS
Pennie & Edmonds
1155 Avenue of the Americas
New York, NY 10036

TITLE METHOD AND SYSTEM FOR [illegible] OF TELEPHONE [illegible]

U.S. DEPT. of COMMERCE • Patent and Trademark Office–PCT-436L (rev. 7-94)

PARTS OF APPLICATION FILED SEPARATELY

R. Logan
Applications Examiner

NOTICE OF ALLOWANCE MAILED
5-28-97

Scott L. Weaver
Assistant Examiner

CLAIMS ALLOWED

| Total Claims | Print Claim |
|---|---|
| 1 | 1 |

ISSUE FEE

| Amount Due | Date Paid |
|---|---|
| $645.00 | 7/14/97 |

Supervisory KRISTA M. ZELE PRIMARY EXAMINER GROUP ~~2300~~ 2600
Primary Examiner

DRAWING

| Sheets Drwg. | Figs. Drwg. | Print Fig. |
|---|---|---|
| 3 | 3 | 2 |

ISSUE BATCH NUMBER N-48

Label Area

PREPARED FOR ISSUE

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 8/92)

ISSUE FEE IN FILE

08/320269

| ISSUE CLASSIFICATION | |
|---|---|
| Class | Subclass |
| | |

[redacted]

| UTILITY SERIAL NUMBER | PATENT DATE | PATENT NUMBER |
|---|---|---|
| 08/320269 | | |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 08/320,269 | 10/11/94 | 379 | 202 | 2601 | [illegible signature] |

APPLICANTS

ALEXANDER MASHINSKY, NEW YORK, NY.

**CONTINUING DATA*********************
VERIFIED

No SW

**FOREIGN/PCT APPLICATIONS************
VERIFIED

NO SW

FOREIGN FILING LICENSE GRANTED 11/07/94 ***** SMALL ENTITY *****

| Foreign priority claimed / 35 USC 119 conditions met / Verified and Acknowledged (Examiner's initials) | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| ☐ yes ☒ no / ☐ yes ☒ no / SW | → | NY | 3 | 58 | 4 | $821.00 | 98601 |

ADDRESS

~~MELVIN K. SILVERMAN~~
~~2455 EAST SUNRISE BOULEVARD~~
~~SUITE 410~~
~~FORT LAUDERDALE, FL 33304~~

COBRIN GITTES
750 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022

TITLE

METHOD OF AND SYSTEM FOR EFFICIENT USE OF TELECOMMUNICATION ~~VOICE~~ NETWORKS

#4

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|
| NOTICE OF ALLOWANCE MAILED | Assistant Examiner | CLAIMS ALLOWED: Total Claims / Print Claim |
| ISSUE FEE: Amount Due / Date Paid | Primary Examiner | DRAWING: Sheets Drwg. / Figs. Drwg. / Print Fig. |
| Label Area | PREPARED FOR ISSUE | ISSUE BATCH NUMBER |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 8/92)

(FACE)

08/320269

**PATENT APPLICATION**

08320269

APPROVED FOR LICENSE ☐

INITIALS ______

# CONTENTS

| Date Entered or Counted | No. | Contents | Date Received or Mailed |
|---|---|---|---|
| RL | 1. | Application ✓ papers. 3Pcs | |
| | 2. | Revocation of atty. | 6-26-95 |
| | 3. | Notice of acceptance | 7/24/95 |
| | 4. | Pre-Amdt-a | 7-24-95 |
| | 5. | Suppe Pre. Amdt-B | 8-21-95 |
| 10-16 | 6. | Rej (3 mos) | 10-24-95 |
| | 7. | [illegible] | 4/5/96 |
| | 8. | Req. Ext. time (3) | 4-29-96 |
| 5-4 | 9. | Amdt. C (4-24-96 COF) | 4-29-96 |
| 7-8 | 10. | Final Rej (3 mos) | 7-16-96 |
| 8-28 | 11. | Amdt. D (N.E) | 8-28-96 |
| 8-29 | 11½ / 12. | Interview Summary / Advisory action | 8-30-96 |
| ~~8-6~~ | 13. | Interview Summary | 10-2-96 |
| | 14. | Notice of Abandonment | 11-13-96 |
| | 15. | | |
| | 16. | | |
| | 17. | | |
| | 18. | | |
| | 19. | | |
| | 20. | | |
| | 21. | | |
| | 22. | | |
| | 23. | | |
| | 24. | | |
| | 25. | | |
| | 26. | | |
| | 27. | | |
| | 28. | | |
| | 29. | | |
| | 30. | | |
| | 31. | | |
| | 32. | | |

(FRONT)

08/728670

PATENT APPLICATION

08728670

APPROVED FOR LICENSE

INITIALS

# CONTENTS

| Date Entered or Counted | | | Date Received or Mailed |
|---|---|---|---|
| | 1. | Application Prints papers. | |
| | 15 | Pre. Amdt. E | 10-10-96 |
| | 16 | Pre. Amdt. F | 10-10-96 |
| | 17 | Revocation / Power of Attorney | 12/26/96 |
| | 18 | Notice of Acceptance | 1/16/97 |
| | 19 | Pre. Amdt. G | 3-18-97 |
| 4-14 | 20 | Rej 3 mos | 4-14-97 |
| | 21 | Amdt / H | 5-22-97 |
| | 22 | Interview Summary | 5-23-97 |
| 5-27 | 23 | Notice of Allowance | 5-28-97 |
| | 24 | Power to Inspect | 8/11/97 |
| 9/27/97 | 25 | Formal Drawings (3 shts) set 1 | 9/24/97 |
| | 26 | Power to Inspect | Nov. 5 1997 |
| | 27 | PTO/Lmt JAN 20 1998 | |
| | 28 | | |
| | 29 | | |
| | 30 | | |
| | 31 | | |

(FRONT)

# 10/11/94 Application for Letters Patent

3 821-101

08/320269 728610

OCT 11 1994 PAT. & TRADEMARK OFF.

File No. 986-01

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICATION FOR LETTERS PATENT

BE IT KNOWN THAT I, Alexander Mashinsky, a resident of the State of New York and citizen of the Republic of Israel, have invented a certain new and useful improvement in a Method of and System for Efficient Use of Telecommunication Voice Networks, of which the following is a Specification:

FNS E1

BACKGROUND OF THE INVENTION

A long standing problem in the area of international telecommunications and, more particularly, in the area of initiating and completing international phonecalls over public switched service voice networks has been that a considerable portion of the so-called system time, that is, the period between initiation of a phonecall and either completion thereof or determination that the call cannot be completed (because of a no answer or busy signal) is non-billable in nature. For example, billing protocols, as they have evolved over time, both in the United States and abroad, only permit billing to the ultimate customer for the period between call completion and call termination as perceived by the ultimate customer. In other words,

under such established billing protocols, the ultimate customer (as opposed to an intermediary such as a hotel or aggregator) cannot be charged for the system time required to ring the called location to determine if the call can be completed. Further, such phonecalls do not permit billing for the so-called disconnect time, that being the time between the termination of the phonecall as perceived by the caller and the actual stand down or reset time by the public switched service network.

The prior art use of system time in such a non-productive fashion has also operated to limit total usable system capacity in areas where trunk, channel or bandwidth capacity is finite, as in third world situations and in satellite transception.

To minimize such non-billable system time and, as well, to effect other advantages, the development of so-called call back technology, also known as reverse direction phonecalling, has developed. In callback technology, a so-called network control module induces a callback from a central switching station associated with the called location. This call- back procedure has the advantage not only of reducing unbillable system time inasmuch as a callback will not be initiated if the called location is unreachable but, as well, to effect considerable saving in call

cost by virtue of the fact that call cost from Location A to Location B typically does not equal call cost from Location B to Location A, this being particularly the case in international phone communications.

The technology of point-to-point reverse direction phonecalling, both for purposes of minimizing system time and for purposes of minimizing call cost based upon the directionality of the call, is well developed in the art, as is exemplified by United States Patent No. 5,027,387 (1991) to Moll, entitled Reverse Direction Calling System.

Such reverse direction calling technology has, however, not been universally available. For example, in a hotel environment, a guest at the hotel has no means of answering a call-back directly since the callback must be received by an operator that must know in advance who the call is for and where to transfer it to. This difficulty, plus other factors relative to billing procedures in hotels, has prevented most major hotels from employing international callback services. Similar problems are encountered by other large facilities such as hospitals, industrial installations, governmental sites and telephone companies themselves.

A further limitation in the art of callback technology has existed in the area of teleconferencing of international calls in which, for reasons of reduction of system time use and avoidance of phone charges by high priced national phone companies, it is desirable to route a call, from a first foreign country to a second foreign country, through a third foreign country (known as a transit country) typically the United States, Canada or United Kingdom, to avoid the typically high country-to-country charge between the first and second countries. For example, in situations where call supervision exists, it is generally cost-effective to reconfigure what would otherwise be a call from Country A to Country B into the form of teleconferencing of two separate calls, namely, a call from Country C (typically the U.S.) to Country A, with a call from Country C to Country B. This procedure will, because of the high cost of calls originated from Country A, be less than the cost of a direct dialed Country A to Country B phonecall. In other words, where all legs of the CA and CB phonecalls are completed, the total cost of the teleconferenced CA and CB calls is less than the cost of the direct dialed Country A to Country B cost would have been.

The problem, however, with such callback and teleconferencing procedures has been that in situations where either or

both the CA and CB legs of the teleconference cannot be completed because, for example, of a busy or no answer at Locations A or B, the provider of the international callback service must absorb the cost of the system time associated with interrogating locations in Countries A and B in attempting to complete the CA and CB legs of the phonecall. As such, the international reverse callback procedure can involve considerable losses to the callback operator which can only be recovered by increasing the price charged for completed calls.

Another problem in international callback that can increase cost to the operator is that of reverse answer supervision after a call termination, or the lack thereof. That is, without a call completion signal transmitted back from the calling location to the transit country switch after call termination, it can be difficult for the transit switch (in Country C) to know when a call is finished. This issue can have devastating consequences to the callback operator.

The instant invention provides a solution to the above problems and, additionally, provides a means by which hotels, and other similarly situated establishments, can make use of international callback technology and, further, can do so on a more

profitable basis than has been available to any prior user of such technology. The present invention also addresses problems of billing to intermediaries and end users of callback facilities.

File No. 986-01

## SUMMARY OF THE INVENTION

The present novel method of use of a public telecommunications voice network (typically a public switched service network) includes the steps of assigning a caller identification number to a calling location and of assigning a called party identification number for the location to be called. Thereafter, use is made of a transparent communications node, associated with the calling location, which transmits said caller and called party identification and security numbers to a central switching unit in the nature of a digital tandem ISDN switch or private line data service which is associated with the called location. Said transmission of caller and called party identification number to the central switching unit proceeds through a data signalling ~~transception~~ channel independent of the public telecommunications voice network. Said central switching unit is then employed to interrogate the called location to obtain the call supervision status thereof. If said call status is that of an answer, said central switching unit will complete a first phonecall from said unit to the called location and will originate a second phonecall through the telecommunications network to the calling location. Upon completion of both phonecalls, they are teleconferenced, thereby placing the calling and called parties in

communication with each other. However, if said call status at the called location is that of a no answer or busy, an uncompleted call status signal is provided to the central switching unit. Thereafter, the central switching unit may either transmit a call status signal through said independent ~~transception~~ signalling channel to the local communications node to inform the calling location that the call cannot be completed or, alternatively, the central switching unit may not send any status signal whatsoever to the local communications node. Therein, a predetermined interval of silence from the central switching unit will be interpreted by the local communications node to mean that the call could not be completed. An appropriate advisory will be sent to the calling party. Upon termination of the second phonecall, an answer supervision signal is sent by the local node to the central switching unit.

F

F

It is, accordingly, an object of the present invention to provide an improved method and system of telecommunications network use which will operate to reduce system time and operator cost associated with teleconferencing of international calls involving at least one reverse direction phonecall.

It is another object to provide a system of the above type that will increase the efficiency of use of telecommunication resources.



9

It is a further object to provide a method which will reduce the cost of collect and person-to-person long distance phonecalls.

It is a yet further object to provide a system of the above type usable in connection with multi-trunk switching.

It is a still further object to provide an improved method of telecommunication network use which will enlarge the potential application of reverse direction telephone calling to areas, such as hotel and telephone company use, in which it has not heretofore been usable.

It is another object to provide a system of the above type having reverse answer detection after call termination.

The above and yet other objects and advantages of the present invention will become apparent from the hereinafter set forth Brief Description of the Drawings, Detailed Description of the Invention and Claims appended herewith.

File No. 986-01

## BRIEF DESCRIPTION OF THE DRAWINGS

Fig. 1 is a conceptual block diagram indicating the principles of operation of the inventive method.

Fig. 2 is a flowchart reflecting the programming of a first embodiment of the inventive system and method.

Fig. 3 is a flowchart reflecting the programming of a second embodiment of the invention.

File No. 986-01

DETAILED DESCRIPTION OF THE INVENTION

With reference to the system block diagram view of Fig. 1 there is, in conceptual form, shown a telecommunications network 10 which may, without limitation, include a public switched service network such as that of the well known public carriers, e.g., AT&T, MCI, and SPRINT or, alternatively, may comprise any of a number of private voice/fax telecommunications network.

Illustrated as the triangular symbol to the left of Fig. 1 is a calling location 12 and, in the triangular symbol to the right of Fig. 1 is represented a called location 14.

The square block to the upper left of Fig. 1 is representative of a transparent telecommunications node 16 which is local, e.g., private lined, to the calling location 12. Such a unit is commercially available from Voice Smart, Inc., Fort Lee, New Jersey, under the trademark HOTEL LOCAL NODE. Its various capabilities include means to induce a callback from a telephone central switching location. Node 16 is interfacable with a PABX at the user location.

File No. 986-01

The block to the lower left of Fig. 1 is representative of a first data message means 18 for receiving information from or providing information to local node 16. Data message means 18 also, as is more fully set forth below, provides information to data ~~transception~~ signalling channel 20 and is able to receive information therefrom. Data message means 18 is preferably provided with means to verify the identity and/or authority of calling location 12. Node 16 and means 18 may comprise the same physical unit.

F

It is noted that transception channel 20 represents a communication mode which is external to telecommunications voice network 10. That is, transception channel 20 may take any one of a variety of forms including, without limitation, ISDN switch packet message means, telex, TWX, leased data lines, shared leased data lines, statistical multiplexing of data lines, data or MF over voice (DOV), Satellite (VSAT), PCN, Radio, DTMF and the so-called public packet network.

The block to the upper right of Fig. 1 is representative of a central switching unit 22 which is associated with the called location 14. However, the central switching unit 22 may be physically located at a distance on the order of thousand of miles from location 14. Central switching unit 22 will typically be a



13

device in the nature of a digital tandem ISDN switch, also known as a VX switch. Digital tandem ISDN switches are known in the art and are available from such sources as Voice Smart, Inc., Fort Lee, New Jersey under the names of VX SYSTEM 4 and VX SYSTEM 24. In simplest terms, central switching unit 22 is a PABX capable of initiating a reverse direction phonecall when so instructed by a so-called automated attendant activated by the node 16 associated with the calling location 12, as is Taught in U.S. Patent No. 4,313,036 Jabara and in Moll supra.

The square at the lower right of Fig. 1 represents a second data message means 24, similar to said first data message means 18, the function of which is to facilitate transfer of information between said central switching unit 22 and said ~~transception~~ signalling channel 20. Second data means and unit 22 may comprise the same physical unit.

F

With respect to the method of use and operation of the telecommunications components shown in Fig. 1, the instant method entails the assignment by node 16 of a caller identification number to calling location 12. Similarly, there is assigned a called party identification number (typically the called telephone number) for the called location 14. Thereby, a phonecall 26 originating



11

from caller location 12 is acquired at local node 16 which stores data corresponding to the caller identification number and the called party identification number. Local node 16 then refers to a database which advises it whether to attempt to route the call through channel 20 or whether to employ the conventional communications network 10. If a decision is made to employ the external channel 20, the calling and called party identification numbers, as well as suitable access and security codes, are transmitted, via link 28 to data message means 18.

Data message means 18 comprises digital data processing means in the nature of a 486 type 66 megahertz computer having at least 16 megabytes of memory, a one gig drive, at least one external mode, and an X.25 gateway card. Its software includes X.25 connectivity software, and digicard hardware. It will typically operate in a UNIX environment. As such, data message means 18 will accept an input over any public switched service network and will provide an output to any ISDN packet-switched network such as those embodiments of ~~transception~~ signalling channel 20 set forth above.

F

File No. 986-01

The caller location information is then provided over link 30 to said external channel 20 which in turn furnishes such information over link 32 to second data message means 24 associated with the called location 14. The requisite calling and called party identification information is then provided over link 34 to said central switching unit 22 which, using line 36, interrogates called location 14 with a first phonecall 37, which will send back to central switching unit 22 a call supervision status signal 38 which will inform central switching unit 22 as to condition of the called location 14, i.e., a busy condition, a no answer, or a call completion. If said call supervision status is that of an answer, a callback 40 to the calling party is initiated by central switching unit 22, using communications network 10. Thereafter callback 40 proceeds as would a normal phonecall, passing through local node 16 and, therefrom, to the calling location 12. Thereupon, said second phonecall ~~40~~ 38 and first phonecall 37 are teleconferenced by central switching unit 22, thusly enabling the calling and called parties to communicate.

In the event that central switching unit 22 receives from the called location 14 a busy or no answer condition, there may be provided an uncompleted call signal 42 to data message means 24 which is transferred therefrom through ~~transception~~ signalling channel 20, to

first data message means 18 and therefrom to local node 16. Thereupon a "called party unavailable," busy signal or other message 44 will be communicated by local node 16 to calling location 12.

It is to be appreciated that, in the alternative to the use of call status signal 42, local node 16 may simply be programmed to communicate the "called party unavailable" message 44 to the calling location 12 if it does not receive an incoming call from telecommunications network 10 within a predetermined period. In this scenario, it is not necessary for signal 42 to be transmitted back from central switching unit 22, through transception channel 22, and to local node 16.

After call termination, node 16 will generate a reverse answer supervision signal 47 to advise unit 22 that calling location 12 has hang-up. This terminates the billing process. Said signal 47 may pass over either network 10 or ~~network~~ channel 20.

F

As indicated by dotted line 46, it is possible to integrate the functions of local node 16 and first data message means 18 such that communications from the calling location to the data ~~transception~~ signalling channel 20 would occur in a more direct fashion.

F



17

Through the above-described method and system, the system time and, thereby, the cost typically incurred by the calling party (or, in the case of a hotel setting, by the hotel itself) in connection with the above-described telecommunication system costs associated with busy and no answer signals is substantially avoided in that use will not be made of the public switched service or other communications network where the first call ~~36~~ 37 is not completed. Accordingly, the user will pay only for completed calls and will incur substantially no cost for uncompleted calls. Also the benefits of reverse direction dialing is fully accomplished in the above system in that, where called location 14 is a foreign country or is in an earlier (more westerly) time zone than called location 12, the applicable call rate protocol will generally dictate that savings will be effected if the phonecall is initiated from the United States to the foreign country or, in the case of a domestic call, from the more easterly time zone to the more westerly time zone (except during those situations where the more easterly time zone is within a business day and the business day has not yet begun in the earlier time zone).

In addition to the above set forth advantages of the present method, it may be utilized to effect savings in calling between one foreign country and another foreign country as is

discussed in the Background of the Invention above. More particularly, in this scenario, a calling location 48 in a first foreign country wishes to place a call to the called ~~call~~ location 14 in ~~is~~ a second foreign country. Rather than employ the local foreign phone company (known as the PTT) to call from locations 48 to 14, call 50 is made to local node 16 which call includes caller, destination and security codes. The call is then processed in the same manner as said call 26. If call 50 is completed to location 14, a call-back 40/52 occurs from central switching unit 22 to local node 16 to the calling location ~~caller~~ 48 over network 10, teleconferencing the calling location ~~caller~~ 48 in a first foreign country with the called location 14 in a second foreign country, all without need to make significant use of the local phone company at location 48. If the central switching unit 22 receives a busy or no answer from location 14, the calling location ~~caller~~ 48 will receive a "called party not available" message similar to the above-described message 44. Therein, none of the parties, namely, the calling location ~~caller~~ 48, called party 14, or the operator of local node 16, will have incurred any significant cost by reason of the no answer or busy signal. Thereby the cost of international communication is substantially reduced by both avoiding the unbillable system time, above described in the Background of the Invention, and avoiding the high local foreign country phone company costs which occur in calls directly between countries external to the United States.

File No. 986-01

There is, with reference to Fig. 2, shown a flow diagram of the decision-making process employed in the software associated with local node 16. This software, more particularly, shows, in block 54 thereof, the interception of the call from location call 12 by local node 16. As above noted, node 16 will then use its database to determine whether or not to accept the call for purposes of the present international call back method and system. If node 16 rejects the call, it will be routed to the local PTT as is indicated in block 56. However, if the call is accepted, node 16 will then proceed to acquire the destination number, that is, the called party identification number for the called location 12, as is indicated by block 58.

Therefrom said signal 28 (see Fig. 1), containing the calling and called party identification numbers will be communicated, via data message means 18, external channel 20, and second data message means 24, to said switch 22, as is indicated in block 60. Switch 22 will then make a decision to accept or not to accept the incoming phonecall 34 (see Fig. 1). If the decision is that of non-acceptance, which will manifest itself as an absence in feedback through channel 20 to local node 16, local node 16 will decide whether or not to terminate the call completely, to use a different network, or to use the PTT, as is indicated in block 61.

If the decision of switch 22 is to accept the incoming call, it will originate a call to the called location 14 and will monitor for an answer, as is indicated by block 62. If no answer occurs, switch 22 will terminate call 14 and may either send a "no answer" signal to data message means 24 and therefrom through channel 20 to local node 16 (see block 64) or, alternatively, may send no return message whatsoever. In that embodiment, local node 16 is programmed to construe a no response, after a predetermined interval, e.g., forty-five seconds, from switch 22 as a "no answer." In either event, local node 16 will play a "busy" or "called party unavailable" type message to the calling party 12 as is indicated in block 66.

In the event that called party 14 answers the call originated from switch 22, it may employ channel 20 to advise node 16 that an answer has occurred, as is indicated in block 68 or, alternatively, may go directly to block 70 and, thereby, make a direct connection from switch 22 to local node 16 using the public telecommunications network 10. Therein the call from switch 22 to call location 14 will be teleconferenced with the call from switch 22, through network 10, to the local node 16 and, thereafter, to location 12 or 18. After call termination by calling location 10, the reverse supervision signal 47 is sent to unit 22 over either network 10 or ~~network~~ Channel 20 (see block 72).

F

With reference to Fig. 3, there is shown a further embodiment of the invention which differs from that described above only in the use of blocks 63, 69 and 71 in lieu of said blocks 62, 68 and 70.

Therein, in block 63, unit or switch 22 simultaneously originates calls to node 16 and called location 14, while monitoring for an answer at location 14. Called location 12 is kept on hold by node 16 until location 14 answers and instruction 42 is received from unit 22 to node 16 instructing it to complete call 40 to location 12 (see block 69). If an answer occurs, unit 22 completes the call 40 to calling location 12 and conferences that call to the completed call at location 14, thereby connecting the parties (see block 71).

While there has been shown and described the preferred embodiment of the instant invention it is to be appreciated that the invention may be embodied otherwise than is herein specifically shown and described and that, within said embodiment, certain changes may be made in the form and arrangement of the parts without departing from the underlying ideas or principles of this invention as set forth in the Claims appended herewith.

File No. 986-01

## THE CLAIMS

Having thus described my invention what I claim as new, useful and non-obvious and, accordingly, secure by Letters Patent of the United States is:

1. A method of use of a telecommunication voice network, comprising the steps of:

(a) assigning a caller identification number to a calling location;

(b) assigning a called party identification number for a location to be called;

(c) using a communication node local to said calling location to acquire said caller and called party identification numbers and to transmit them to a central switching unit, associated with the called location, through a transception channel independent to said telecommunications voice network;



23

(d) using said central switching unit to interrogate the called location to obtain a call supervision status thereof;

(e) if said call supervision status is that of an answer, completing a first phonecall from said switching unit to said called location, and originating a second phonecall through said voice network with the calling location;

(f) teleconferencing said first and second phonecalls; and

(g) if said call status is that of a no answer or busy, providing an uncompleted call status signal to said central switching unit.

2. The method as recited in Claim 1, further comprising the steps of:

(h) transmitting said call status signal from said central switching unit to said local communications node through said data transception channel; and

(i) at said local node, informing the calling location of said call supervision status of the uncompleted call at the called location.

3. The method as recited in Claim 1, in which said Step (c) include the step of:
providing data message means associated with said central switching unit for transfer of said call status signal through said data transception channel.

4. The method as recited in Claim 3, in which said local node includes said data message means associated with the calling location.

5. The method as recited in Claim 3, in which said use of said data transception channel includes:
interfacing with an ISDN packet-switched network.

6. The method as recited in Claim 1, in which said second phonecall originating step of Step (e) comprises:
making a reverse direction call from said central switching unit to said local node; and

File No. 986-01

providing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

7. The method as recited in Claim 3, in which said second phonecall originating step of Step (e) comprises: making a phonecall from said local node to said central switching unit; and

providing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

8. The method as recited in Claim 6, in which use of said central switching unit comprises: use of a digital tandem ISDN switch.

9. The method as recited in Claim 6, in which said telecommunication voice network comprises: using a public switched service network.

File No. 986-01

10. The method as recited in Claim 6, further comprising the step of:
using said node local to the calling location to conference said called location, with a reverse direction call, from said node, to a third party calling location.

11. The method as recited in Claim 6, further comprising the step of:
using said node local to the calling location to teleconference said called location with a call, from a third party calling location, to said node.

12. The method as recited in Claim 6, in which said steps of providing data message means comprise:
using digital data processing means.

13. The method as recited in Claim 6, in which said use of said node local to the calling location comprises:
using a transparent communications node.

14. The method as recited in Claim 13, in which said use of said network control module comprises:
inducing a callback from said central switching unit to the calling location.

15. The method as recited in Claim 12, in which said digital processing means comprise:
using at least a 486 66 megahertz digital computer with at least 16 megabytes memory.

16. A system for use of a telecommunication voice network, comprising:

(a) a communication node local to a calling location for acquiring caller and called party identification numbers and transmitting them to a central switching unit associated with the called location, through a transception channel independent from said voice network;

(b) a central switching unit for interrogating the called location to obtain a call supervision status thereof;

File No. 986-01

(c) means for completing a first phonecall from said switching unit to said called location, if said call supervision status is that of an answer, and for originating a second phonecall through said voice network with the calling location;

(d) means for teleconferencing said first and second phonecalls; and

(e) means for providing an uncompleted call status signal to said central switching unit if said call status is that of a no answer or busy.

17. The system as recited in Claim 16, further comprising:

(f) means for transmitting said call status signal from said central switching unit to said local communications node through said data transception channel; and

(g) at said local node, means for informing the calling location of said call supervision status of the uncompleted call at the called location.

18. The system as recited in Claim 16, in which said central switching unit further comprises:
data message means for transfer of said call status signal through said data transception channel.

19. The system as recited in Claim 18, in which said data transception channel comprises:
an ISDN packet-switched network.

20. The system as recited in Claim 16, in which said means for said second phonecall originating comprises:
means for making a reverse direction call from said central switching unit to said local node; and
said system further comprises:
means for providing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

21. The system as recited in Claim 16, in which said means for said second phonecall comprise:
means for making a phonecall from said local node to said central switching unit; and

means for providing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

22. The system as recited in Claim 20, in which said central switching unit comprises:
a digital tandem ISDN switch.

23. The system as recited in Claim 20, in which said telecommunication network comprises:
a public switched service network.

24. The system as recited in Claim 20, further comprising:
means for using said node local to the calling location to conference said called location, with a reverse direction call, from said node, to a third party calling location.

25. The system as recited in Claim 20, further comprising:
means for using said node local to the calling location to teleconference said called location with a call, from a third party calling location, to said node.

File No. 986-01

26. The system as recited in Claim 20, in which said data message means comprises:
digital data processing means.

27. The system as recited in Claim 20, in which said node local to the calling location comprises:
using a transparent communications node.

28. The system as recited in Claim 27, in which said transparent node comprises:
means to induce a callback from said central switching unit to the calling location.

29. The system as recited in Claim 26, in which said digital processing means comprises:
at least a 486 66 megahertz digital computer with at least 16 megabytes memory.

30. A method of use of a telecommunication voice network, comprising the steps of:
(a) assigning a caller identification number to a calling location;

(b) assigning a called party identification number for a location to be called;

(c) using a communication node local to said calling location to acquire said caller and called party identification numbers and to transmit them to a central switching unit, associated with the called location, through a transception channel independent to voice network;

(d) using said central switching unit to interrogate the called location to obtain a call supervision status thereof while concurrently originating a second phonecall through said voice network to said local node;

(e) if said call supervision status is that of an answer, completing a first phonecall from said switching unit to said called location, and completing said second phonecall to the calling location;

(f) teleconferencing said first and second phonecalls; and

(g) if said call status is that of a no answer or busy, providing an uncompleted call status signal to said central switching unit and terminating said second phonecall before completion thereof.

31. The method as recited in Claim 30, further comprising the steps of:

(h) transmitting said call status signal from said central switching unit to said local communications node through said data transception channel; and

(i) at said local node, informing the calling location of said call supervision status of the uncompleted call at the called location.

32. The method as recited in Claim 30, in which said Step (c) includes the step of:

providing data message means associated with said central switching unit for transfer of said call status signal through said data transception channel.

File No. 986-01

33. The method as recited in Claim 32, in which said local node includes said data message means associated with the calling location.

34. The method as recited in Claim 30, in which said use of said data transception channel includes:
interfacing with an ISDN packet-switched network.

35. The method as recited in Claim 32, in which said phonecall originating step of Step (d) comprises:
making a reverse direction call from said central switching unit to said local node.

36. The method as recited in Claim 30, further comprising the step of furnishing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

37. The method as recited in Claim 36, in which said use of said central switching unit comprises:
use of a digital tandem ISDN switch.

38. The method as recited in Claim 36, in which said telecommunication voice network comprises a public switched service network.

39. The method as recited in Claim 36, further comprising the step of:
using said node local to the calling location to conference said called location, with a reverse direction call, from said node, to a third party calling location.

40. The method as recited in Claim 36, further comprising the step of:
using said node local to the calling location to teleconference said called location with a call, from a third party calling location, to said node.

41. The method as recited in Claim 36, in which said steps of providing data message means comprise:
use of a digital processing means.

42. The method as recited in Claim 36, in which said use of said node local to the calling location comprises:
using a transparent communications node.

File No. 986-01

43. The method as recited in Claim 42, in which said use of said transparent node comprises:
use of means to induce a callback from said central switching unit to the calling location.

44. The method as recited in Claim 41, in which said digital processing means comprise:
use of at least a 486 66 megahertz digital computer with at least 16 megabytes memory.

45. A system for use of a telecommunication voice network, comprising:
(a) a communication node local to a calling location for acquiring caller and called party identification numbers and transmitting them to a central switching unit associated with the called location, through a transception channel independent from said voice network;

(b) a central switching unit for making a first phonecall comprising a call to said called location to obtain

a call supervision status thereof and for concurrently originating a second phonecall to thru said voice network to said local node;

(c) means for completing said first phonecall from said switching unit to said called location, if said call supervision status is that of an answer, and for completing said second phonecall through said voice network to said calling location;

(d) means for teleconferencing said first and second phonecalls; and

(e) means for providing an uncompleted call status signal to said central switching unit if said call status is that of a no answer or busy and terminating said second phonecall before the completion thereof.

46. The system as recited in Claim 45, further comprising:

(f) means for transmitting said call status signal from said central switching unit to said local communications node through said data transception channel; and

(g) at said local node, means for informing the calling location of said call supervision status of the uncompleted call at the called location.

47. The system as recited in Claim 45, in which said central switching unit further comprises:
data message means for transfer of said call status signal through said data transception channel; and
said local node further comprises:

data message means for transfer of said status signal through said transception channel.

48. The system as recited in Claim 45, in which said data transception channel comprises:
an ISDN packet-switched network.

49. The system as recited in Claim 47, in which said means for phonecall originating comprises:
means for making a reverse direction call from said central switching unit to said local node;

50. The system as recited in Claim 45, further comprising: means for furnishing an answer supervision signal from said local node to said central switching unit upon termination of said second phonecall.

51. The system as recited in Claim 50, in which said central switching unit comprises:
a digital tandem ISDN switch.

52. The system as recited in Claim 50, in which said telecommunication network comprises:
a public switched service network.

53. The system as recited in Claim 50, further comprising: means for using said node local to the calling location to conference said called location, with a reverse direction call, from said node, to a third party calling location.

54. The system as recited in Claim 50, further comprising: means for using said node local to the calling location to teleconference said called location with a call, from a third party calling location, to said node.

File No. 986-01

55. The system as recited in Claim 47, in which said data message means each comprise:
digital data processing means.

56. The system as recited in Claim 50, in which said node local to the calling location comprises:
a transparent communications node.

57. The system as recited in Claim 56, in which said transparent node comprises:
means to induce a callback from said central switching unit to the calling location.

58. The system as recited in Claim 26, in which said digital processing means comprises:
at least a 486 66 megahertz digital computer with at least 16 megabytes memory.

add a1

add C4

add G1

add F6

# 5/6/96 Response to Office Action

VSM-3.2.001/1092

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE #9C

R. Logan 5-6-96 Fee ok

In re Patent Application of ALEXANDER MASHINSKY

Serial No.: 08/320,269 Art Unit: 2601

Filed: 10/11/94 Examiner: S. Weaver

For: METHOD OF AND SYSTEM FOR EFFICIENT USE OF TELECOMMUNICATION VOICE NETWORKS

CERTIFICATE OF MAILING

I hereby certify that this paper and every paper referred to therein as being enclosed is being deposited with the U.S. Postal Service as first class mail, postage prepaid, in an envelope addressed to: Commissioner of Patents & Trademarks, Washington, DC 20231,

on April 24, 1996 (Date of Deposit)

4/24/96 Lucretia Akino
Date Name

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

## AMENDMENT

Sir:

Responsive to the Office Action dated October 24, 1995, please amend the application as follows:

IN THE CLAIMS:

Please amend the claims as follows:

Sub F1

C1 cont'd

~~59.~~ (amended) A method of use of a telecommunication network, comprising the steps of:

(a) selecting one of a plurality of different available routes between a calling party access number and a called party access number in accordance with criteria pertaining to the plurality of different available routes including those originating from a control location;

[(a)] (b) receiving at the control location via the selected one of the routes information from an intercept pertaining to a calling party access number and a called party access number [at a control location];

[(b)] (c) receiving a status signal at said control location indicating if said called party access number is available for taking an incoming phone call;

(d) [(c) if] in response to said status signal [indicates an available status], initiating a first phone call from said control location to said called party access number and a second phone call from said control location to said calling party access number; [and]

[(d)] (e) bridging said first and second phone calls; and

(f) carrying out steps (a) to (d) in a manner transparent to users of the calling party access number and the called party access number.

C1 cont'd

60. (amended) A method as in claim 59, further comprising the step of [terminating] completing the first phone call in response to receiving a status signal indicating that the second phone call has been [terminated] completed.

Sub F2

61. (amended) A method as in claim 59, wherein said second phone call [takes place] is initiated after said first phone call is [placed] completed.

62. (amended) A method of communication [use of a telecommunication network], comprising the steps of:

(a) selecting one of a plurality of different available routes between a calling party access number and a called party access number in accordance with criteria pertaining to the plurality of different available routes including those originating from a control location;

[(a)] (b) sending to the control location via the selected one of the routes information from an intercept pertaining to the [a] calling party access number and [a] the called party access number [to a control location];

[(b) inquiring as to whether said called party access number is available for taking an incoming phone call so that a status signal on availability arrives at said control location; and]

(c) thereafter waiting for a return call;

(d) bridging the return call with the calling party access number; and

(e) carrying out steps (a) and (b) in a manner transparent to users of the calling party access number and the called party access number.

C1 concl

Claim 65 line 2, change "termination" to -- completion -- (both occurrences)

line 3, change "termination" to -- completion --.

C2 cont'd

66. (amended) A method as in claim 62 further comprising the steps of:

storing information on a data base;

checking with said data base; and

carrying out the step of selecting by deciding [a route] which one of said ~~of the plurality of available~~ routes [that steps (a) and (b) will take] based [on] upon the step of checking.

F

67. (amended) A method as in claim 62, further comprising the step of determining whether said called access number party is available for taking an incoming phone call [ waiting for a reply to step (b)].

F

68. (amended) A method as in claim [62] 67, wherein the step of [waiting] determining includes determining whether [that the called location is available when a reply to] the waiting of step (c) [has been received] is complete before a time duration has elapsed.

C2E contd

69. An apparatus for use in a telecommunication network, comprising:

Sub F3

a selector that selects one of a plurality of different available routes between a calling party access number and a called party access number in accordance with criteria pertaining to the plurality of different available routes including those originating from a control location;

[a] the control location receiving via the selected one of the routes by the selector, information, from an intercept, that pertains to a calling party access number and a called party access number and receiving a status signal indicating a condition as to

whether [if] said called party access number is available for taking an incoming phone call;

an initiator responsive to the condition of the status signal [indicating that said called party access number is available that initiates] to initiate a first phone call from said control location to said called party access number and a second phone call from said control location to said calling party access number; [and]

C2 Conc

a bridging of said first and second phone calls; and

connections between said initiator, said control location, said called party access number and said calling party access number being arranged such that the receipt of the first and second phone calls from said initiator arises in a manner transparent to users of the called party access number and the calling party access number.

Claim 70 last line, change "terminated" to -- completed --

Sub F4

71. (amended) An apparatus for use in a telecommunication network, comprising:

C3 Cont'd

a selector that selects one of a plurality of available routes between a calling party access number and a called party access number in accordance with criteria pertaining to the plurality of different routes including those originating from a control location;

a sending device responsive to the evaluator to send [that sends] to the control location via the selected one of the routes information from an intercept pertaining to the [a] calling

party access number and [a] the called party access number [to a control location];

[an inquiring device inquiring as to whether said called party access number is available for taking an incoming phone call so that a status signal on availability arrives at said control location; and]

[an answering] a further device [waiting] arranged to wait for a return call; and

a bridging device for bridging the return call with the calling party access number; and connections between the sending device, the further device, the calling party access number and the called party access number such that the sending of the information and the bridging of the return call with the calling party access number are transparent to users of the calling party access number and the called party access number.

C3 Canc

72. (amended) An apparatus as in claim 71, further comprising:

a storage device that stores information on a data base; and

a device that checks with said data base and decides [a route] which one of a plurality of available routes that the sending device and the inquiring device will use based on the checking.

Add the following claims:

74. A method as in claim 62, further comprising the step of inquiring as to whether said called party access number is available for taking an incoming phone call so that a status signal on availability arrives at said control location.

75. An apparatus as in claim 71, wherein the intercept inquires ~~further comprising an inquiring device inquiring~~ as to whether said called party access number is available for taking an incoming phone call so that a status signal on availability arrives at said control location.

F
F

76. A method as in claim 59, further comprising the steps of intercepting with the intercept, in a manner transparent to the users, the calling party access number and the called party access number and forwarding the same as the information to the control location.

C4 cont'd

77. A method as in claim 62, further comprising the steps of intercepting with the intercept, in a manner transparent to the users, the calling party access number and the called party access number and forwarding the same as the information to the control location.

78. An apparatus as in claim 69, further comprising the intercept that intercepts, in a manner transparent to the users, the calling party access number and the called party access

number and forwards the same as information to the control location.

79. An apparatus as in claim 71, further comprising the intercept that intercepts, in a manner transparent to the users, the calling party access number and the called party access number and forwards the same as information to the control location.

C4 concl

**REMARKS**

Reconsideration of the application is requested.

Claims 64, 66-68 and 71-73 were rejected as being indefinite under 35 U.S.C. §112. These claims are now amended to address the Examiner's concerns. The preamble of claim 62 was revised to make it clearer that steps a and b need not necessarily take place over the network.

Claims 59, 61, 69 and 71 now refer to an intercept as mentioned on page 19 lines 3-5 of the specification. New claims 76-79 positively recite the intercept. In addition, they call for selection of one of a plurality of different available routes between the calling party access number and the called party access number in accordance with criteria pertaining to those routes including those originating from a control location (see page 19 last five lines and page 21 middle paragraph).

Claims 62-63, 65, 67-68, 71 and 73 were rejected over the teaching of the patent to Peoples (U.S. Patent No. 5,438,616). Claims 59-73 were rejected over the teachings of the patent to Moll

(U.S. Patent No. 5,027,387) and Peoples. Claim 64 was rejected over the patent to Peoples and Jabara et al. (U.S. Patent No. 4,313,036). These rejections are respectfully traversed.

There are fundamental deficiencies in each of the cited references that fail to render the present invention as recited by the claims anticipated or rendered obvious.

**PEOPLES**

Peoples compels the user to make a call to a controller (step 410 of Fig. 4) and wait after callback while the called party is being called by the controller (Step 471 of Fig. 5). The fact that one must have the controller answer in effect requires that a phone charge. In contrast, by sending information via an intercept as recited in the present independent claims, there is no charge. For domestic phone calls, this charge may not be very significant, but when placed from a foreign country, the cost would be significant.

Therefore, in Peoples, communication with the controller is done through active participation by the user, instead of transparent to the user as called for by claims 59, 62, 69 and 71 and without using an intercept in contrast to the recitation of claims 59, 62, 69 and 71.

According to step 14 in col. 9 of Peoples, the first party may listen to the ting-back signal to the second party. In contrast, claims 59, 62, 69 and 71 were amended to make it clear that the entire calling process to the second party in accordance with the invention is done transparent to the caller, so the caller would not be able to listen to such signals. Such transparency is mentioned in the specification on page 11 bottom paragraph.

In Peoples, the whole purpose of controller 132 seems to be to charge the party making the call rather than the owner of the calling device that happens to be using the calling device (col. 3 lines 13-19) or to keep a number in confidence (col. 4 line 3) and yet utilize call back service (col. 4 lines 14-30).

In contrast, claims 59, 62, 69 and 71 now call for selecting one of a plurality of different available routes between the calling party access number and the called party access number in accordance with criteria pertaining to the routes including those originating from a control location. Peoples does not teach about making such selection; instead, call back service is done directly with no analysis made of a plurality of different available routes.

MOLL

Moll requires that Redic equipment be present on both sides and thus could not be used to make normal phone calls with typical phones. As concerns claims 59, 62, 69 and 71, Moll fails to select one of a plurality of different available routes in accordance with criteria pertaining to the routes including those to a control location. In Moll, the Redic equipment is directly connected with these access numbers and the possibility of routing through different routes, such as to a control location, is not contemplated. In other words, Moll routes strictly from A - B or B - A; routing from C-A or C-B is not considered even though originating the calls from C may be the cheaper method. For instance, placing a call from France to Japan may be cheaper if

originated in the United States rather than through Redic equipment in France and Japan.

In addition, Moll makes no provision for accounting to charge the appropriate party to make the call. It simply decides which end would be cheaper and directs that Redic equipment to place the calls, regardless of who the calling party is and without charging the calling party if the Redic at the called party end was instructed to place the call. This may be acceptable for corporate communications between branch offices, but not between different parties. By employing an intercept as in the present invention and directing where the call is to originate after making an appropriate evaluation of routes, the present invention may accommodate billing to the appropriate party (see page 6 of the application).

Jahara et al. does not make up for these deficiencies in Peoples or Moll. Jabara et al. fails to initiate any type of callback procedure, because it merely advises as to availability. There is neither suggestion, disclosure, motivation nor incentive to combine the teachings of Peoples and Moll together in the manner envisioned by the Examiner because neither teaches how to avoid waiting costs while the inquiry is taking place to thereafter effect a callback procedure.

During examination of the counterpart application filed in Europe, International publication number WO 93/16544 was cited. As clearly described in the bottom paragraph of page 14 of that document, both parties must agree to establish connection. In contrast, the present claims call for connection to be made in a manner transparent to the users - an intercept provides the

relevant information and decides how to route the calls. There is no need to request that the parties reach agreement before establishing connection.

Reconsideration and allowance are earnestly solicited.

Respectfully submitted,

Robert J. Hess
Reg. No. 32,139

COBRIN GITTES & SAMUEL
750 Lexington Avenue
New York, New York 10022
Tel.: (212) 486-4000

[F:\WPDATA\RJH\VOICE\TELECOM.001\AMEND.104]

# 8/27/96 Response to Office Action

BOX AF

VSM-3 2.001/1092

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Duplicate of #11

In re Application of: ALEXANDER MASHINSKY

Serial No.: 08/320,269 Art Unit: 2601

Filed: October 11, 1994 Examiner: S. Weaver

For: METHOD OF AND SYSTEM FOR EFFICIENT USE OF TELECOMMUNICATION VOICE NETWORKS

N.E.

RECEIVED 96 SEP -6 PM 3:31 GROUP 2600

BOX AF -- NO FEE
Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

CERTIFICATE OF MAILING

I hereby certify that this paper and every paper referred to therein as being enclosed is being deposited with the U.S. Postal Service as first class mail, postage prepaid, in an envelope addressed to: BOX AF - NO FEE Commissioner of Patents & Trademarks, Washington, DC 20231, on August 27, 1996 (Date of Deposit)

8-27-96 Lucretia Alvino
Date Name

AMENDMENT UNDER 37 C.F.R. 1.116

Duplicate #11 Do NOT ENTER 8/28/96

Sir:

Responsive to the Office Action dated July 16, 1996, please amend the application as follows:

IN THE DRAWINGS:

Please enter the enclosed mark-up of Figure 1 that labels the various geometric shapes.

IN THE SPECIFICATION:

Page 8, line 10, delete "," after "will".

Page 18, line 3, change "call" (second occurrence) to -- the called--, change "is" after "14" to --in--.

Page 7, line 14; page 8, line 5; page 12, line 5; page 13, line 14; page 14 penultimate line; page 15 last line; page 16 last line; change "transception" to "signalling"--.

Page 16, line 15; page 20, last line; change "network" (second occurrence) to -- channel --.

line 10, change "caller" (both occurrences) to -- the calling location --.

line 14, change "caller" to -- the calling location --.

line 17, change "caller" to -- the calling location --.

IN THE CLAIMS:

Amend the claims as follows:

Claims 59, 62, 69 and 71, lines 6-7, change "including those originating from" to --passing through--.

63. (Amended) A method as in claim 62, wherein the routes are part of a telecommunications network, steps (a) and (b) [take] taking place over the network.

64. (Amended) A method as in claim 62, wherein said control location is part of a telecommunications network, the routes being part of a data signalling channel that is independent of the telecommunications network, steps (a) and (b) [take] taking place over [a] the data [transception] signalling channel [that is independent of the network], the return call taking place over the network.

Claim 65, line 2, after "completion" (first occurrence as amended) insert --through hang-up--.

Claim 67, line 2, after "party" insert --access number--.

Claim 68, line 4, change "step (b)" to --step (c)--.

Claim 69, line 20, change "bridging" to --bridge--; change "; and" to --that effects--.

line 23, cancel "being arranged".

Claim 70, last line, after "completed" (as amended) insert --through hang-up--.

Claim 71, line 8, change "evaluator" to --selector--.

line 20, change "; and" to --that effects--.

Claim 72, line 6, change "a plurality" to --the plurality--.

73. (Amended) [A method] An apparatus as in claim 71, further comprising a device that determines that the called [location] party access number is available when a reply has been received [by the inquiring device] at the control location before a time duration has elapsed, the reply being a response to an inquiry as to an availability of the called party access number for taking an incoming phone call.

Claims 76, 77, 78, 79, penultimate line, change "the same" to --that which is intercepted--.

Claims 78 and 79, before "information" insert --the--.

## REMARKS

Reconsideration of the application is requested.

Withdrawal of the finality designation of the Office Action is believed warranted and requested because no rejection on the merits remains. Under MPEP 706.07, which provides in part:

> Before final rejection is in order a clear issue should be developed between the examiner and applicant....present practice does not sanction hasty and ill-considered final rejections. The applicant who is seeking to define his or her

> invention in claims that will give him or her the patent protection to which he or she is justly entitled should receive the cooperation of the examiner to that end, and not be prematurely cut off in the prosecution of his or her case.

Under MPEP 706.07(a):

> Under present practice, second or any subsequent actions on the merits shall be final, except where the examiner introduces a new ground of rejection not necessitated by amendment of the application by applicant, whether or not the prior art is already of record.
> A second or any subsequent action on the merits in an application...should not be made final if it includes a rejection, on prior art not of record, of any claim amended to include limitations which should reasonably have been expected to be claimed. For example, one would reasonably expect that a rejection under 35 USC 112 for the reason of incompleteness would be responded to by an amendment supplying the omitted element.

Paragraph 7 at the top of page 6 of the Office Action finds that "the patentability of the claims presented after amendment can not be determined at this time due to confusion noted above with respect to 35 USC 112, second paragraph." Thus, contrary to MPEP 706.07, no clear issue has apparently been developed between the examiner and applicant that would justify making this Office Action final because of the alleged confusion in the claim language. Yet, the Examiner found that

> It appears that the portions of the amendment concerning active participation may adequately [be] overcome by the use of 'transparent to the user' as is noted, [but] it is not entirely clear as to what is and is not transparent to the users, for instance, the users must still hear ringing and supervisory tones to some degree.

Therefore, there is no lingering rejection on the merits, as would be required under MPEP 706.07(a) to justify making this Office Action final. All there remains is a rejection under 35 USC 112, second paragraph that, under MPEP 706.07(a), "one would reasonably expect that a rejection under 35 USC 112 for the reason of incompleteness would be responded to by an amendment supplying the omitted element". In view of this, the finality designation is believed premature and thus improper and its withdrawal is requested.

The drawings, specification and claims were amended to address the Examiner's concerns. Page 18 of the specification was further amended to make the terminology consistent.

The Examiner notes that transception channel is defined in the specification (see page 12, lines 9-16), but requests literature concerning the use of this terminology. The applicant is unaware of such literature but is entitled to be his own lexicographer in the application. Nevertheless, the data transception channel may be more aptly named a data signalling channel and so "transception" is being changed to signalling throughout the application and claims. Since this term is merely used as a label, and fits the definition in the specification, no new matter is being introduced by this change.

As concerns the routes referred to in claims 59, 62, 69 and 71:

Referring to Fig 1, suppose node 22 is the control location. Claim 59 clause (a) calls for selecting one of a plurality of routes between 12 and 14 including those passing through 22. Clause (b) calls for receiving at the control location 22 via the selected one of the routes information from an intercept such as node 16. These routes may either be through the voice network 10 or the data signalling channel 20.

The Examiner questions how the route originating from the control location is not one of the available routes. The claim language is amended to clarify the concept. The control location may be switch 22 and the intercept may be node 16.

As concerns claims 63 and 64:

The intent is to make a distinction between effecting communications solely over telephone network 10 and over both telephone network 10 and data network 20. It is hoped that the definitions in the claims now clear up any confusion.

Claims 69 and 71:

The bridge is defined now as responsible to effect connections between the various components, thereby addressing the Examiner's concern.

Claims 76-79:

Intercept is being used as a noun having a function of intercepting.

The concept of transparency is expressed in the specification (bottom of page 11) with respect to telecommunication node 16. All line switching is done transparent to the user in the sense that the user need not initiate the sequence of steps set forth in the claims to effect line switching, e.g., no special dialing of access code numbers, etc. Instead, the user is kept on hold (page 21, line 7-8) and the line switching and availability check is done without any action being initiated on the part of the user.

An analogy may be helpful in understanding the transparency concept of the invention. In a typical phone network, the selection of routes or lines used by the phone company to connect party A with party B is done transparent to parties A and B in the sense that they did not have to initiate any action to initiate the sequence of line selection (such as choosing an available route based on current communication traffic conditions, for instance), aside from dialing the intended phone number.

This invention takes this concept further by extending the line selection process to include routing such call from location C and checking whether party B is available to take the call before routing a call from party A to party B, but checks in a manner transparent to the user in the sense that neither party A nor party B had to do anything to initiate the sequence of steps involved in checking the availability of party B first -- an intercept takes care of that automatically and selects the appropriate route for doing so, e.g., via the data channel or phone

network. If the checking is done via a data signalling channel, cost savings should be realized over that where checking is done via the voice network.

Although the present independent claims do not express cost savings in the claim language itself, this is no reason for the Examiner to consider the arguments on this point irrelevant. If the natural consequence of carrying out a sequence of steps or operation of an apparatus, as recited in claim language, inevitably results in a benefit that is not expressly stated elsewhere in the claim language, such is still relevant to the issue of patentability as long as the steps or structure will provide that advantage. Here, the applicant developed a technique that inevitably results in cost savings to the consumer by originating calls from a control location (point C) instead of the caller (point A) or called party (point B) by using call back type technology. It also inevitably results in cost savings to the service provider by checking on availability to take a call using an intercept prior to trying to make connection.

While the present amendment does not raise any new issues because the nature of the amendment should have been contemplated by the Examiner under MPEP 706.07(a), in the event there are new issues raised, it is requested that the finality designation of the last Office Action be withdrawn as premature to allow entry of the present amendment.

Entry of this amendment is requested.

Dated: August 27, 1996

Respectfully submitted,

Robert Hess

Robert J. Hess
Reg. No. 32,139

COBRIN GITTES & SAMUEL
750 Lexington Avenue
New York, New York 10022
Tel.: (212) 486-4000

[F:\WPDATA\RJH\VOICE\TELECOM.001\AMEND.808]