# Exhibit 6

# 10/29/98 Response to Office Action

IW 1918425

# THE UNITED STATES OF AMERICA

TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

May 16, 2013

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:

APPLICATION NUMBER: *09/009,007*
FILING DATE: *January 16, 1998*
PATENT NUMBER: *6,078,654*
ISSUE DATE: *June 20, 2000*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. R. GRANT
Certifying Officer

PART ( 1 ) OF ( 2 ) PART(S)

OIPE JC52 OCT 29 1998 PATENT & TRADEMARK OFFICE

K. Ward 2/22/99 #6/Amdt A Ent

Express Mail No.: EM 061 018 420 US

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED 98 NOV -3 PM 1:04 GROUP 2700

Application of: Mashinsky

Application No.: 09/009,007

Group Art Unit: 2742

Filed: January 16, 1998

Examiner: Weaver, S.

For: METHOD OF AND SYSTEM FOR EFFICIENT USE OF TELECOMMUNICATION NETWORKS

Attorney Docket No.: 9118-024

**RESPONSE**

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

**AMENDMENT**

In the specification at p. 1, ln. 5, delete "allowed", and substitute therefor: – U.S. Patent No. 5,710,809 – .

**REMARKS**

In response to the Office Action mailed June 29, 1998, applicant has amended the specification as indicated above. Reconsideration of the application in view of this amendment and the following Remarks is respectfully requested.

In paragraph 1 of the Office Action, the Examiner requests that applicant amend the application by adding the patent number of the parent of the present application. In Response, applicant has amended the specification to indicate that the parent of the present application, U.S. Patent Application Serial No. 08/728,670, is now U.S. Patent No. 5,710,809.

In paragraph 3 of the Office Action, the Examiner rejects claims 1-10 under the judicially created doctrine of double patenting over claim 1 of U.S. Patent No. 5,710,809 to

Mashinsky. In response, applicant submits herewith a terminal disclaimer disclaiming the terminal part of any patent granted on this application that would extend beyond the expiration date of U.S. Patent No. 5,710,809 to Mashinsky. Submission of the terminal disclaimer does not represent acquiescence in the Examiner's statement that the pending claims are obvious in view of Mashinsky's claim 1. Instead, although the pending claims may be separately patentable over Mashinsky's claim 1, this terminal disclaimer is being filed merely to expedite prosecution of the current application.

In paragraph 5 of the Office Action, the Examiner rejects claims 1-10 under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 5,027,387 to Moll ("Moll"). Applicant respectfully traverses this rejection.

As noted in applicant's Remarks accompanying filing of the present application, independent claim 1 of the present application is allowable over Moll for at least the following reason. Each of the recited method steps in claim 1 is performed in a manner that is transparent to both the caller and the called party. Thus, the calling experience created by the method recited in claim 1 is substantially closer to that of a normal phone call than the calling experience created by the prior art cited in the two parent applications, including Moll.

In particular, Moll subjects the caller and called party to frequent recorded announcements concerning various stages in the call-connection process. For example, Moll discloses:

> If sufficient savings means 328 indicate that savings can be made, an announcement is sent by announcement means 315 to the calling party telephone 301 via hold means 314, the REDIC access means 302, and the PBX 300 to tell the caller that REDIC will handle the call.

Moll, col. 5, ln. 8. Thus, Moll does not select the call-routing direction in a manner transparent to the user. In contrast, in claim 1 of the present application, the steps of selecting a transmission path and connecting the call via the selected transmission path are performed in a manner transparent to the caller and called party.

In response to these Remarks, the Examiner states that "the steps performed by the [Moll's] apparatus are transparent (meaning that the users need not perform the switching but

that the REDIC equipment performs such steps). . . . With respect to the remarks which indicate Moll does not 'select the routing direction transparent to the user' this is not agreed with the selection is done transparent to the users, the user is notified that the REDIC will handle the call but the selection is done transparently."

In response, applicant respectfully disputes the Examiner's definition of the term "transparent." As used in the art, the term "transparent" means "pertaining to a device or system that processes data without the user being aware of or needing to understand its operation." *See, e.g.*, McGraw-Hill Dictionary of Scientific and Technical Terms (4th ed. 1989) (emphasis added) (Exhibit A). Thus, Moll does not perform a step of "selecting a transmission path" in a manner that is transparent to the user because the user receives an announcement that the call will be handled by REDIC (i.e., a REverse DIrection Calling system). The routing-3- direction for the call is therefore not selected transparently since the user is made aware of the selection. Indeed, as noted in applicant's initial remarks, Moll subjects the caller to a plurality of recorded announcements concerning various stages in the call-connection process and thus creates a calling experience that differs substantially from that of a regular call. In light of the above, applicant respectfully submits that independent claim 1 is patentable over Moll.

Independent claim 5 is allowable over the prior art for at least the reasons described above in connection with claim 1.

Independent claims 8-10 are also patentable over Moll, for at least the following reason. In particular, claim 8 comprises the limitations of:

(d) placing a first phone call from the switching location to the called telephone user equipment;

(e) substantially concurrently with step (d), placing a second phone call from the switching location to the communication node;

(f) receiving at the switching location a status signal for the first phone call; and

(g) terminating the second phone call before it is answered when the status signal indicates a status for the first phone call of no answer for a predetermined time or of busy.

Thus, as recited in claim 8, although the call from the remote switching location to the communication node is placed substantially concurrently with the call from the remote switching location to the called telephone user equipment, no connection between the remote switching unit and the calling location is established until after a connection is established between the remote switching unit and the called telephone user equipment. This is achieved by terminating the call from the remote switching unit to the communication node before it is completed in the event of no answer or a busy signal at the called telephone user equipment (step (g)).

Similarly, independent claims 9 and 10 comprise the following limitations, respectively:

> [claim 9] after the first call has been answered, placing a second call via the telecommunication network from the remote switching unit to the calling telephone equipment through the local telecommunications node . . . .
>
> [claim 10] receiving at the local telecommunications node a second call from the remote switching unit after a third call from the remote switching unit to the called telephone equipment has been answered . . . .

Thus, as recited in claims 9 and 10, the connection between the remote switching unit and the calling location is likewise established after the connection between the remote switching unit and the called telephone user equipment is established. This ensures that no charges are incurred for connecting the remote switching unit to the calling location until the call to the called telephone equipment has been answered.

In contrast, Moll does not teach or suggest delaying connection of a remote switching unit to a local telecommunication node until after a connection with the called telephone equipment has been established. Moll, for example, does not prevent the callback connection to local REDIC 204 from becoming established until after the call to called telephone 208 has been answered. Moll, col. 5, ln. 39 to col. 6, ln. 11. Instead, as taught by Moll: "If acceptance 426 is positive and available 425 determined that the called party had not stored any restrictions in its REDIC's data base 427, and the called telephone 408 is not busy, the automated attendant 410 is instructed to dial the calling party node by means 414 via the PBX 400. Ringing

commences at the called party's telephone." Moll, col. 5, lns. 48-54 (emphasis added). As the above quoted language shows, Moll's callback is initiated prior to establishing a connection between remote REDIC 205 and called telephone 208 and may be completed before the called telephone is answered. Thus, Moll cannot guarantee that the call to remote telephone 208 will result in a completed call before the time that the callback to REDIC 204 is established.

The claimed invention provides greatly decreased costs in comparison with the system described in Moll. As noted in the Background of the Invention (pp. 1-3), established billing protocols permit billing the calling party for a call only when the call results in a successful connection to a called party. One disadvantage of the prior art systems has therefore been that when the callback from the remote switching unit to the calling location is successful, but the called party cannot be reached for some reason (in Moll, for example, if the called party does not answer the call from remote REDIC 205), the caller cannot be charged for the cost of the callback since the call did not result in successful connection to the called party. The cost of the callback must instead be born by the company providing the callback service.

Moreover, established billing protocols only permit billing a calling party for the actual time period that the calling party is connected to the called party. Another disadvantage of prior art systems therefore has been that the calling party cannot be billed for any portion of the callback connection-time before the connection with the called party is established.

By contrast, the present invention ensures that charges for the call from the switching unit to the calling location are not incurred until the system establishes that the call to the called telephone equipment has been answered. This ensures that the system provider will not incur charges for calls which cannot be passed on to the calling party. Moreover, the system minimizes the amount of callback connection-time for which the calling party cannot be billed by delaying establishment of the callback until after a connection with the called party has been established.

The time set for responding to this Action was September 29, 1998. Accordingly, applicant submits herewith a petition for extension of time for one month which renders this Response timely. Please charge all fees in connection with the Petition and any other fees that

may be due in connection with this Response to Pennie & Edmonds LLP Deposit Account No. 16-1150.

For the foregoing reasons, applicant respectfully submits that this application is in condition for allowance. Such action is respectfully requested.

Respectfully submitted, H. C. Zelonis Reg. No. 36,196

Date 10/29/98

for Francis E. Morris 24,615

Francis E. Morris (Reg. No.)

PENNIE & EDMONDS LLP
1155 Avenue of the Americas
New York, New York 10036-2711
(212) 790-9090

Enclosures