# Exhibit 14

| FORM PTO – 1449<br><br>INFORMATION DISCLOSURE STATEMENT | APPLICATION NO.: 08/548,323<br>FILING DATE: November 1, 1995<br>FIRST NAMED INVENTOR: David L. Turock |
|---|---|

**U.S. PATENT DOCUMENTS**

| EXAM INIT. | | DOCUMENT NO. | DATE | NAME | CLASS | SUB CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | 5,530,744 | 06/25/96 | Charalambous et al. | 379 | 265 | 09/20/94 |
| | | 5,568,475 | 10/22/96 | Doshi et al. | 370 | 58.2 | 12/21/94 |
| | | 5,726,984 | 03/10/98 | Kubler et al. | 370 | 349 | 10/05/95 |
| | | 2001/0040885 | 11/15/01 | Jonas et al. | 370 | 352 | 10/13/95 |

**OTHER ART, JOURNAL ARTICLES, ETC.**

| EXAM INIT. | | OTHER DOCUMENTS: (Including Author, Title, Date, Relevant Pages, Place of Publication) |
|---|---|---|
| | | H.M. Heggestad and C. Weinstein, "Voice and Data Communication Experiments on a Wideband Satellite/Terrestrial Internetwork System," IEEE International Conference on Communications, Vol. 1, June 19-22, 1983, pp. 1-8. |
| | | Massachusetts Institute of Technology Lincoln Laboratory Annual Report to the Defense Communications Agency, Defense Switched Network Technology and Experiments Program, issued February 29, 1984 for the fiscal year October 1, 1982 to September 30, 1983, pp. 15-20. |
| | | C. Weinstein, "The Experimental Integrated Switched Network – a System-Level Network Test Facility," 1983 IEEE Military Communications Conference, November 2, 1983, pp. 449-456. |
| | | C. Yang, Request for Comment (RFC) 1789, "INETPhone: Telephone Service and Servers on Internet," April 1995. |
| | | Transcript of Deposition of Bharat Doshi, May 23, 2008. |

| EXAMINER | DATE CONSIDERED |
|---|---|

## FINAL OFFICE ACTION

### Summary

*Ex parte* request for reexaminations were filed on December 29, 2009 (assigned control number 90/009,637) (the "'9,637 Request") and on October 14, 2009 (assigned control number 90/010,716) (the "'0,716" Request"). In response, orders granting *ex parte* reexamination were mailed January 29, 2010. A decision merging the two proceedings was mailed May 26, 2010. A non-final Office action was mailed August 16, 2010 rejecting claims 1-24 based upon the Doshi, Jonas, and the Heggestad printed publications.

A request for reconsideration was submitted in reply to said non-final Office action on October 18, 2010 (the "Response"). A personal interview with the examiner was conducted on October 20, 2010. In response to the interview, a supplemental request for reconsideration ("Supplemental Response") was filed October 25, 2010. Both the Response and Supplemental Response have been entered and considered by the examiner.

In view of Response, Supplemental Response, and all other evidence of record, all rejections based upon Doshi are withdrawn. However, the rejections based upon Jonas and Heggestad are maintained. Accordingly, this Office action is made final. See MPEP § 706.07(a) and § 2271.III.

**Jonas Based Rejections**

***Rejections Proposed in the '9,637 Request***

*Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

**Claims 1-7, 11-19, 23 and 24** are rejected under 35 U.S.C. 102(e) as being anticipated by U.S. Patent Application Publication No. 2001/0040885 (hereinafter "Jonas").

*Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**Claims 8-10 and 20-22** are rejected under 35 U.S.C. 103(a) as being unpatentable over Jonas as applied to the respective parent claims above, and further in view of U.S. Patent No. 5,530,744 (hereinafter "Charalambous").

*Summary of Jonas*

As discussed in said '9,637 Order, Jonas teaches significant technological features important to patentability of the Turock patent under reexamination. For example, regarding receiving at a first computer network access port a first telephone call from a central office placed from said first telephone, consider Fig 2B from the Jonas prior art, which is reproduced below.




Thus, Jonas teaches receiving at a network access port of a first computer (server switch 650) a first telephone call from first telephone set 401 via a central office inherent to public switched telephone network ("PSTN").

Regarding first telephone call specifying a telephone number of said second telephone set, without specifying additional telephone destinations, Jonas teaches at paragraph 0107:

> Referring now to FIG. 2B, a system for connecting two POTS sets, wherein at least a portion of the call connection path is traversed over a packet switched computer network, will be described. A first user goes off hook on a first POTS set 401 and accesses a first phone switch 650 via a first circuit switched telephone network 300 The user then enters Touch Tone data, including billing information and the called station number. Tone detectors on the first phone switch 650 captures this data. The first phone switch 650 then generates a call connection request which is forwarded by the packet switched computer network 200 to the router authentication server 500. The router authentication server 500 selects a destination phone switch 600 and returns the network address of the destination phone switch 600. The first phone switch 650 then accesses the destination phone switch 500 and calls are processed as described above for computer to POTS calls.

Thus, this passage of Jonas fails to explicitly teach that no additional telephone destinations are entered after the first user goes off-hook and before the switch 650 is accessed. However at paragraph 0038, Jonas teaches that a phone switch can be identified by mapping a destination telephone number area code and central office exchanges to phone switches 600. Such a mapping process would thus require no additional telephone destinations to be entered before accessing the switch.

Regarding converting data received from the central office to an Internet protocol and converting data received from the computer network into a PSTN protocol, Jonas teaches at paragraph 0048:

> Referring now to FIG. 4B, the phone switch 600 acts as to convert between the packet data transmitted over the packet switched computer network 200 and the information transmitted over the circuit switched telephone network 300. The information transmitted over the circuit switched telephone network 300 may be in any of a variety of formats (also know as "protocols"), as described below, including analog or digital transmissions.

See also paragraphs 0052-0056.

Regarding establishing a link over a public computer network, the above mentioned Fig. 2B, where the link is established over the Internet 200 (public computer network).

Regarding placing a second telephone call from said second computer network access port to said second telephone set using a PSTN, Jonas teaches the switch 600 "dial[s] the phone number via the circuit switched telephone network 300." Paragraph 0026. See also paragraph 0028.

*The Proposed Rejections Are Adopted*

Thus, Jonas is a highly relevant, base reference. Accordingly, the third party requester's proposed rejection of **claims 1-24** are adopted (Issues 5 & 6). See also pages 9-18, 29, 30, 36-38, 65-72 and the claim charts (Exhibits CC-B1 and CC-B2) of the '9,637 Request, which are hereby incorporated by reference, and which applies Jonas in a detailed manner to every limitation of claims 1-24 of the Turock patent.

**Heggestad Based Rejections**

***Rejections Proposed in the '9,637 Request***

*Claim Rejections - 35 USC § 103*

**Claims 1-7, 11-19, 23 and 24** are rejected under 35 U.S.C. 103(a) as being unpatentable over H.M. Heggestad and C. Weinstein, "Voice and Data Communication Experiments on a

Wideband Satellite/Terrestrial Internetwork System," IEEE International Conference on communications, Vol. 1, June 19-22, 1983, pp. 1-8 (hereinafter "Heggestad") *in view of* Massachusetts Institute of Technology Lincoln Laboratory Annual Report to the Defense Communications Agency, Defense Switched Network Technology and Experiments Program, issued February 29, 1984 for the fiscal year October 1, 1982 to September 30, 1983, pp. 15-20 (hereinafter "MIT '84").

**Claims 8-10 and 20-22** are rejected under 35 U.S.C. 103(a) as being unpatentable over Heggestad in view of MIT '84 as applied to the respective parent claims above, and further in view of Charalambous.

*Summary of Heggestad*

As discussed in said '9,637 Order, Heggestad teaches significant technological features important to patentability of the Turock patent under reexamination.

For example, regarding receiving at a first computer network access port a first telephone call from a central office placed from said first telephone, consider Fig. 3 reproduced from Heggestad below:



See also the requester's annotation of Heggestad Fig. 2, which is reproduced below from page 85 of the '9,637 Request.




In the second illustration, a communication link is established between two gateways that connection to a PCI and to a STNI.




(Heggestad Fig. 3)

Thus, Heggestad teaches gateway (computer) comprising packet circuit interfaces (access port) that receive a telephone call received from a telephone office emulators ("TOEs") (central office) placed from associated telephones.

Regarding first telephone call specifying a telephone number of said second telephone set, without specifying additional telephone destinations, Heggestad teaches the "calling party at one site keyed a three-digit 'area code' designating the other site, followed by the seven-digit number of one of the telephones there," which constitutes a "demand." Page 5. Thus, Heggestad follows a conventional dialing plan in the format of a single telephone number comprising a three-digit area code. Thus, no additional destination telephone numbers are entered.

Regarding converting data received from the central office to an Internet protocol and converting data received from the computer network into a PSTN protocol, Heggestad teaches the computer network onto which the telephone data is converted by the gateway and transmitted is a wideband satellite network (see Fig. 3 reproduced above) or terrestrial networks (page 1). These networks employ packet switching in an internet environment using standard internet datagram protocols (e.g., TCP/IP). Pages 3 and 4.

Regarding establishing a link over a public computer network, as discussed above a communication link is established over an internet, which is a public computer network.

Regarding placing a second telephone call from said second computer network access port to said second telephone set using a PSTN, Heggestad teaches that the telephone office emulator at the called party's location dials outward to the called telephone. Page 6.

*Some Proposed Rejections Are Not Adopted*

Thus, Heggestad is a highly relevant, base reference. However, the third party proposes a rejection of claims 1-7, 11-19, 23 and 24 over Heggestad alone, but then proposes two additional rejections of the same claims over Heggestad in view of secondary references. Thus, it is reasonable to conclude that the Requester lacks confidence that Heggestad is an anticipatory reference for these claims. Thus, Heggestad alone fails to clearly teach that the telephone office emulator is a central office. Heggestad in view of Weinstein teaches that the telephone office emulator is a central office, but this combination is cumulative to the combination based on Heggestad in view of MIT '84, which also teaches this feature and also one-stage dialing. Thus, the proposed rejections based upon Heggestad alone and Heggestad in view of Weinstein (Issues 7 & 9) are not adopted.

*Some Proposed Rejections Are Adopted*

For the reasons discussed above, the third party requester's proposed rejection of **claims 1-7, 11-19, 23 and 24** as being obvious over the combination of Heggestad in view of MIT '84 is adopted (Issue 8). The proposed rejection of **claims 8-10 and 20-22** as being obvious over the combination of Heggestad in view of Charalambous (Issue 10) is adopted with the following modification -- the claims are rejected over the combination of Heggestad <u>in view of MIT '84</u> as applied to the respective parent claims. Otherwise see also pages 9-18, 29, 30, 39-41, 91-93 and the claim charts (Exhibits CC-C2 and CC-C4) of the '9,637 Request, which are hereby incorporated by reference, and which applies Heggestad in a detailed manner to every limitation of claims 1-24 of the Turock patent.

**Remaining Proposed Rejections Are Not Adopted**

The remaining rejections proposed in the '9,637 Request (Issues 11-14) are not adopted as these proposed rejections fails to raise any substantial new question of patentability.

**Response to Arguments**

Rejections Based upon Doshi

*102 Rejections*

In said Response and Supplemental Response, the patent owner argues Doshi fails to teach converting the data to an "Internet protocol" as claimed. For example, the patent owner argues "ATM network [as disclosed by Doshi] and associated protocols are not equivalent to nor are they interchangeable with the Internet protocols (IP) recited in the claims of Turock. While ATM technologies and protocols are capable of transporting Internet protocols – they could not have been substituted with an Internet protocol." Forys Declaration, paragraph 15.

The examiner agrees. Doshi teaches an ATM network, which it not by itself an Internet protocol. The specification of the Turock patent under reexamination describes Internet communications as including conventional protocols, such as transmission control protocol (TCP), user datagram protocol (UDP) and the internet protocol (IP). Col. 3, ll. 53-67. "TCP/IP and UDP/IP have become worldwide de facto standards for interprocess communication and provide the underlying transport mechanism in use on the Internet." *Id.* Said Request fails to persuasively counter the intrinsic (specification) and extrinsic (declaration) evidence provided by

the patent owner. For example, the adopted rejection relies upon the "capability" in ATM to transmit data over the Internet (e.g., p. 4 of the incorporated, Doshi 102 rejection, Exhibit CC-A1). Thus, Doshi by itself fails to teach an Internet protocol. Thus, all Doshi 35 USC 102 rejections are withdrawn.

*103 Rejections*

The patent owner next argues the RFC 1577 prior art fails to cure the deficiencies of the Doshi prior art discussed above. The patent owner argues at page 21 of the Forys Declaration:

> RFC 1577 is an overlay model for operating IP on top of an ATM network within an existing IP network. In RFC 1577 ATM is treated as a data link layer protocol on top of which runs IP. (RFC 1577, pg. 5). As RFC 1577 states "This memo considers only the application of ATM as a replacement for the "wires" and local LAN segments connecting IP end points" (RFC 1577 pg. 1 ABSTRACT). Because it is a data link layer in RFC 1577, ATM does not provide routing. Rather, with such an overlay model, an ATM network would have to have its own addressing scheme and routing protocol. One of ordinary skill in the art would appreciate that in this architecture there is no coupling or direct mapping between the ATM address space and the IP addressing space Consequently, systems operating in such an environment by definition have an ATM address and an unrelated IP address as well and an addressing resolution protocol is required.

The examiner agrees. RFC 1577 defines "classical IP and ARP ***in*** an Asynchronous Transfer Mode (ATM) network environment...." RFC 1577, p. 1 (emphasis added). Indeed, the RFC 1577 "[i]mplementations MUST support IEEE 802.2 LLC/SNAP encapsulation as described...." LLC/SNAP encapsulation is the default packet format for IP datagrams." *Id*, p. 6. *See also* p. 14, section 6.7, where IP packets are encapsulated within ATM frames. Thus, RFC 1577 presumes the existence of IP packets before adding the ATM network. The Doshi base

reference however fails to teach the existence of IP packets. Thus, the combination of Doshi in view of RFC 1577 fails to meet all claim limitations.

Rejections Based upon Jonas

The patent owner argues Jonas is not available as prior art. From pp. 11 & 12 of said first Response:

> Jonas was filed on October 13, 1995. During prosecution of the present Patent, Patentee submitted a Declaration under 37 C.F.R. § 1.131 on December 29, 1999 which established that the claimed invention was conceived prior to October 5, 1995.3 This declaration was accepted by the Patent Office and the Patentee was deemed to be entitled to an invention date at least as early as October 5, 1995. A copy of the Declaration as submitted is attached hereto. Patentee respectfully submits that the Declaration clearly shows that the claimed invention of the present patent was conceived prior to October 5, 1995 and therefore predated Jonas (October 13, 1995) by at least 8 days.
> ....
> Declaration ¶¶ 3-5. The Requestors argue ('9,637 Request p. 22-24) that the draft specification submitted as an exhibit to the Declaration did not teach every element of claim 1. However, this argument is entirely without merit as the draft specification is not the only proof relied upon in the Declaration. The Declaration also included evidence of billing records and communications.

The examiner does not agree. First, it is proper for the requester to revisit the sufficiency of a 1.131 declaration even regarding prior art that the original examiner applied and withdrew. MPEP 2258.01. Second, and nonetheless, the 1995 Declaration does not address all limitations within the issued claim. The issued claim recites limitations directed to receiving a "first telephone call" from a "central office," where these claims were added by amendment after the Declaration in order to distinguish the claimed invention over the remaining prior art. See the amendment, filed February 8, 2001 in the 08/548,323 application, which latter issued as the Turock patent under reexamination. Thus, the Declaration fails to address the inventive concept

of the claimed invention, which is a new issue not previously considered. As a *nexus* is lacking between said Declaration and the claimed invention, the Declaration evidence is insufficient to establish conception of the claimed invention.

The requester does attempt however to address the new issue of whether the 1995 Declaration can be used to show conception of the new claim limitations. Specifically, the requester looks to the draft specification relied upon in said Declaration. However, the draft specification is alleged to only explicitly teach receiving a first telephone call from a specialized switch that replaces a central office switch. Request, pp. 22 and 23. Thus, it is argued, the draft specification fails to establish conception of receiving a first telephone call from the central office.

In response to this allegation, the patent owner merely replied "this argument is entirely without merit as the draft specification is not the only proof relied upon in the Declaration. The Declaration also included evidence of billing records and communications." First Response, p. 12. *See also* the Supplemental Response, p. 2.

The examiner finds the requester's arguments more persuasive. The draft specification does appear to only teach receiving a first telephone call from a specialized switch, rather than a central office switch. The patent owner has only countered with a conclusory statement. Further, the patent owner generally points to "evidence of billing records and communications," but without more, this does not relate to whether the first telephone call is being received from a

specialized switch rather than a central office switch. The examiner requests the patent owner address these new claim limitations, preferably in the form of declaration evidence.

## Rejections Based upon Heggestad

In said Response and Supplemental Response, the patent owner argues Heggestad "makes use of the Network Voice Protocol [NVP] and Stream Protocol [SP]," but fails to teach using an IP protocol, instead teaching "data protocols such as IP and TCP were inappropriate." Forys Declaration, paragraph 27.

The patent owner's arguments are not persuasive. Heggestad later teaches NVP that "IP datagrams are used to transport the NVP messages and to negotiate a guarantee of sufficient average end-to-end bit rate (a 'stream') over the satellite channel. P. 3. "IP" means internet protocol, which is claimed.

Patent owner also argues Heggestad utilized "specialized four-wire telephones" in contrast with "conventional two-wire telephones." Forys Declaration, paragraph 28.

The patent owner's arguments are not persuasive. First, they are directed to unclaimed features. Second, the use of four-wire circuits as trunk lines in the public switched, telephone network ("PSTN") to carry long-distance signals between central offices is conventional. See U.S. Patent No. 5,917,853 to Greenblatt, Col. 4, ll. 5-28. The use of four-wire subscriber

telephones to connect to the central office is also conventional. See U.S. Patent No. 4,567,332 to Jamison, abstract and col. 3, ll. 53-65.

Patent owner asserts the alternate terrestrial route disclosed by Heggestad...was in fact obtained with operator assistance...." Forys Declaration, paragraph 29. Again however, these arguments are direct to unclaimed feature and further, Heggestad later teaches that such alternate, terrestrial routing is also accomplished via "table-driven PCI software." P. 6.

Finally, the patent owner alleges "Heggestad's specialized protocols were based on use of...virtual circuits much like ATM and Heggestad does not teach converting from a PSTN to an Internet protocol...." As discussed above however, Heggestad does indeed teach the use of internet protocols. "IP datagrams are used to transport the NVP messages and to negotiate a guarantee of sufficient average end-to-end bit rate (a 'stream') over the satellite channel. Heggestad, p. 3. "IP" means internet protocol..

***Conclusion***

**THIS ACTION IS MADE FINAL.** See MPEP § 706.07(a) and § 2271.

A shortened statutory period for response to this action is set to expire 1 months from the mailing date of this action.

Extensions of Time

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c).** A request for extension of time must be filed on or before the day on which a response to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). The mere filing of a request will not affect any extension of time. An extension of time will be granted only for sufficient cause, and for a reasonable time specified.

The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted. In no event, however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action. See MPEP § 2265.

Amendment in Reexamination Proceedings

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

Submissions

Submissions after the final Office action on the merits will be governed by the requirements of 37 CFR 1.116, after final rejection and by 37 CFR 41.33 after appeal, which will be strictly enforced. Any amendment after a Final Action must include "a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented" in order to be considered. See MPEP § 2260.

Notification of Concurrent Proceedings

The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the Turock patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly appraise the Office of such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282, and 2286.

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By EFS: Registered users may submit via the electronic filing system EFS-Web, at https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html.

By Mail to: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to: (571) 273-9900
Central Reexamination Unit

By hand to: Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

For EFS-Web transmission, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication should be directed to Roland Foster at telephone number 571-272-7538.

Signed:

Conferees: /jrp/
ESK

*/Roland G. Foster/*
Roland G. Foster
Central Reexamination Unit, Primary Examiner
Electrical Art Unit 3992
(571) 272-7538