# Exhibit 22

Filed on behalf of Level 3 Communications, LLC.

By: Michael B. Ray
Jon E. Wright
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Avenue, NW
Washington, D.C.
Tel: (202) 371-2600
Fax: (202) 371-2540

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL

AND APPEAL BOARD

---

# PETITION FOR *INTER PARTES* REVIEW

# OF U.S. PATENT NO. 7,724,879

## TABLE OF CONTENTS


I. Notice of Lead and Backup Counsel and Service Information ..................... 1

II. Notice of Real-Party-in-Interest ..................................................... 1

III. Notice of Related Matters ..................................................... 1

IV. Grounds for Standing (37 C.F.R. § 42.104(a)) ..................................... 2

V. Identification of Challenge (37 C.F.R. § 42.104(b)) ..................................... 2

- A. Relief Requested ..................................................... 2
- B. Threshold Requirement for *Inter Partes* Review ..................................... 3

VI. Technical Introduction ..................................................... 4

VII. Claim Construction ..................................................... 6

VIII. Citation of Prior Art ..................................................... 8

IX. Effective Filing Date for Each Claim ..................................................... 10

X. Claim-By-Claim Explanation of Grounds for Unpatentability ..................... 11

- A. PHOSITA ..................................................... 11
- B. Grounds ..................................................... 11
  1. Ground 1: Claims 1-9 and 11-15 are Anticipated by Gordon ..................................................... 11
  2. Ground 2: Claim 6 is Rendered Obvious by Gordon in view of Iwami ..................................................... 22
  3. Ground 3: Claims 8-12 are obvious over Gordon in combination with Kobayashi ..................................... 25
  4. Ground 4: Claim 10 is rendered obvious by Gordon in view of Kobayashi and Chau. ..................................... 29
  5. Ground 5: Claims 1-8, 12, 14 and 15 are obvious over the combination of Merritt, Casner, O'Leary and Weinstein ..................................................... 30
  6. Ground 6: Claims 1-8, 12 and 15 are obvious over the combination of Merritt, Casner, O'Leary, Weinstein and Iwami ..................................................... 40
  7. Ground 7: Claims 8, 9, and 11-13 are obvious over the combination of Merritt, Casner, O'Leary, Weinstein and Kobayashi ..................................................... 44
  8. Ground 8: Claim 10 is obvious over the combination of Merritt, Casner, O'Leary, Weinstein, Kobayashi and Chau ..................................................... 46

9. Ground 9: Claims 1-7 and 15 are Rendered Obvious by Kammerl in view of Iwami ........ 47
10. Ground 10: Claims 8, 9 and 11-13 are obvious over Kammerl and Iwami in combination with Kobayashi ........ 56
11. Ground 11: Claim 10 is obvious over Kammerl and Iwami in combination with Kobayashi and Chau ........ 58
12. Ground 12: Claim 14 is obvious over Kammerl and Iwami in combination with Gordon ........ 58

XI. Secondary Considerations ........ 59

XII. Conclusion ........ 60

*Inter partes* review of United States Patent No. 7,724,879 to Mashinsky, titled "Efficient Communication Through Networks" (hereinafter "the '879 Patent") is hereby requested. A copy of the '879 Patent is provided as Ex. 1001.

## I. Notice of Lead and Backup Counsel and Service Information

Lead Counsel: Michael B. Ray (Reg. No. 33,997) Tel: 202-772-8569

Backup Counsel: Jon E. Wright (Reg. No. 50,720) Tel: 202-772-8651

Address: Sterne, Kessler, Goldstein & Fox, P.L.L.C.

1100 New York Avenue, NW

Washington, D.C.

Tel: (202) 371-2600; Fax: (202) 371-2540

Please address all correspondence to Lead Counsel at the address shown above. Petitioner also consents to electronic service by email at: mray-ptab@skgf.com; and jwright-ptab@skgf.com.

## II. Notice of Real-Party-in-Interest

The petition for *inter partes* review is brought on behalf of Level 3 Communications, LLC ("Petitioner"), the real-party-in-interest.

## III. Notice of Related Matters

The '879 patent is asserted in litigation styled AIP Acquisition LLC v. iBasis, Inc., Civ. Action No. 12-616 (D. Del.); AIP Acquisition LLC v. Level 3 Communications, LLC, Civ. Action No. 12-617 (D. Del.); AIP Acquisition LLC v. Time Warner Cable Inc., *et al.*, Civ. Action No. 12-01692 (D. Del.); AIP

Acquisition LLC v. Cox Communications Inc., *et al.*, Civ. Action No. 12-01691 (D. Del.); AIP Acquisition LLC v. Comcast Corporation, *et al.*, Civ. Action No. 12-01690 (D. Del.); AIP Acquisition LLC v. Cablevision Systems Corporation, *et al.*, Civ. Action No. 12-01688 (D. Del.); and AIP Acquisition LLC v. Charter Communications Inc., *et al.*, Civ. Action No. 12-01689 (D. Del.).

## IV. Grounds for Standing (37 C.F.R. § 42.104(a))

Petitioner certifies that the '879 Patent is available for *inter partes* review and that Petitioner is not barred or estopped from requesting an *inter partes* review challenging claims 1-15 of the '879 Patent on the grounds identified herein.

## V. Identification of Challenge (37 C.F.R. § 42.104(b))

### A. Relief Requested

Petitioner respectfully requests that claims 1-15 of the '879 patent be canceled based on the grounds of unpatentability listed below under 35 U.S.C. §§ 102 and 103. The grounds are grouped around only three primary references to Gordon, Merritt, and Kammerl.

**Grounds based on Gordon as primary reference**

- Ground 1: Claims 1-9 and 11-15 are anticipated by Gordon (§ 102(e)),
- Ground 2: Claim 6 is obvious over Gordon in combination with Iwami (§ 103),
- Ground 3: Claims 8, 9, 11 and 12 are obvious over Gordon in combination with Kobayashi (§ 103),

- Ground 4: Claim 10 is obvious over Gordon in combination with Kobayashi and Chau (§ 103),

**Grounds based on Merritt *et al.* as primary reference**

- Ground 5: Claims 1-8, 12, 14 and 15 are obvious over the combination of Merritt, Casner, O'Leary and Weinstein (§ 103),
- Ground 6: Claims 1-8, 12 and 15 are obvious over the combination of Merritt, Casner, O'Leary, Weinstein and Iwami (§ 103),
- Ground 7: Claims 8, 9, and 11-13 are obvious over the combination of Merritt, Casner, O'Leary and Weinstein with Kobayashi (§ 103),
- Ground 8: Claim 10 is obvious over the combination of Merritt, Casner, O'Leary and Weinstein with Kobayashi and Chau (§ 103),

**Grounds based on Kammerl as primary reference**

- Ground 9: Claims 1-7 and 15 are obvious over Kammerl in combination with Iwami (§ 103),
- Ground 10: Claims 8, 9 and 11-13 are obvious over Kammerl and Iwami in combination with Kobayashi (§ 103),
- Ground 11: Claim 10 is obvious over Kammerl and Iwami in combination with Kobayashi and Chau (§ 103), and
- Ground 12: Claim 14 is obvious over Kammerl and Iwami in combination with Gordon (§ 103).

### B. Threshold Requirement for *Inter Partes* Review

A petition for inter partes review must demonstrate "a reasonable likelihood that the Petitioner would prevail with respect to at least one of the claims challenged in the petition." 35 U.S.C. § 314(a). The Petition meets this threshold. All elements of claims 1-15 of the '879 patent are taught in the prior art as

explained in detail below. For claims grounds based on obviousness under 35 U.S.C. § 103, reasons to combine are established for each ground.

## VI. Technical Introduction

At a broad level, claim 1 of the '879 patent to Mashinsky is directed to carrying voice calls over data networks. In particular, a PSTN (public switched telephone network) call is converted to an internet protocol, sent over a data network, and then converted back to the PSTN. Today, one common type of voice over data network is the Voice over Internet Protocol ("VoIP"). But while VoIP has only become widespread over the last decade, that is not because Mashinsky invented it in his mid-'90s patent application. VoIP's success instead flows from the meteoric rise and spread of the Internet itself, not from the idea to use it to carry voice calls.

That underlying technology of voice calls over networks—and internetworks, or "internets"—had been known long before. By the 1970s, researchers had shown that voice could, in fact, be carried over computer networks. By the early '80s, this work had been extended to the Internet—researchers had described using internet protocols to carry voice between phones connected to the network that would become the Internet itself. This is reflected in the references cited and the declaration of Dr. Vincent Jones.

While this technology was known by the '80s, it only became commercially viable in the '90s—around the time Mashinsky filed his patent application. Before then, the technology faced commercial limitations, such as unavailability of data networks with adequate speed, bandwidth, and connectivity; restrictions on uses of existing networks; and high cost of installing the necessary infrastructure. By 1995, these hurdles had been overcome and many voice over data network products began to appear. (Jones Decl., Ex. 1002, ¶20.)

Claim 1 of the '879 patent is more specifically directed to communicating a voice transmission over a data network that uses an internet protocol. The claimed method receives the voice communication in a telecommunication protocol format (e.g., from a legacy telephone network), converts it to an internet protocol format, sends the converted communication across the data network, and then converts the transmission to a further format (e.g., a telecommunication protocol format for a legacy telephone network). This allows a calling party telephone connected to a local telephone network to call a called party telephone connected to a distant telephone network, using a data network (e.g., an internet) to carry the transmission between the two telephone networks.

The petitioner's declarant Dr. Vincent Charles Jones (Ex. 1002) provides some additional useful background to this technology. *See* Jones Decl., Ex. 1002, ¶¶18-32. Dr. Jones explains that:

- the circuit-switched nature of the Public Switched Telephone Network (PSTN), originally designed to provide voice communication, restricted its ability to cost-effectively carry data;
- packet switching was developed as an alternative to circuit switching;
- the cost-effectiveness of packet switching led to the development of multiple competing networking protocol suites in the 1970's;
- the Internet Protocol (IP) was one such protocol; and
- it was recognized early on that a packet-switched data network could be used to carry voice traffic.

By the time the '879 patent was filed, these concepts were well known and used by others. The prior art cited herein proves this. Dr. Jones addresses the cited prior art and explains how each applies to the claims of the '879 patent.

## VII. Claim Construction

The terms in claims 1-15 are to be given their broadest reasonable interpretation, as understood by one of ordinary skill in the art and consistent with the disclosure. 37 C.F.R. § 42.100(b). This meaning for certain terms is explained below.

"*Access device*" means any device that allows entry to a circuit or other communications facility such as a voice or data network. (Jones Decl., Ex. 1002, ¶¶ 35-36.)

"*Telecommunication protocol*" means a specific set of rules, procedures or conventions relating to format and timing of a communication. (Jones Decl., Ex. 1002, ¶¶37-38.)

An "*internet protocol*" means a set of rules, procedures or conventions relating to format and timing of data that allows communications between networks. (Jones Decl., Ex. 1002, ¶¶39-41.) This construction is consistent with the use of the phrase in the disclosure and the prosecution history of the '879 patent. Specifically, the disclosure of the '879 patent describes "using internet protocols *such as* transmission control protocol/Internet protocol (TCP/IP)…." ('879 patent, Ex. 1001, 7:35-37, emphasis added.) Clearly indicating that the term "internet protocol" is broader than the term TCP/IP which is merely an example of an internet protocol. This interpretation is supported by the plain language of claim 1, especially as claim 1 is compared to claim 1 of the parent application of the '879 patent.

The '879 patent is a continuation of U.S. App. No. 10/941,471, now U.S. Pat. No. 7,269,247 (the "'247 patent") (Ex. 1003). The *only* differences between claim 1 of the '247 patent and claim 1 of the '879 patent is that the '247 patent recites "the second format being internet protocol" (preceded by no article) and "the second communication network being the Internet," whereas the '879 patent recites "the second format being *an* internet protocol" and "the second

communication network being *a data network*." Here, the patentee has clearly manifested an intent for the term "internet protocol" in the '879 patent to be broader than the '279 patent's reference to the "internet protocol" of "the Internet" which is the Internet Protocol (upper case "I"). (Jones Decl. ¶39.)

"*Telecommunication node*" means a point of connection in a telecommunication network. (Jones Decl., Ex. 1002, ¶¶42-43.)

"*Selecting a route for the transmission based on at least one criteria defined by user preference*" means choosing a transmission route for a communication based on a user's criteria. (Jones Decl., Ex. 1002, ¶¶44-45.)

"*Selecting a route for the transmission based on credit availability of a calling party*" comprises choosing whether to transmit or disconnect a call based on a credit availability. (Jones Decl., Ex. 1002, ¶¶46-47.)

"*Signaling message*" means control information exchanged between two points in a network to establish, maintain, and remove a connection. (Jones Decl., Ex. 1002, ¶¶48-50.)

## VIII. Citation of Prior Art

As set forth herein and in Dr. Jones's declaration (Ex. 1002), claims 1-15 are unpatentable in view of the following prior art references alone or in the combinations specified in the grounds of rejection below:

- **U.S. Patent No. 5,608,786 to Gordon**, titled "Unified Messaging System and Method," filed on February 13, 1995, and issued on March 4, 1997, ("Gordon") (Ex. 1005). Gordon qualifies as prior art under at least 35 U.S.C. § 102(e).
- **U.S. Patent No. 5,604,737 to Iwami *et al.***, titled "Voice Communication System and Voice Communication Method," filed on December 13, 1994, and issued on February 18, 1997, ("Iwami") (Ex. 1006). Iwami qualifies as prior art under at least 35 U.S.C. § 102(e).
- **U.S. Patent No. 5,337,352 to Kobayashi *et al.***, titled "Private Branch Exchange System Having an Automatic Optimal Route Selecting Mechanism," filed on June 27, 1991, and issued August 9, 1994, ("Kobayashi") (Ex. 1007). Kobayashi qualifies as prior art under at least 35 U.S.C. § 102(b).
- **U.S. Patent No. 5,187,710 to Chau *et al.***, titled "Method and Apparatus for the Billing of Value-Added Communication Calls," filed on December 19, 1990, and issued on February 16, 1993, ("Chau") (Ex. 1008). Chau qualifies as prior art under at least 35 U.S.C. § 102(b).
- **Merritt**, Ian, "Providing Telephone Line Access to a Packet Voice Network," Marina del Rey, Calif.: Information Sciences Institute, University of Southern California, pp. 1-15 (22 total pages), February 1983, *(Available at Defense Technical Information Center, Accession Number: ADA126270)*, ("Merritt") (Ex. 1009). Merritt qualifies as prior art under at least 35 U.S.C. § 102(b).
- **Casner**, S. *et al.*, "Wideband Communication," *in* 1982 ANNUAL TECHNICAL REPORT: RESEARCH PROGRAM IN COMPUTER TECHNOLOGY, Marina del Rey, Calif.: University of Southern California Information Sciences Institute, pp. 1-11, 85-97 (137 total pages) March 1983, *(Available at National Technical Information Service, Product Code ADA127288)*, ("Casner") (Ex. 1010). Casner qualifies as prior art under at least 35 U.S.C. § 102(b).

- **O'Leary**, G.C., *et al.*, "A modular approach to packet voice terminal hardware design," in *AFIPS Conference Proceedings, Volume 50: National Computer Conference*, pp. 183-188, AFIPS Press, May 1981, ("O'Leary") (Ex. 1011). O'Leary qualifies as prior art under at least 35 U.S.C. § 102(b).
- **Weinstein**, C. and Forgie, J., "Experience with speech communication in packet networks," IEEE Journal on Selected Areas in Communications, Special Issue on Packet Switched Voice and Data Communications, Vol. 1, No. 6, December 1983, pp. 963-980 ("Weinstein"). (Ex. 1012). Weinstein qualifies as prior art under at least 35 U.S.C. § 102(b).**U.S. Patent No. 5,051,983 to Kammerl *et al.***, titled "Method and Circuitry for Transmission of Speech Signals in a Broad-band Communications Network," filed on September 5, 1989, and issued on September 24, 1991, ("Kammerl") (Ex. 1013). Kammerl qualifies as prior art under at least 35 U.S.C. § 102(b).

## IX. Effective Filing Date for Each Claim

The '879 patent claims a priority date of October 11, 1994 based on the filing date of U.S. Application No. 08/320,269 ("the '269 application") (Ex. 1004). Dr. Jones compared the disclosure of the '269 application to the disclosure of the '879 patent, found substantial differences, and provided his opinion that the '269 application would not have conveyed to a person of ordinary skill in the art that the applicant was in possession of the subject matter claimed in the'879 patent at the time that the '269 application was filed. (Jones Decl., Ex. 1002, ¶¶51-58.) Among other significant differences, the '269 application does not mention the claim term "internet protocol" and provides no support for same. Based on these differences,

Dr. Jones provided his opinion that the '269 application, taken as a whole, would not have conveyed to a person of ordinary skill in the art that the applicant was in possession of the claimed subject matter of the '879 patent at the time the '269 application was filed. See Jones Decl., Ex. 1002, ¶¶ 51-58. Thus, the '879 patent is not entitled to the priority date of the '269 application.

## X. Claim-By-Claim Explanation of Grounds for Unpatentability

Claims 1-15 are unpatentable as shown in the following Grounds.

### A. PHOSITA

As used herein, "a person having ordinary skill in the art" (PHOSITA) refers to a person having a B.S. degree in Electrical Engineering, Computer Engineering, or Computer Science, as well as about 3-5 years of industry experience in communications network design and programming. (Jones Decl. ¶17.)

### B. Grounds

#### 1. Ground 1: Claims 1-9 and 11-15 are Anticipated by Gordon

As illustrated in the claim charts below, Gordon anticipates claims 1-9 and 11-15 at least under 35 U.S.C. § 102(e).

| **1. A method for communication between two access devices via one or more networks, comprising the steps:** |
|---|
| "The present invention is… directed to a unified messaging system comprising a computer system which is connected to a public switched telephone network and a high speed data communication network through which E-Mail, facsimiles and voice mail may be transferred." (Gordon, Ex. 1005, 3:31-35.)<br><br>"FIG. 5 also shows how this UniPost system can be used for providing a direct telephone link using the data transmission network involving Internet." (Gordon, |

| |
|---|
| Ex. 1005, 8:62-64.)<br><br><br>FIG. 5<br><br>FIG. 5 shows telephones (access devices) and networks (telephone networks 10 and global internet system 4). (Jones Decl., Ex. 1002, ¶¶ 60-63.) |
| **receiving a transmission in a first format through a first communication network from a first access device,** |
| "UNIPOST™ provides dial-in access to its subscribers through specialized access computers called UniPost Access Nodes (UANs)." (Gordon, Ex. 1005, 4:22-26.)<br><br>"Messages to the UniPost Internet subscriber 12 can… be made from… ***a telephone set 16***…. [The telephone set 16] communicate[s] to the UniPost Access Node 6 ***through the local public switched telephone network 10*** and effectively gain[s] access to [an] electronic mailbox… provided by the UniPost Access Node." (Gordon, Ex. 1005 5:32-40, emphasis added.)<br><br>"The UniPost system can be used for ***providing a direct telephone link*** using the data transmission network involving Internet. In this case, voice is transmitted digitally and a live communication is maintained between Toronto UniPost Access Node 6 and Tokyo UniPost Access Node 6. Each of these have formed ***a live communication with the originating telephone set and the receiving telephone set***." (Gordon, Ex. 1005, 8:62-9:2, emphasis added.)<br><br>Thus, Gordon discloses receiving a transmission in a first format (telephone format) through a first communication network (PSTN) from a first access device (a telephone). (Jones Decl., Ex. 1002, ¶¶61-64.) |
| **the first format comprising a telecommunication protocol for establishing and transmitting voice communication for a phone call in one of a digital telephone network, an analog telephone network, and a cellular network;** |

| | |
|---|---|
| "The UniPost Personal Mailbox Number provides the subscriber with an access point which can receive message from terminals other than computers, specifically ***from telephones*** and facsimile machines." (Gordon, Ex. 1005, 4:47-51, emphasis added.)<br><br>"Messages to the UniPost Internet subscriber 12 can… be made from… a telephone set 16…. [The telephone set 16] communicate[s] to the UniPost Access Node 6 through the ***local public switched telephone network*** 10 and effectively gain[s] access to [an] electronic mailbox… provided by the UniPost Access Node." (Gordon, Ex. 1005 5:32-40, emphasis added.)<br><br>"The UniPost system can be used for providing a direct telephone link using the data transmission network involving Internet. In this case, ***voice is transmitted digitally and a live communication is maintained*** between Toronto UniPost Access Node 6 and Tokyo UniPost Access Node 6. Each of these have formed a live communication with the originating telephone set and the receiving telephone set." (Gordon, Ex. 1005, 8:62-9:2, emphasis added.)<br><br>A telecommunication protocol is used to establish a call and transmit voice to the UniPost node from the PSTN in Gordon, and the PSTN includes an analog or digital telephone network. (Jones Decl., Ex. 1002, ¶¶ 65-66.) |
| **performing a first conversion converting the transmission from the first format to a second format, the second format being an internet protocol;** |
| "FIG. 5 also shows how this UniPost system can be used for providing a direct telephone link ***using the data transmission network involving Internet***. In this case, voice is transmitted digitally and a live communication is maintained between Toronto UniPost Access Node 6 and Tokyo UniPost Access Node 6." (Gordon, Ex. 1005, 8:62-67, emphasis added.)<br><br>"The discount long distance messaging requires that ***each UniPost Access Node is able to accept and digitize voice calls***." (Gordon, Ex. 1005, 9:5-7, emphasis added.)<br><br>FIG. 5 of Gordon shows the UniPost Access Nodes communicating via the "Global Internet System 4." The Global Internet System of Gordon uses an internet protocol, and conversion to/from an internet protocol must be performed by the UniPost Access Nodes. (Jones Decl., Ex. 1002, ¶¶ 67-68.) |
| **sending the converted transmission through a second communication network, the second communication network being a data network, for reception by a second access device; and** |

| | |
|---|---|
| "The UniPost system can be used for ***providing a direct telephone link using the data transmission network involving Internet***." Gordon, 8:62-64, emphasis added.)<br><br>"Each of these have formed a live communication with the originating telephone set and the ***receiving telephone set***." Gordon, 7:67-8:2, emphasis added.)<br><br>The Global Internet System is a data network, and the receiving telephone set is a second access device. (Jones Decl., Ex. 1002, ¶69.) |
| **performing a second conversion further converting the converted transmission from the second format to a further format suitable for the second access device, wherein the first access device and the second access device comprise telecommunication nodes, and said further format comprises said first format or another telecommunication protocol.** |
| "The UniPost Access Node 6 recognizes that it is a transmission to be received in Japan, receives the transmission, and then uses the Internet data transmission system 4 to transfer the facsimile to the Tokyo UniPost Access Node 6. The Tokyo UniPost Access Node 6 then ***uses the public switched telephone network 10 to deliver the UniPost to the particular address*** identified in the original transmission." (Gordon, Ex. 1005, 8:11-18, emphasis added.)<br><br>"***The discount long distance voice messaging*** requires that each UniPost Access Node is able to accept and digitize voice calls.... ***As with long distance facsimile calls***, the call originator will dial the local UniPost Access Node and enter his account and the number of the recipient. The UniPost Access Node will establish a packet data path between the originating UniPost Access Node and the destination UniPost Access Node closest to the recipient. The destination UniPost Access Node will then place ***a local call to the recipient and deliver the voice message***." (Gordon, Ex. 1005, 9:5-17, emphasis added.)<br><br>For a UniPost Access Node to place a local call to a call recipient as described by Gordon, the UniPost node must convert internet protocol to a telecommunication protocol. (Jones Decl., Ex. 1002, ¶ 70.) The telephone sets and the UniPost nodes are telecommunication nodes. (Jones Decl., Ex. 1002, ¶71.) |

| |
|---|
| **2. The method of claim 1, wherein the transmission is sent from the first access device serially to a first central node, the data network, a second central node, and the second access device.** |
| "[T]he call originator will dial the ***local UniPost Access Node*** and enter his account and the number of the recipient. The UniPost Access Node will establish a |

| |
|---|
| ***packet data path*** between the originating UniPost Access Node and the ***destination UniPost Access Node*** closest to the recipient. The destination UniPost Access Node will then place a local call to ***the recipient*** and deliver the voice message." (Gordon, Ex. 1005, 9:10-17, emphasis added.)<br><br>Thus, Gordon teaches sending a transmission from the first access device (a phone) serially to a first central node (Toronto UniPost Access Node 6), the data network (the Global Internet System 4), a second central node (Tokyo UniPost Access Node), and the second access device (a phone). (Jones Decl., Ex. 1002, ¶72.) |

| **3. The method of claim 1, wherein the transmission is related to establishing or transmitting voice communication for a phone call from a calling party connected to the first access device to a called party connected to the second access device.** |
|---|
| "The UniPost system can be used for providing a direct telephone link using the data transmission network involving Internet." (Gordon, Ex. 1005, 8:62-64.)<br><br>"Each of these have formed a live communication with the originating telephone set and the receiving telephone set." (Gordon, Ex. 1005, 7:67-8:2.)<br><br>"[A] ***caller*** calling a UniPost subscriber from ***a telephone***...." (Gordon, Ex. 1005, 6:4-5, emphasis added.)<br><br>"[T]he ***subscriber*** can use ***a telephone***... to retrieve his messages form any UAN." (Gordon, Ex. 1005, 6:8-10, emphasis added.)<br><br>Both the calling party and the called party would be associated with an access device (e.g., a telephone). (Jones Decl., Ex. 1002, ¶73.) |

| **4. The method of claim 1, wherein the first communication network is one of an analog telephone network, a digital telephone network, and a cellular network.** |
|---|
| "Messages to the UniPost Internet subscriber 12 can... be made from... a telephone set 16.... [The telephone set 16] communicate[s] to the UniPost Access Node 6 through the local public switched telephone network 10...." (Gordon, Ex. 1005 5:32-38, emphasis added.)<br><br>"The present invention is not limited to the use of land based telephone lines and ***is used with cellular*** or other accepted telephone transmission arrangements...." (Gordon, Ex. 1005, 11:15-17, emphasis added.) |

| |
|---|
| The PSTN included both analog and digital telephone networks. (Jones Decl., Ex. 1002, ¶74.) |

| **5. The method of claim 1, wherein a calling party is connected to the first access device for transmitting and receiving voice communication for a phone call and a called party is connected to the second access device for transmitting and receiving the voice communication for the phone call.** |
|---|
| "The UniPost system can be used for providing a direct telephone link using the data transmission network involving Internet." (Gordon, Ex. 1005, 8:62-64.)<br><br>"Each of these have formed a live communication with the originating telephone set and the receiving telephone set." (Gordon, Ex. 1005, 7:67-8:2.)<br><br>"[A] ***caller*** calling a UniPost subscriber from ***a telephone***...." (Gordon, Ex. 1005, 6:4-5, emphasis added.)<br><br>"[T]he ***subscriber*** can use ***a telephone***... to retrieve his messages form any UAN." (Gordon, Ex. 1005, 6:8-10, emphasis added.)<br><br>Both the calling party and the called party would be associated with an access device (e.g., a telephone). (Jones Decl., Ex. 1002, ¶¶ 73, 75.) |

| **6. The method of claim 1, wherein the second conversion is performed at the second access device.** |
|---|
| "The discount long distance voice messaging requires that each UniPost Access Node is able to accept and digitize voice calls.... As with long distance facsimile calls, the call originator will dial the local UniPost Access Node and enter his account and the number of the recipient. The UniPost Access Node will establish a packet data path between the originating UniPost Access Node and the destination UniPost Access Node closest to the recipient. ***The destination UniPost Access Node will then place a local call to the recipient and deliver the voice message.***" (Gordon, Ex. 1005, 9:5-17, emphasis added.) |

As illustrated in the analysis of claim 1 above, a UniPost Access Node, such as Tokyo UniPost Access Node 6 of Gordon, performs the claimed "second conversion." Further, a UniPost Access Node functions as the claimed "access

device," because the UniPost Access Node "allows entry to a circuit or other communications facility such as a voice or data network." (*See* Jones Decl., Ex. 1002, definition of "access device," ¶¶76-77.)

| **7. The method of claim 1, wherein said second access device is connected to a central office of a telecommunication network.** |
|---|
| Gordon FIG. 5 shows access devices (e.g., telephones) connected to local public switched telephone networks. A public switched telephone network inherently includes a central office. (Jones Decl., Ex. 1002, ¶78.) |

| **8. The method of claim 1, further comprising the step of selecting a route for the transmission based on at least one criteria defined by user preference.** |
|---|
| "This effective communication between the computers using the Internet, allows a fast, reliable and cost-effective transfer of information. Such a system has the benefit of providing the subscriber with access to the closest commercial access providing computer and can reduce long distance charges as well as improve the quality of the communication channel, as typically a local or shorter long distance call is required to connect with the particular commercial access providing computer. Thus, Internet becomes the transport backbone of a global voice and fax mail system and opens Internet to transparent access by telephones, facsimile terminals and other non-subscriber devices." (Gordon, Ex. 1005, 3:18-30.)<br><br>"It can also be appreciated that the example shown in FIG. 3 has allowed the subscriber 12 to form a relatively local connection using the public switched telephone network 10 to contact the Tokyo UniPost Access Node 6. This is then connected to the Toronto UniPost Access Node 6 and the electronic mailbox of the subscriber via an Internet or dedicated data communication channel." (Gordon, Ex. 1005, 7:41-46.)<br><br>"By redirecting the transmission, the high quality of the data transmission network is utilized, and thus, the cost for this portion of the transmission is also low." (Gordon, Ex. 1005, 8:41-44.) |

As illustrated by these quotes, Gordon teaches using the Internet as a transport network to avoid the relatively high long distance charges of the PSTN. A user choosing the system of Gordon rather than choosing the PSTN is a

manifestation of a user preference. (Jones Decl., Ex. 1002, ¶¶79-81.) As such, it is inherent in the teachings of Gordon that a caller may choose to use the system of Gordon to select a route (i.e., using the Internet) rather than using the PSTN for a call. (Jones Decl., Ex. 1002, ¶¶79-81.)

| **9. The method of claim 8, wherein the at least one criteria comprises a specified level of transmission quality.** |
|---|
| "For example, if the UniPost Internet subscriber 12 in FIG. 3 was merely a subscriber to the generic Internet access provider shown as 8, he would have to use the local public switched telephone network as well as a long distance telephone network to access the generic Internet access provider 8. This access provider would then deliver the information back to the subscriber. This results in a long distance telephone communication which is not capable of transmitting the data at the same ***rate or accuracy*** as the Internet system and results in a system which is not as convenient or cost effective as the UniPost system described above." (Gordon, Ex. 1005, 7:55-66, emphasis added.)<br><br>Gordon discusses that the speed and accuracy are factors when choosing transmission routes. Speed and accuracy are criteria of transmission quality. (Jones Decl., Ex. 1002, ¶82.) |

| **11. The method of claim 8, wherein the at least one criteria comprises cost of routing.** |
|---|
| See Gordon, Ex. 1005, 3:18-30, 7:41-46, and 8:41-44, reproduced above in the claim chart for claim 8. |

As illustrated by these quotes, Gordon teaches using the Internet as a transport network to avoid the relatively high long distance charges of the PSTN. It is inherent in the teachings of Gordon that a caller may choose to use the system of Gordon to select a route (i.e., using the Internet) rather than using the PSTN for a call. A user choosing the system of Gordon rather than the PSTN is a manifestation

of a user preference related to, among other things, cost of routing. (Jones Decl., Ex. 1002, ¶¶79-81, 83.)

| **12. The method of claim 8, wherein the transmission comprises execution of a call setup procedure.** |
|---|
| "The discount long distance voice messaging requires that each UniPost Access Node is able to accept and digitize voice calls.... As with long distance facsimile calls, the call originator will dial the local UniPost Access Node ***and enter his account and the number of the recipient***. The UniPost Access Node will ***establish a packet data path*** between the originating UniPost Access Node and the destination UniPost Access Node closest to the recipient. The destination UniPost Access Node will then place a local call to the recipient and deliver the voice message." (Gordon, Ex. 1005, 9:5-17, emphasis added.) |

Gordon executes a call setup procedure that involves a user dialing a local UniPost Access Node, entering his account number, and entering the number of the recipient. The UniPost Access Node then establishes a packet data path. This is call setup. The signaling functions of local public switched telephone network 10 to establish a phone call also constitute a call setup procedure. (Jones Decl., Ex. 1002, ¶84.)

| **13. The method of claim 1, further comprising the step of storing at least one of subscriber information, rate schedules, and call details.** |
|---|
| Gordon teaches storing subscriber information. For example:<br><br>"UNIPOST™ provides dial-in access to its subscribers through specialized access computers called UniPost Access Nodes (UANs) located in different geographical regions (see FIG. 1). Each ***UniPost Access Node provides a subscriber with an E-Mail address and account, preferably an Internet address***...." (Gordon, Ex. 1005, 4:24-29, emphasis added.)<br><br>"In addition, the subscriber is provided with a Personal Mailbox Telephone Number, for example: 1-416-555-1234, and Personal ID Number (PIN): 63265." (Gordon, Ex. 1005, 4:35-38.) |

"One such subscriber 22 is shown using the local public switched telephone network 10 to gain access to the generic Internet CAP for transferring a file to E-Mail subscriber gordon@toronto.UniPost.com" indicated as 12. This is via the Toronto ***UniPost Access Node 6, which includes the electronic Mailbox*** of Gordon." (Gordon, Ex. 1005, 5:20-25, emphasis added.)

Gordon also teaches storing call details:

"The following provides an example of the type of summary with which a user can be provided when he uses a computer to retrieve his messages from a UniPost Access Node. . . ."

| TYPE | DATE | TIME | LENGTH | SENDER ID | STATUS |
|---|---|---|---|---|---|
| Voice | 10 Sep 94 | 11:34:22 | 2.2 min | 212-546-9112 | Not Played |
| Voice | 11 Sep 94 | 08:13:41 | 3.5 min | 638-9223 | Not Played |
| Voice | 11 Sept 94 | 14:56:17 | 1.5 min | Unknown Caller | Played |
| Facsimile | 09 Sep 94 | 10:04:31 | 5 Pages | Acme Fireworks | Rec OK |
| Facsimile | 10 Sep 94 | 11:34:51 | 7 Pages | 313-756-7781 | Viewed |
| Facsimile | 11 Sep 94 | 15:07:27 | 3 Pages | Benton-Cleary | Rec OK |
| Text File | 08 Sep 94 | 09:23:12 | 4235 Bytes | kjohnson@terratek.com | Rec OK |
| Binary File | 09 Sep 94 | 12:34:51 | 125912 Bytes | CIS:77605.171 | Rec OK |
| Video | 10 Sep 94 | 15:35:10 | 28 Seconds | tbailey@vidclips.com | Rec OK |

(Gordon, Ex. 1005, (10:20-23 and 35-50.) Also see Jones Decl., Ex. 1002, ¶¶85-86.

**14. The method of claim 1, wherein the transmission is related to a fax transmission.**

"[A] ***facsimile transmission*** addressed to a particular address in Japan can effectively use the UniPost access system." (Gordon, Ex. 1005, 8:1-3, emphasis added.)

"The UniPost Access Node 6 recognizes that it is a transmission to be received in Japan, receives the transmission, and then uses the Internet data transmission system 4 ***to transfer the facsimile*** to the Tokyo UniPost Access Node 6. The Tokyo UniPost Access Node 6 then uses the public switched telephone network 10 to deliver the UniPost to the particular address identified in the original transmission." (Gordon, Ex. 1005, 8:11-18, emphasis added.)