Jones Decl., Ex. 1002, ¶¶137-138)). Even under this incorrect interpretation, claim 1 is still unpatentable over the combination of Merritt, Casner, O'Leary, and Weinstein. And it would also be unpatentable over the further combination of Merritt, Casner, O'Leary, Weinstein with Iwami under 35 U.S.C. § 103. Iwami is an example of a prior art, voice communication system that uses internet protocol and, more specifically, uses the Internet Protocol.

The Internet Protocol (with an uppercase 'I'), is an example of an internet protocol for communication between networks. (Jones Decl., Ex. 1002, ¶39, 164). It is most commonly known for being the network layer protocol used by the Internet. (Jones Decl., Ex. 1002, ¶¶39, 164). At the time of filing of the '879 patent, the Internet Protocol was known as the protocol for Internet data communication. (Jones Decl., Ex. 1002, ¶¶39, 164.)

Iwami discloses using the Internet Protocol for establishing and transmitting voice communications for a phone call. In particular, Iwami's system allows a telephone connected through a public telephone network to place a call across a packet-switched network to a terminal connected through a Local Area Network (LAN). (*See* Iwami, 1:55-60, 11:19-25, 12:52-59.) Figure 1 of Iwami illustrates the system setup:




With regard to the protocol used by the packet-switched network, Iwami teaches:

> "[T]he LAN communication controller 14 shown in FIG. 2 may be adapted to simultaneously support a plurality of communication protocols, for example, ***TCP/IP protocol and UDP/IP protocol***, such that ***the voice communication packet is transmitted utilizing the UDP/IP protocol . . . and control information*** such as the voice communication request command and voice communication end notice command shown in FIG. 5 and the connected terminal determination result notice command shown in FIG. 19 ***are transmitted utilizing the TCP/IP protocol***. The appropriate use of different protocols in this way will . . . reliably control the start, termination, and so on of the voice communication." (Iwami, Ex. 1006, 17:44-58, emphasis added.)

"TCP/IP" and "UDP/IP" are well-known terms of art that stand for Transmission Control Protocol/Internet Protocol" and "Uniform Datagram Protocol/Internet Protocol." (Jones Decl., Ex. 1002, ¶167.) Thus, Iwami teaches using the Internet Protocol for establishing and transmitting voice communications for a phone call.

A PHOSITA would have found it obvious to modify the system of Merritt, Casner, O'Leary and Weinstein to use the Internet Protocol (rather than use two different internet protocols) to establish and transmit voice communications because doing so would be nothing more than the application of a known method of world-wide data communication to achieve a predictable result. Dr. Jones explained that Weinstein used an internet protocol called ST protocol because in the early 1980's the bandwidth of the transmission channels was severely limited and, for more reliable delivery of voice packets, the ST protocol provided higher performance by allowing reservation of bandwidth. (Jones Decl., Ex. 1002, in ¶169.) It would have been obvious to a PHOSITA that, as more bandwidth became available, bandwidth reservation would not have been necessary and Internet Protocol could have been used to transport voice. (Jones Decl., Ex. 1002, ¶169.) Further, the '879 patent does not teach any unexpected results based on using the Internet Protocol for transmitting voice communications, and a PHOSITA would have found it obvious to try the Internet Protocol as one of a

finite number of identified communications protocols that were known at the time. (Jones Decl., Ex. 1002, ¶170.)

For the remainder of the analysis of claims 1-8, 12, 14 and 15, see Ground 5 above.

### 7. Ground 7: Claims 8, 9, and 11-13 are obvious over the combination of Merritt, Casner, O'Leary, Weinstein and Kobayashi

Additional, non-cumulative evidence of the unpatentability of claims 8, 9 and 11-13 are provided by the combination of Merritt, Casner, O'Leary, and Weinstein with Kobayashi, making these claims unpatentable under 35 U.S.C. § 103. See the claim chart for claim 8 in Ground 3 above for Kobayashi. Merritt aimed to provide voice over packet networks because these networks offer "the advantages of dynamic routing, excellent transmission quality, and a mixture of voice and data on the same network." (Merritt, Ex. 1009, p. 1.) Kobayashi teaches a method of improving routing and transmission quality by routing on the basis of the recorded preferences of users of the network. (*See* Kobayashi, 3:20-25.) Incorporating Kobayashi into Merritt would be nothing more than applying Kobayashi's known routing methods to Merritt in an obvious way, to achieve the predictable result of improving routing and transmission quality. (Jones Decl., Ex. 1002, ¶¶185-186.) For example, a PVT of Merritt could select a route based on user preferences stored for a user. Upon receiving a call, the PVT could access the

preferences to select a route according to the teachings of Kobayashi. (Jones Decl., Ex. 1002, ¶186) Doing so would yield the predictable result of selecting the most appropriate route for the user, and thus improving routing and transmission quality. (Jones Decl., Ex. 1002, ¶186.) Moreover, a PHOSITA would have recognized Kobayashi's teachings as one of a finite number of identified and predictable solutions to the problem of selecting a route for communication. Thus, claim 8 is rendered obvious by Merritt in view of Kobayashi. For claim 9, see the claim chart for claim 9 in Ground 3 above for Kobayashi. A PHOSITA would have found it obvious to apply user specified transmission quality preferences to selecting a route for the same reasons detailed above in Ground 7 with respect to claim 8. For claim 11, see the claim chart for claim 11 in Ground 3 above for Kobayashi. A PHOSITA would have found it obvious to apply user specified cost preferences to selecting a route for the same reasons detailed above in Ground 7 with respect to claim 8.

For claim 12, see the claim chart for claim 12 in Ground 5 above.

| **13. The method of claim 1, further comprising the step of storing at least one of subscriber information, rate schedules, and call details.** |
| --- |
| "The ***tenant table 121 registers information*** on which trunk (i.e., each trunk corresponds to the respective route) should be used ***for each of the tenants*** A, B and C." (Kobayashi, Ex. 1007, 5:66-6:1.)<br><br>"[T]he controller CONT determines the optimal route (least-cost route) by referring to a table stored in the memory MEM." (Kobayashi, Ex. 1007, 2:24-26.) |

A PHOSITA would have found it obvious to apply user specified cost preferences to selecting a route for the same reasons detailed above in Ground 7 with respect to claim 8. Furthermore, a PHOSITA would have found it obvious to modify Merritt's system by adding the features of storing subscriber information, rate schedules and call details because it is a necessary and known method for achieving the predictable result of properly billing users for their usage of the communications system. (Jones Decl., ¶183.)

#### 8. Ground 8: Claim 10 is obvious over the combination of Merritt, Casner, O'Leary, Weinstein, Kobayashi and Chau

As illustrated in the claim chart below, every element of claim 10 is taught or suggested by the combination of Merritt, Casner, O'Leary, Weinstein, Kobayashi and Chau, making claim 10 unpatentable under 35 U.S.C. § 103. See the claim chart for claim 10 in Ground 4 above. A PHOSITA would have found it obvious to modify Merritt's system with the teachings of selecting a route based on user credit availability because doing so would be nothing more than the application of known methods to achieve the predictable result of disallowing calls from delinquent users. (*See* claim construction at Section VII above; Jones Decl., Ex. 1002, ¶191.)

### 9. Ground 9: Claims 1-7 and 15 are Rendered Obvious by Kammerl in view of Iwami

As illustrated in the claim charts below, every element of claims 1-7 and 15 is taught by Kammerl in combination with Iwami, making these claims unpatentable under 35 U.S.C. § 103.

**1. A method for communication between two access devices via one or more networks, comprising the steps:**

Kammerl discloses a "method and circuitry for transmission of speech signals in a broad-band communications network." (Kammerl, Ex. 1013, title.) FIG. 1 shows subscriber sets TlnA, TlnB and TlnC connected via packet switching network PN and telephone switching network AN. (Kammerl, Ex. 1013, 3:20-24, 56-58, 4:27-31, and FIG. 1.)

FIG 1




**receiving a transmission in a first format through a first communication network from a first access device,**

"It is assumed that a connection from the subscriber set TlnA of packet switching network AN [*sic.*] to subscriber's set TlnC of the telephone switching network AN is to be established for a speech signal transmission." (Kammerl, Ex. 1013, 4:22-26.)

"For a network transfer between packet switching network PN and the above-mentioned telephone switching network AN, a network transfer unit NUE (interworking unit) is provided which is connected on the one hand to the telephone switching network by a trunk group with a number of individual lines and on the other hand is connected to the packet (switching network) by way of at least one interoffice trunk. This interworking unit performs all the signal and

| | |
|---|---|
| procedure conversions needed for network transfer." Kammerl, 3:61-4:2.<br><br>Telephone switching network AN is the first communication network, and subscriber set TlnC is the first access device. (Jones Decl., Ex. 1002, ¶¶200-201.) |
| **the first format comprising a telecommunication protocol for establishing and transmitting voice communication for a phone call in one of a digital telephone network, an analog telephone network, and a cellular network;** |
| "The ***telephone switching network*** AN itself may be a traditional telephone switching network which may consist, for example, of a number of telephone [*sic.*] interconnected by interoffice trunks. These telephone exchanges, three of which are shown in FIG. 1 where they are labeled as AVST1, AVST2 and AVST2[*sic.*], each have subscriber's lines in addition to interoffice trunks, and ***analog subscriber's sets*** can be connected to these subscriber's lines by hybrid sets GA. FIG. 1 shows a hybrid set connected to the telephone exchange AVST1 and a subscriber's set Tlnc [*sic.*] connected to the latter in a schematic diagram." (Kammerl, Ex. 1013, 4:4-15, emphasis added.)<br><br>See Kammerl, Ex. 1013, 4:22-26, reproduced above in this claim chart.<br><br>"To initiate trunking, selection information is delivered ***in a known way*** by subscriber's set TlnA where this selection information designates the subscriber's set selected for the connection, namely in this case subscriber's set TlnC." (Kammerl, Ex. 1013, 4:27-31, emphasis added.)<br><br>"With a desired trunk connection from the subscriber's set TlnC to subscriber's set TlnA in principle the process steps that take place conform to those just described. In this case the selection information sent from subscriber's set TlnC over interworking unit NUE is converted to a call packet and sent on to packet exchange PVST2." (Kammerl, Ex. 1013, 5:8-13.)<br><br>A telecommunication protocol is used on telephone switching network AN to establish a call and transmit voice to the internetworking unit NUE, and the analog subscriber sets of Kammerl are on an analog telephone network. (Jones Decl., Ex. 1002, ¶¶203-207.) |
| **performing a first conversion converting the transmission from the first format to a second format, the second format being an internet protocol;** |
| "For a network transfer between packet switching network PN and the above-mentioned telephone switching network AN, a network transfer unit NUE (interworking unit) is provided which is connected on the one hand to the telephone switching network by a trunk group with a number of individual lines |

and on the other hand is connected to the packet (switching network) by way of at least one interoffice trunk. ***This interworking unit performs all the signal and procedure conversions needed for network transfer***." (Kammerl, Ex. 1013, 3:61-4:2, emphasis added.)

"With a desired trunk connection from the subscriber's set TlnC to subscriber's set TlnA in principle the process steps that take place conform to those just described. In this case ***the selection information*** sent from subscriber's set TlnC over interworking unit NUE is ***converted to a call packet*** and sent on to packet exchange PVST2." (Kammerl, Ex. 1013, 5:8-13, emphasis added.)

"Within the broad-band packet switching network signals of different services are transmitted in packets of a fixed length according to the ATM method (asynchronous transfer mode)." (Kammerl, Ex. 1013, 3:35-38.)
Also see Jones Decl., Ex. 1002, ¶208-212.

While Kammerl does not explicitly disclose "the second format being an internet protocol," use of an internet protocol is clearly taught by Iwami. *See* analysis of Iwami in Ground 6 above. A PHOSITA would have understood that Internet Protocol as taught by Iwami could be used over the ATM network taught by Kammerl. (Jones Decl., Ex. 1002, ¶227.) Doing so would have allowed Kammerl's voice communications to be transmitted on networks other than ATM networks. (Jones Decl., Ex. 1002, ¶227.) This is the reason that internetworking or internet protocols such as the Internet Protocol were developed— to allow internetworking of diverse networks. (Jones Decl., Ex. 1002, ¶227.) Doing so would have been obvious to a PHOSITA.

Petitioner notes that Iwami qualifies as prior art only under 35 U.S.C. § 102(e). While unlikely, if the owner of the '879 patent is able to remove Iwami as

prior art, other prior art cited herein (e.g., Weinstein) discloses internet protocol used to transport voice over a data network. It would have been obvious to a PHOSITA to substitute the teachings of Weinstein (of using internet protocol over an internetwork) for the ATM packet switched network of Kammerl.

The '879 patent does not teach any unexpected results based on using an internet protocol for transmitting voice communications. Furthermore, one of ordinary skill in the art would have found it obvious to try an internet protocol network as one of a finite number of identified communications mechanisms that were known at the time. (Jones Decl., Ex. 1002, ¶229.) Therefore, it would have been obvious to combine Iwami (or Weinstein) with Kammerl to arrive at claim 1 of the '879 patent.

| **sending the converted transmission through a second communication network, the second communication network being a data network, for reception by a second access device; and** |
| --- |
| See Kammerl, Ex. 1013, 5:8-13, reproduced above in this claim chart.<br><br>"Moreover, the broad-band communications networks diagrammed in FIGS. 1 and 2 can also be modified such that ***the packet switching network PN is connected as a transit network by way of interworking units between two telephone switching network*** [*sic.*]." (Kammerl, Ex. 1013, 5:57-61, emphasis added.) |

FIG 2




See Kammerl, Ex. 1013, 4:4-15, reproduced above in this claim chart.

Packet exchange network PN is the second communication network. Subscriber set TlnC connected telephone exchange AVST1 (see FIG. 1) is the first access device. Another subscriber set TlnC connected, for example, to telephone exchange AVST2 is the second access device, and packet exchange network PN is a data network. (Jones Decl., Ex. 1002, ¶213-214.)

**performing a second conversion further converting the converted transmission from the second format to a further format suitable for the second access device, wherein the first access device and the second access device comprise telecommunication nodes, and said further format comprises said first format or another telecommunication protocol.**

See Kammerl, Ex. 1013, 5:57-51, reproduced above in this claim chart.

See Kammerl, Ex. 1013, 4:4-15, reproduced above in this claim chart.

See Kammerl, Ex. 1013, 4:22-26, reproduced above in this claim chart.

"To initiate trunking, selection information is delivered ***in a known way*** by subscriber's set TlnA where this selection information designates the subscriber's set selected for the connection, namely in this case subscriber's set TlnC." (Kammerl, Ex. 1013, 4:27-31, emphasis added.)

| |
|---|
| "With a desired trunk connection from the subscriber's set TlnC to subscriber's set TlnA in principle the process steps that take place conform to those just described. In this case the selection information sent from subscriber's set TlnC over interworking unit NUE is converted to a call packet and sent on to packet exchange PVST2." (Kammerl, Ex. 1013, 5:8-13.) |

A PHOSITA would understand that a telecommunication protocol is used on telephone switching network AN to establish a call and transmit voice to the internetworking unit NUE. (Jones Decl., Ex. 1002, ¶215.)

| **2. The method of claim 1, wherein the transmission is sent from the first access device serially to a first central node, the data network, a second central node, and the second access device.** |
|---|
| "Moreover, the broad-band communications networks diagrammed in FIGS. 1 and 2 can also be modified such that ***the packet switching network PN is connected as a transit network by way of interworking units between two telephone switching network*** (sic)." (Kammerl, Ex. 1013, 5:57-51, emphasis added.)<br><br>Kammerl teaches sending a transmission from the first access device (e.g., a subscriber set TlnC) serially to a first central node (e.g., internetworking unit NUE1), the data network (packet switching network PN), a second central node (e.g., internetworking unit NUE2), and the second access device (e.g., a subscriber set TlnC). (Jones Decl., Ex. 1002, ¶217.) |

| **3. The method of claim 1, wherein the transmission is related to establishing or transmitting voice communication for a phone call from a calling party connected to the first access device to a called party connected to the second access device.** |
|---|
| "It is assumed that a connection from the subscriber set TlnA of packet switching network AN (sic) to subscriber's set TlnC of the telephone switching network AN is to be established for a speech signal transmission." (Kammerl, Ex. 1013, 4:22-26.)<br><br>A subscriber is associated with each subscriber set TlnC (access device)) of Kammerl. (Jones Decl., Ex. 1002, ¶218.) |

| **4. The method of claim 1, wherein the first communication network is one of** |
|---|

| |
|---|
| **an analog telephone network, a digital telephone network, and a cellular network.** |
| "The ***telephone switching network*** AN itself may be a traditional telephone switching network which may consist, for example, of a number of telephone [*sic.*] interconnected by interoffice trunks. These telephone exchanges, three of which are shown in FIG. 1 where they are labeled as AVST1, AVST2 and AVST2[*sic.*], each have subscriber's lines in addition to interoffice trunks, and analog subscriber's sets can be connected to these subscriber's lines by hybrid sets GA. FIG. 1 shows a hybrid set connected to the telephone exchange AVST1 and a subscriber's set Tlnc [*sic.*] connected to the latter in a schematic diagram." (Kammerl, Ex. 1013, 4:4-15.)<br><br>The telephone switching networks of Kammerl included analog telephone networks. (Jones Decl., Ex. 1002, ¶219.) |

| |
|---|
| **5. The method of claim 1, wherein a calling party is connected to the first access device for transmitting and receiving voice communication for a phone call and a called party is connected to the second access device for transmitting and receiving the voice communication for the phone call.** |
| "It is assumed that a connection from the subscriber set TlnA of packet switching network AN [*sic.*] to subscriber's set TlnC of the telephone switching network AN is to be established for a speech signal transmission." Kammerl, 4:22-26.<br><br>A subscriber is associated with each subscriber set TlnC (access device) of Kammerl and one subscriber would be a calling party and another subscriber would be a called party. (Jones Decl., Ex. 1002, ¶220.) |

| |
|---|
| **6. The method of claim 1, wherein the second conversion is performed at the second access device.** |
| "It should be pointed out here that the packing/depacking units can also be part of the subscriber's sets." (Kammerl, Ex. 1013, 3:58-60.) |

Kammerl shows in FIG. 1 subscriber set TlnA connected to packet network PN and subscriber set TlnC connected to telephone switching network AN. Kammerl describes communication of voice from TlnA to TlnC. (Kammerl, Ex. 1013, 4:22-48.) And, Kammerl describes communication in the other direction,

from TlnC to TlnA. (Kammerl, Ex. 1013, 5:8-18.) TlnA is connected to packet network PN via packing/depacking units PD. (Kammerl, Ex. 1013, FIG. 1). Packing/depacking units PD perform the second conversion of claim 1 of "converting the converted transmission from the second format to a further format suitable for the second access device." (Jones Decl., Ex. 1002, ¶*.) And, as illustrated in claim chart above, Kammerl teaches that the packing/depacking units can also be part of the subscriber's sets (e.g., TlnA). (Kammerl, Ex. 1013, 3:58-60.)

Iwami also teaches this feature of claim 6. See the claim chart for claim 6 in Ground 6 above. Claim 6 would have been obvious to a PHOSITA over Kammerl in view of Iwami. A PHOSITA would have found it obvious to modify Kammerl's packet switching network to use internet protocol as discussed above in the analysis of claim 1. Iwami teaches connecting a communication terminal to such a network and performing protocol conversion at the terminal to deliver voice communication to a user of the terminal. Combining Kammerl and Iwami in this manner would be doing nothing more than connecting Iwami's terminal to a known network in a known way to achieve a predictable result. (Jones Decl., Ex. 1002, ¶221.) Therefore, it would have been obvious to combine Iwami with Kammerl to arrive at claim 6 of the '879 patent.

| **7. The method of claim 1, wherein said second access device is connected to a central office of a telecommunication network.** |
|---|
| "The ***telephone switching network*** AN itself may be a traditional telephone switching network which may consist, for example, of a number of telephone [*sic.*] |

| |
|---|
| interconnected by interoffice trunks. These telephone exchanges, three of which are shown in FIG. 1 where they are labeled as AVST1, AVST2 and AVST2[*sic.*], each have subscriber's lines in addition to interoffice trunks, and analog subscriber's sets can be connected to these subscriber's lines by hybrid sets GA. FIG. 1 shows a hybrid set connected to the telephone exchange AVST1 and a subscriber's set Tlnc [*sic.*] connected to the latter in a schematic diagram." (Kammerl, Ex. 1013, 4:4-15.) |

The subscriber sets (access devices) of Kammerl are shown in FIG. 1 as being connected to a telephone exchange of a telephone switching network. A PHOSITA would understand that a telephone exchange inherently includes a central office. (Jones Decl., Ex. 1002, ¶¶222-223.)

| **15. The method of claim 1, wherein the transmission comprises signaling messages.** |
|---|
| "***For establishing of dial connections*** . . . ***the signaling procedures*** that are used conform to the D channel protocol established in accordance with the ISDN recommendations (integrated services digital network). For interoffice trunks they may conform to the central channel ***signaling system No. 7***. Packing/depacking units . . . are provided at the interface between the packet switching network and the subscriber's sets which may be ISDN subscriber's sets, in order to ***insert the signals delivered by the subscriber's sets into packets*** of a fixed length ***or to break up packets transmitted by the packet switching network*** so the signals can be relayed onto the subscriber's sets." (Kammerl, Ex. 1013, 3:41-55, emphasis added.)<br><br>Also see Kammerl, 4:27-48. |

These portions of Kammerl clearly disclose that the transmissions include signaling messages. (Jones Decl., Ex. 1002, ¶¶224-226.)

As the foregoing claim charts illustrates, every element of claims 1-7 and 15 is disclosed by the combination of Kammerl and Iwami, making these claims unpatentable under 35 U.S.C. § 103.

### 10. Ground 10: Claims 8, 9 and 11-13 are obvious over Kammerl and Iwami in combination with Kobayashi

Every element of claims 8, 9 and 11-13 is taught by the combination of Kammerl, Iwami and Kobayashi, making these claims unpatentable under 35 U.S.C. § 103. See Ground 3 above for a comparison of claims 8, 9 and 11 to Kobayashi. For claim 8, also see Jones Decl., Ex. 1002, ¶¶231-233. For claim 9, also see Jones Decl., Ex. 1002, ¶¶234-235. For claim 11, also see Jones Decl., Ex. 1002, ¶¶236-237.

Kammerl aimed to provide voice over packet networks in order to improve the "quality of speech signal transmissions." (Kammerl, Ex. 1013, 1:34-35.) Kobayashi teaches a method of improving transmission quality by routing on the basis of the recorded preferences of users of the network. (*See* Kobayashi, 3:20-25.) Thus, incorporating Kobayashi into Kammerl would be nothing more than applying well-known routing methods to Kammerl in an obvious way, to achieve the predictable result of improving transmission quality. For example, an internetworking unit of Kammerl would benefit by selecting a route based on user preferences such as cost or transmission quality as taught by Kobayashi. (Jones Decl., Ex. 1002, ¶¶243-244.) Doing so would yield the predictable result of selecting the most appropriate route for the user, and thus improving transmission quality. (Jones Decl., Ex. 1002, ¶244.) Moreover, a PHOSITA would have recognized Kobayashi's teachings as one of a finite number of identified and

predictable solutions to the problem of selecting a route for communication. Thus, claim 8 is rendered obvious by Merritt in view of Kobayashi. Thus, claims 8, 9 and 11 would have been obvious to a PHOSITA in view of Kammerl, Iwami and Kobayashi. (Jones Decl., Ex. 1002, ¶¶242-244.)

| **12. The method of claim 8, wherein the transmission comprises execution of a call setup procedure.** |
|---|
| "It is assumed that ***a connection*** from the subscriber set TlnA of packet switching network AN [*sic.*] to subscriber's set TlnC of the telephone switching network AN ***is to be established*** for a speech signal transmission." (Kammerl, Ex. 1013, 4:22-26.)<br><br>"***For establishing of dial connections,*** depending on whether the connecting lines are subscriber's lines or interoffice trunks, ***the signaling procedures*** that are used conform to the D channel protocol established in accordance with the ISDN recommendations (integrated services digital network). For interoffice trunks they may conform to the central channel ***signaling system No. 7***. Packing/depacking units connected to the subscriber's lines by multiplexers are provided at the interface between the packet switching network and the subscriber's sets which may be ISDN subscriber's sets, in order to ***insert the signals delivered by the subscriber's sets into packets*** of a fixed length ***or to break up packets transmitted by the packet switching network*** so the signals can be relayed onto the subscriber's sets." (Kammerl, Ex. 1013, 3:41-55, emphasis added.) |

Kammerl executes call setup procedures that involve inserting signaling procedure signals from subscriber's sets into packets and relaying them between the subscriber's sets. (Jones Decl., Ex. 1002, ¶¶238-239.)

| **13. The method of claim 1, further comprising the step of storing at least one of subscriber information, rate schedules, and call details.** |
|---|
| "The ***tenant table 121 registers information*** on which trunk (i.e., each trunk corresponds to the respective route) should be used ***for each of the tenants*** A, B and C." (Kobayashi, Ex. 1007, 5:66-6:1.)<br><br>"[T]he controller CONT determines the optimal route (least-cost route) by |

referring to a table stored in the memory MEM." (Kobayashi, Ex. 1007, 2:24-26.)

A PHOSITA would have found it obvious to modify Kammerl's system by adding the features of storing subscriber information, because it is a necessary and known method for achieving the predictable result of properly billing users for their usage of the communications system. (Jones Decl., Ex. 1002, ¶240.)

**11. Ground 11: Claim 10 is obvious over Kammerl and Iwami in combination with Kobayashi and Chau**

Every element of claim 10 is taught by the combination of Kammerl, Iwami, Kobayashi and Chau. Thus, claim 10 is unpatentable over the combination of Kammerl, Iwami, Kobayashi and Chau under 35 U.S.C. § 103. Chau teaches performing a credit check on callers. See the analysis of claim 10 in Ground 4 above. A PHOSITA would have found it obvious to modify Kammerl's system with the teachings of selecting a route based on user credit availability, because doing so would be nothing more than the application of known methods to achieve the predictable result of disallowing calls from delinquent users. (*See* claim construction at Section VII above; Jones Decl., Ex. 1002, ¶249.)

**12. Ground 12: Claim 14 is obvious over Kammerl and Iwami in combination with Gordon**

Every element of claim 14 is taught by the combination of Kammerl, Iwami, and Gordon. Thus, claim 14 is unpatentable over the combination of Kammerl, Iwami, and Gordon under 35 U.S.C. § 103. Gordon teaches sending a fax

transmission over a data network. See the analysis of claim 14 in Ground 1 above. A PHOSITA would have found it obvious to use Kammerl's system to send faxes in the same way. (Jones Decl., Ex. 1002, ¶254.) A PHOSITA would have found it obvious to modify Kammerl's system with the teachings of Gordon regarding fax transmissions, because doing so would be nothing more than the application of known methods to achieve the predictable result of improving fax communications. (Jones Decl., Ex. 1002, 254.)

## XI. Secondary Considerations

At the time of the filing of this Petition, though litigation is on-going between the parties, patent owner has not alleged that any secondary considerations are present and has not provided any evidence of any secondary considerations. Furthermore, Petitioner is not aware of the existence of any commercial success, long-felt need, licensing by competitors, failure of others, or unexpected results, and certainly none sufficient to overcome the *prima facie* showing of obviousness made herein.

## XII. Conclusion

For the grounds specified above, *inter partes* review of claims 1-15 of U.S. Patent No. 7,724,879 is respectfully requested.

Respectfully submitted,
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Michael B. Ray
Registration No. 33,997
Attorney for Petitioner

Jon E. Wright
Registration No. 50,720
Attorney for Petitioner

Date: 21 May 2013

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

*1688008_10*

**CERTIFICATION OF SERVICE (37 C.F.R. §§ 42.6(e), 42.105(a))**

The undersigned hereby certifies that the above-captioned "Petition For *Inter Partes* Review of U.S. Patent No. 7,724,879," including its supporting evidence (Exhibits 1001-1020), was served in its entirety on May 21, 2013, upon the following parties via FedEx®:

Cozen O'Connor
277 Park Avenue, 20th floor
New York, NY 10172
*Patent owner's correspondence address of record for U.S. Patent No. 7,724,879*

Karen H Bromberg
Cohen & Gresser LLP
800 Third Avenue
New York, New York 10022
(212) 957-7600
*Additional address known to Petitioner as likely to effect service*

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Date: May 21, 2013

Michael B. Ray
Attorney for Petitioner
Registration No. 33,997

1100 New York Avenue, N.W.
Washington, D.C.20005-3934
(202) 371-2600

1690995_1